UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FAFARD REAL ESTATE & DEVELOPMENT CORP. <br><br> Plaintiff, <br><br> vs. <br><br><br> METRO-BOSTON BROADCASTING, INC., <br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )   NO.  0411531-RGS <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## OPPOSITION OF PLAINTIFF FAFARD REAL ESTATE & DEVELOPMENT CORP. TO DEFENDANT'S RENEWED SPECIAL MOTION TO DISMISS

Defendant Metro-Boston Broadcasting, Inc.'s ("Metro-Boston") Special Motion to Dismiss must be denied.  It is a *procedural* device provided to defendants in Massachusetts to dismiss a frivolous lawsuit at the time a plaintiff seeks a memorandum of lis pendens.  Accordingly, because the special motion is solely a matter of Massachusetts procedural law, it is unavailable to a defendant in federal court under diversity jurisdiction and cannot be invoked by Metro-Boston in this Court.

Even assuming the "Special Motion to Dismiss" is available to Metro-Boston, the motion nevertheless must be denied because Metro-Boston fails to meet its high burden under G.L. c. 184, § 15(c) to demonstrate that this action is "frivolous."  Knowing that it lacks any valid "legal defense" to Fafard's claims, as that term is used in the statute, Metro-Boston creates a lot of smoke where there is no fire by raising purported unresolved issues that are entirely immaterial to the enforcement of the executed

purchase & sale agreement between the parties and are at best issues of fact for a trial. Thus, because absolutely nothing raised by Metro-Boston demonstrates that Fafard's complaint is frivolous or that a valid legal defense bars Fafard's claim, the motion to dismiss must be denied and a lis pendens must issue.

## BACKGROUND

### *Factual Background*

On January 30, 2001, Fafard and Metro-Boston executed a Purchase & Sale Agreement ("P&S Agreement") for the sale to Fafard of three (3) parcels of land in Ashland, Massachusetts. The property to be sold is identified in the P&S Agreement as "Those three parcels of land in Ashland, Middlesex County, Massachusetts, shown as Lots 12 and 6B (9.6 Acres) and a portion of Lot 11 (10 Acres) on the Plan 16849, attached to the P&S Agreement and incorporated therein" ("the Ashland Property"). See Fafard's Verified Complaint ("Compl. ¶__") ¶ 8, and Ex. A thereto. The parties agreed to a purchase price for the real estate of $339,000, $39,000 of which was paid as a deposit by Fafard. Compl. ¶ 10.

Fafard intended to develop the land for residential use. Compl. ¶ 9. Metro-Boston knew of Fafard's intended use for the property. The P&S Agreement obligated Metro-Boston to convey to Fafard "a good and clear record and marketable title," free from encumbrances. The P&S Agreement expressly excepted certain encumbrances, including, in relevant part, "easements, restrictions and reservations of record, if any, so long as the same do not prohibit or materially interfere with the said premises for residential development." See Compl. ¶ 11 and Ex. A. A further condition of the P&S Agreement expressly required Metro-Boston to provide Fafard with a new subdivision

plan for the Ashland Property. See Compl., Ex. A, § 5. The new subdivision plan was necessary in order to prepare a deed that accurately identified the property being sold. Compl. ¶ 13.

The P&S Agreement provided that the sale of the Ashland Property was subject to Fafard's receipt of all necessary permits, including subdivision approval, so as to allow Fafard to develop the land for residential use. Compl. ¶ 14. Fafard had the right to waive these conditions. Closing was to take place "thirty (30) days after receipt of all permits or February 28, 2002, whichever is sooner." Compl., Ex. A.

When the closing date approached, Metro-Boston had not yet not provided Fafard with a new subdivision plan. Compl. ¶ 16. Metro-Boston never took any steps necessary to prepare that plan. Compl. ¶ 17. Nor did Metro-Boston cure numerous easements, restrictions and other encumbrances of record, that if remaining, would materially interfere with Fafard's known intentions to develop the for property residential use. Comp. ¶¶ 22-23. As a result, the parties were unable to close the sale of the Ashland Property by the original deadline in the P&S Agreement. Compl. ¶ 18.

Fafard and Metro-Boston mutually agreed to extensions of the closing deadlines, up to and through May 21, 2004. Compl. ¶ 19. During that time, Metro-Boston never provided Fafard with a new subdivision plan. Metro-Boston also never took the steps necessary to cure the easements, restrictions and other encumbrances on the Ashland Property that Fafard identified.

### *Procedural History*

Fafard commenced this action in the Commonwealth of Massachusetts, Middlesex Superior Court, on June 3, 2004, C.A. No. 04-2282. On June 3, 2004,

pursuant to Massachusetts Superior Court Rule 9A, Fafard served Metro-Boston with a Motion for Endorsement of Lis Pendens. Metro-Boston requested, and Fafard granted, two extensions of time to Metro-Boston to serve an opposition to Fafard's motion. On June 25, 2004, Metro-Boston served Fafard with a Special Motion to Dismiss pursuant to Mass. G.L. c. 184. § 15(c). In connection with its Special Motion to Dismiss, Metro-Boston also served Fafard with a Memorandum in Support of Special Motion to Dismiss and in Opposition to Plaintiff's Motion to Endorse Lis Pendens; Affidavit of Attorney Kenneth Berman; and Affidavit of Mary Heller Halcomb.

On July 8, 2004, the Court (Gershengorn, J.) denied without prejudice Metro-Boston's Special Motion to Dismiss, for failure to comply with Massachusetts Superior Court Rule 9A. On that same day, Metro-Boston sent a letter to counsel for Fafard with its notice of intent remove the case to the United States District Court for the District of Massachusetts. Counsel for Fafard received the letter notification on July 12, 2004, and on July 15, 2004, this action was removed to this Court. On July 15, 2004, Metro-Boston refiled its Special Motion to Dismiss with this Court.

## ARGUMENT

## I. THE SPECIAL MOTION TO DISMISS IS A PROCEDURAL DEVICE THAT IS UNAVAILABLE TO METRO-BOSTON.

The "special motion to dismiss" is a procedure by which a defendant may move to dismiss a case at an early stage where the defendant "believes that the action or claim supporting [a] memorandum of lis pendens is frivolous." See Massachusetts General Laws chapter 184, § 15(c). The statute provides that the special motion, "unless heard at the time the claimant first applied for a judicial endorsement under [General Laws c. 184,

§ 15(b)], shall be heard at the same time as the hearing on the motion to dissolve the memorandum of lis pendens. Id.

The "special motion" confers no substantive right on any party. It is not a matter of substantive law. Indeed, the special motion to dismiss in G.L. c. 184, § 15(c) is remarkably akin to the Massachusetts strategic litigation against public participation statute (Massachusetts anti-SLAPP statute), in that it grants a defendant a *procedural* mechanism to dismiss a "frivolous" case, permits the Court to consider affidavits in deciding such motion, and automatically stays discovery pending the motion. Compare Massachusetts G.L. c. 231, § 59H (Massachusetts anti-SLAPP statute), with G.L. c. 184, § 15(c). Significantly, the Massachusetts Supreme Judicial Court has described the anti-SLAPP statute as *procedural*. See, e.g., Fabre v. Walton, 436 Mass. 517 (2002) (anti-SLAPP special motion to dismiss is a "procedural remedy"); Duracraft v. Homes Prods. Corp., 427 Mass. 156, 161 (anti-SLAPP statute provides a "procedural remedy for early dismissal of the disfavored SLAPP suits"). And, indeed, the District of Massachusetts, sitting in diversity jurisdiction, has refused to consider the anti-SLAPP motion on the grounds that is a procedural device that "cannot be enforced in a federal court." See Stuborn L.P. v. Bernstein, 245 F. Supp. 2d 312, 315-16 (D. Mass. 2003) (denying special motion to dismiss under Massachusetts anti-SLAPP statute because the "special motion provision is predominantly procedural in nature and conflicts with the Federal Rules of Civil Procedure"); Baker v. Coxe, 940 F. Supp. 409, 417 (D. Mass. 1996) (court refused to consider anti-SLAPP statute special motion to dismiss because it is a procedural device that "does not trump Fed. R. Civ. P. 12(b)(6)").

Thus, as a threshold matter, the Court must deny Metro-Boston's Special Motion to Dismiss because it is a creature of Massachusetts procedural law, and is therefore unavailable to a defendant such as Metro-Boston, who removed this case to federal court pursuant to this Court's diversity jurisdiction. See Erie Railroad Company v. Tompkins, 58 S. Ct. 817 (1958). See also Wright & Miller, 5A Fed. Prac. & Proc. § 1343 (2d. ed. 1990) ("State rules of practice do not control any of the purely procedural questions that arise under Rule 12").[1]

## II.    FAFARD HAS MET ITS BURDEN TO OBTAIN A MEMORANDUM OF LIS PENDENS.

A lis pendens must issue because Fafard has met all of the requirements under Massachusetts law to obtain a lis pendens. Pursuant to Massachusetts General Laws chapter 184, § 15, a plaintiff seeking a memorandum of lis pendens is required to (1) commence "the underlying proceeding by means of a verified complaint or other complaint as is required under the rules of court to include a certification by the claimant made under the pains and penalties of perjury that the complainant has read the complaint, that the facts stated therein are true and that no material facts have been omitted therefrom;" and (2) to "name in the complaint all owners of record and any party in occupation under a written lease." See G.L. c. 184, § 15(b). Where a plaintiff satisfies these threshold requirements and the subject matter of the action "constitutes a claim of right to title to real property" the plaintiff "shall" be entitled to a lis pendens, or the Court should order "the temporary equitable relief as will preserve the status quo pending

---

[1] If the Court is inclined to convert Metro-Boston's Special Motion to Dismiss into a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), such motion must be denied Metro-Boston cannot demonstrate that Fafard's complaint fails to state a claim upon which relief can be granted. Indeed, Fafard's Complaint sufficiently alleges the necessary elements of claims for specific performance and breach of contract. See Compl. ¶¶ 27-46.

further proceedings." Accord Wolfe v. Gormally, 440 Mass. 699 (2004) (holding that 2003 amended lis pendens statute "continues to apply to all claims 'affecting' title or use or occupation of property; no change was intended by contradictory language").

Fafard has satisfied these requirements. *First*, Fafard commenced this action by filing a complaint verified by Richard Terrill, the Senior Vice President and Chief Financial Officer of Fafard. Mr. Terrill declared under the pains and penalties of perjury that he has read the facts of complaint, and that no material facts have been omitted. See Verified Complaint ("Compl.") p.9. *Second*, Fafard's complaint names Metro-Boston, the owner of record of the land in question. See Compl. ¶ 2. *Third*, the instant action is one that "constitutes a claim or right to title to real property." Fafard alleges that Metro-Boston failed to satisfy conditions precedent contained in a contract for the sale of real property to Fafard. Fafard also alleges that Metro-Boston failed convey to Fafard the property and a good and clear record and marketable title thereto as required by the contract. Compl. ¶¶ 17, 20, 23-26, 27-46. These are issues which affect interests in real property. Thus, under G.L. c. 184, § 15(b), a lis pendens "shall" issue.

### III. METRO-BOSTON HAS NOT DEMONSTRATED EITHER FRIVOLITY OR A "VALID LEGAL DEFENSE" TO FAFARD'S ACTION, AND THEREFORE THE MOTION TO DISMISS MUST BE DENIED.

Assuming that the procedural mechanism of a "special motion to dismiss" is available to Metro-Boston, the burden on Metro-Boston to dismiss at this early stage is a high one. The standard is not who is entitled to summary judgment. Nor is the standard who is entitled to judgment after a trial on the merits. Nothing in the 2003 amendments to the lis pendens statute conflate a lis pendens motion with a motion for summary judgment or with a trial on the merits. In order to obtain dismissal pursuant to G.L. c.

184, § 15(c), Metro-Boston must demonstrate that Fafard's action is "frivolous" because "(1) it is devoid of any reasonable factual support; or (2) it is devoid of any arguable basis in law; or (3) the action or claim is subject to dismissal based on a valid legal defense such as the statute of frauds." The Defendant raises nothing that even comes close to meeting this standard.

Metro-Boston first contends that Fafard's request for access to the property from Sewell Road excuses Metro-Boston's obligation to perform under the P&S Agreement. Even if true, this does not amount to a "valid legal defense" such that Fafard's action must be dismissed. That a buyer of real property requests something from the seller that is not part of the executed purchase and sale agreement between the parties does not make *that contract* any less enforceable. Nor does a buyer's request for something additional grant the seller "an out" from its obligations, "an out" from the contract, or in any way release the seller from the obligations it undertook when it entered into the contract.

That is exactly the case here. Fafard and Metro-Boston signed a purchase and sale agreement for the sale of the Ashland Property. Compl. ¶ 8. That contract obligates Metro-Boston to, among other things, prepare a new subdivision plan and to convey to Fafard good and clear record and marketable title to the land.[2]  Compl. ¶ 11, and Ex. A thereto. To the extent Fafard tried to negotiate the purchase additional land from Metro-Boston, that "fact" (even if proven true at a trial), would not undermine the enforceability

---

[2] Metro-Boston inartfully attempts to create an ambiguity in the P&S Agreement respecting its obligation to provide Fafard with a new subdivision plan. There is no ambiguity. Metro-Boston's obligation is clear: "If said deed refers to a plan necessary to be recorded therewith, the SELLER shall deliver such plan with the deed in form adequate for recording or registration. New Subdivision of Plan 16849 provided by Seller." See Compl. Ex. A, § 5. That Exhibit B to the P&S makes the sale contingent on Fafard's receipt of permits which "allow[ ] [Fafard] to have its intended use" (a condition for the benefit of and waivable by Fafard) is not inconsistent with Metro-Boston's obligation to provide Fafard with the new subdivision plan.

of the P&S Agreement. In other words, nothing about Fafard's *separate* offer to purchase a *separate and additional* parcel of land from Metro-Boston -- over and above what the parties agreed to in the January 30, 2001, P&S Agreement -- makes the *P&S Agreement* unenforceable or releases Metro-Boston from the obligations it incurred under the P&S Agreement. Metro-Boston is still obligated under the P&S Agreement.[3] Thus, the motion to dismiss must be denied.[4]

Second, Metro-Boston alleges there is an issue respecting "the northeast boundary line" which Metro-Boston contends prevented the parties from having a "meeting of the minds." This contention, even if true, also does not rise to the level of a "valid legal defense" that would prevent enforcement of the P&S Agreement. That an issue arises *after* the execution of a purchase and sale agreement for the sale of real property as to where *in fact* a particular boundary line is located does not necessarily make the contract unenforceable. In other words, that a document (*i.e.* land plan) expressly relied upon by the parties in demarking the land for sale in a purchase and sale agreement turns out later to be wrong is not automatic grounds to find the contract to convey that land

---

[3] There is not a shred of evidence that Fafard refused to close on the Ashland Property unless and until Metro-Boston agreed to grant access via Sewell Road. Nor is there any evidence that Fafard imposed the Sewell Road access issue as a condition to the closing. In fact, it did not. Fafard was negotiating with Metro-Boston to *purchase* five acres for *additional consideration*. (Inexplicably, Metro-Boston deleted Fafard's substantial purchase price for the additional acreage from its Exhibit E). To the extent Metro-Boston raises an issue respecting the parties' failed negotiations over the purchase of *additional* property, that issue is entirely immaterial to the enforceability of the *P&S Agreement*. Fafard was and continues to be ready, willing, and able to close on the Ashland Property as described and agreed upon by the parties in the P&S Agreement. See Compl. ¶ 37.

[4] Metro-Boston entirely misconstrues Fafard's claim for breach of contract. Fafard does not allege a breach resulting from Metro-Boston's failure to show at the closing. Fafard alleges that Metro-Boston breached when it failed to take any steps necessary give Fafard good and clear record and marketable title, including preparation of the new subdivision plan. See Compl. Count III, ¶¶ 42-43. Fafard sought and obtained extensions of the closing deadlines, granting Metro-Boston additional time to provide the new plan and clear title. See Compl. ¶¶ 16-21. When Metro Boston failed to fulfill its obligations and refused to consent to another extension, Fafard was nevertheless still ready, willing, and able to close even without the plan, and appeared at the Registry of Deeds on May 21, 2004, prepared to close. See Exhibit A hereto.

unenforceable. Nor does such a situation provide automatic grounds for the seller to repudiate the contract. See Restatement (Second) Contract § 152.[5]

That is the situation here. The P&S Agreement is clear. It obligates Metro-Boston to convey to Fafard "Those three (3) parcels of land in Ashland, Middlesex County, Massachusetts, shown as Lots 12 and 6B (9.6 Acres) and a portion of Lot 11 (10 Acres) on the Plan attached hereto and incorporated herein by reference as Exhibit A. For title see Certificate # 194925 and 189901 Middlesex South District of the Land Court." See Compl. Ex. A. Exhibit A to the P&S Agreement demarcates the portion of Lot 11 to be sold. See id. To the extent an issue arose *after* Fafard and Metro-Boston executed the P&S Agreement with respect to where the actual boundary line exists, that issue does not in any way make unenforceable the obligation by Metro-Boston in the P&S Agreement to convey "Lots 12 and 6B (9.6 Acres) and a portion of Lot 11 (10 Acres) on the Plan attached hereto." This issue does not present a "valid legal defense" or demonstrate any frivolity in Fafard's complaint.[6]

Notably, this is not a case where the land to be sold was not adequately described—nor does Metro-Boston contend that is the case. And even if there were some fact issue as to the actual location of the boundary line agreed to by the parties (which

_____

[5] A contract is voidable by one party only if each one of the following facts is conclusively established: (1) the mistake was mutual; (2) the mistake relates to a "basic assumption on which the contract was made;" and (3) the mistake has a "material effect" on the contract. Under such circumstances, the contract is voidable, but only by the adversely affected party and only if it is proven that that party bears the risk of the mistake. See Malorey v. Sargisson, 18 Mass. App. Ct. 341, 345 (1984) (quoting Restatement (Second) Contracts § 152). Absent proof of each of these elements, the "mere fact that both parties are mistaken with respect to an assumption, does not, of itself afford a reason for avoidance of the contract." Restatement (Second) Contract § 152, *cmt a.*

[6] At most, Metro-Boston perhaps raises what may become *issues of fact* at trial as to what land, in fact, Metro-Boston was obligated to convey to Fafard, or an issue of fact as to whether there was a mistake as to the boundary line of the land to be sold. See Restatement (Second) Contract § 152. In no way does the existence of such issues of fact, however, constitute a valid legal defense such that a lis pendens cannot issue. See G.L. c. 184, § 15(c).

there is not, and which Metro-Boston does not suggest), that is an issue of fact to be determined at trial. Indeed, the Massachusetts statute of frauds does not require dismissal under such circumstances. Blackstone Realty, LLC v. FDIC, 244 F.3d 193 (1st Cir. 2001) (reversing district court's dismissal of action on statute of frauds grounds; although contract for sale of land had some ambiguity, Massachusetts law permits purchaser to introduce evidence regarding the circumstances of its dealings with the seller "to dispel the kinds of ambiguities identified by the district court"); Tzitzon Realty Co. v. Mustonen, 352 Mass. 648, 652-53 (1967) ("Attendant circumstances may be shown outside the writing for the purposes of interpreting and applying the [contract for the sale of land]."); Cohen v. Garelick, 344 Mass. 654, 657 (1962) (statute of frauds does not bar introduction of evidence of the "circumstances" of the sale to resolve an ambiguity in contract for sale of land).

Metro-Boston also cries "frustration" stemming from the extensions of the closing deadlines. However, absolutely nothing about the mutually-agreed upon extensions of the closing dates (regardless of how many in number) releases Metro-Boston from its obligations under the P&S Agreement or otherwise renders the P&S Agreement unenforceable. Indeed, as Fafard adequately alleges, Metro-Boston mutually agreed to extensions of the closing deadlines, through May 21, 2004. See Compl. ¶ 21. Metro-Boston points to no reason as to why the extensions are not enforceable or that the fact of the extensions somehow excused Metro-Boston from performance under the P&S Agreement.[7]  Frustration with a buyer for whatever reason is not grounds to repudiate a contract.[8]

---

[7] In any event, the extensions were necessary because Fafard was still waiting for the new subdivision plan required to be provided by the seller. Compl. ¶ 13.

IV.    **FAFARD'S PROPOSED MEMORANDUM OF LIS PENDENS PLACES THIRD PARTIES ON NOTICE OF THE REAL PROPERTY SUBJECT TO THE LITIGATION.**

The purpose of a lis pendens is to place third parties on notice that interests in real property are subject to a lawsuit. Debral Realty, Inc. v. DiChiara, 383 Mass. 559, 562 (1981) (lis pendens puts "anyone interested in real estate that is in dispute on notice of the dispute [and] statute ensures that a prospective third-party transferee can, with the exercise of reasonable prudence, acquire information relevant to a decision whether to consummate the transaction").

Here, Fafard's proposed memorandum of lis pendens describes with adequate specificity the property subject to dispute, such that third parties will be on notice. Fafard's proposed Memorandum of Lis Pendens describes the land as: that certain plot, piece or parcel of land in Ashland, MA known and numbered as Lots 12, 6B, and that ten (10) acres of Lot 11, which is shown a plan of land recorded in the Middlesex County Registry of Deeds as Plan # 16849 of 1981, and is more fully described in a Subdivision Plan of Land recorded with the Middlesex South Registry of Deeds in Book 936, Page 51.

## CONCLUSION

The "special motion to dismiss" is a procedural device that cannot be invoked in federal court. Thus, it must be denied. Moreover, this is not a trial on the merits. Nor is this a motion for summary judgment. Fafard has commenced an action that affects interests in real property and is accordingly entitled to the endorsement of a

---

[8] Notably, Metro-Boston's papers demonstrate *Fafard's* frustration with Metro-Boston's failure to prepare the new subdivision plan. See Affidavit of Mary Heller Halcomb, Exs. A, B.

memorandum of lis pendens. Metro-Boston has not satisfied its burden to demonstrate the frivolity of this action, and the motion to dismiss must be denied.

Respectfully submitted,

FAFARD REAL ESTATE
DEVELOPMENT CORP.

By its attorneys,

Jeffrey J. Upton (BBO#552221)
Halye A. Sugarman (BBO#646773)
HANIFY & KING
Professional Corporation
One Beacon Street
Boston, MA 02108-3107
(617) 423-0400

DATED: July 20, 2004
410694

CERTIFICATE OF SERVICE

I, Halye A. Sugarman, certify that on July 20, 2004, I served a copy of the foregoing Opposition to Defendant's Special Motion Dismiss, by hand on:

Kenneth Berman
Nutter McClennan & Fish, LLP
World Trade Center West
155 Seaport Boulevard
Boston, MA  02110

Halye A. Sugarman