UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FAFARD REAL ESTATE & DEVELOPMENT CORP., <br><br> Plaintiff, <br><br> vs. <br><br> METRO-BOSTON BROADCASTING, INC., <br><br> Defendant, | Civil Action No. 04-11531 RGS |

DEFENDANT'S REPLY MEMORANDUM
IN SUPPORT OF ITS SPECIAL MOTION TO DISMISS

Introduction

Plaintiff seeks to parse the Massachusetts lis pendens statute. By filing its own motion to endorse a lis pendens memorandum, plaintiff impliedly assert that some parts of the statute (those helpful to plaintiff) are applicable in federal court. But in its opposition to defendant's special motion to dismiss, plaintiff asserts that other parts of the statute (those helpful to defendant) are allegedly procedural in nature and therefore inapplicable in federal court. Plaintiff's effort to drive a wedge through the statute in this fashion is creative, but without merit.

Plaintiff's position rests entirely on how two judges in this district treated a motion under a completely different statute, the Anti-SLAPP statute.[1] In one instance, Judge Saris considered the merits of an Anti-SLAPP special motion to dismiss, but handled it as a motion under Federal Rule 12(b)(6). Baker v. Coxe, 940 F. Supp. 409, 417 (D. Mass. 1996). In another, Judge Lasker refused to consider an Anti-SLAPP special motion to dismiss, holding that the Anti-SLAPP

---

[1] SLAPP stands for Strategic Lawsuit Against Public Participation.

statute is "predominantly procedural in nature" and "directly conflicts with the Federal Rules of Civil Procedure," making it inapplicable in federal court. Stubborn L.P. v. Bernstein, 245 F. Supp. 2d 312, 316 (D. Mass. 2003).

Plaintiffs would like those cases to stand for the broad proposition that any so-called "Special Motion to Dismiss" authorized by the General Laws of Massachusetts may not be heard in federal court. Plaintiffs' position misapplies the principles that determine which state laws are applicable in a federal diversity action, including how to classify a state law as either procedural or substantive for *Erie* purposes. When these principles are correctly applied, they show that the special motion to dismiss at issue here is an integral part of a substantive statute governing encumbrances on recorded land titles. It is as much a part of the lis pendens statute as the parts on which plaintiff relies, which, under plaintiff's logic, would be equally "procedural" in nature. The statute in its totality establishes a comprehensive regime to deal with lis pendens in the state-created system of recorded land titles. As part of the body of substantive Massachusetts real property law, the lis pendens statute – the parts that favor claimants and those that favor landowners – must be faithfully applied in this Court, or, under plaintiff's logic, not at all.

Perhaps more important, plaintiff's memorandum nowhere mentions the key First Circuit case: Feinstein v. Massachusetts General Hospital, 643 F.2d 880 (1st Cir. 1981). Feinstein held that federal courts must apply a state statute for early screening and potential dismissal of insubstantial medical malpractice cases, notwithstanding the statute's significant procedural elements, which find no counterpart in the federal rules of procedure. Given the similarities in purpose, policy, and approach between the medical malpractice screening statute and the lis pendens statute, and given the Court's reasoning, Feinstein negates plaintiff's argument.

Finally, plaintiff's position overlooks the fundamental differences between the Anti-

2

SLAPP statute and the lis pendens statute, as well as the particular differences between the special motions to dismiss that those different statutes authorize.

## Analysis

I.   THE SUBSTANTIVE - PROCEDURAL DISTINCTION UNDER *ERIE*

As a general proposition, a federal court sitting in diversity applies the substantive law of the forum state and federal procedural law. Gasperini v. Center For Humanities, Inc, 518 U.S. 415, 427 (1996). However, not all matters of procedure created by state law are deemed procedural for purposes of whether they apply in federal court. Some state laws that appear to be procedural or that have procedural elements can nonetheless be substantive and fully applicable in federal court. Id. at 427 & n.7.[2]

For example, plaintiff would undoubtedly resist calling "procedural" the procedure by which it seeks to have this Court review its complaint and approve its proposed memorandum of lis pendens, even though the lis pendens statute specifies:

   (a)   the form of complaint required to support a memorandum of lis pendens;

   (b)   the form of certification plaintiff must provide;

   (c)   the parties who must be named as defendants in the complaint;

   (d)   the finding the court must make, and where the finding must be endorsed, to authorize the recording of a lis pendens memorandum;

   (e)   the procedure to follow if plaintiff seeks approval of a lis pendens memorandum ex parte;

---

[2] "Even if we were to agree that the [state] statute is procedural, it would not determine that it is not applicable [in federal court]. Rules which lawyers call procedural do not always exhaust their effect by regulating procedure." Cohen v. Beneficial Loan Corp., 337 U.S. 541, 554 (1949). "Except at the extremes, the terms 'substance' and 'procedure' describe very little except a dichotomy, and what they mean in a particular context is largely determined by the purposes for which the dichotomy is drawn. In the context of our *Erie* jurisprudence, ... that purpose is to establish (within the limits of applicable federal law, including the prescribed Rules of Federal Procedure) substantial uniformity of predictable outcomes between cases tried in a federal court and cases tried in the courts of the State in which the federal court sits." Sun Oil Co. v. Wortman, 486 U.S. 717, 726-27 (1988).

3

 (f) the findings the court must make to justify granting such a motion ex parte;

 (g) the procedure for dissolution of a lis pendens granted in an ex parte proceeding;

 (h) the rights of appeal available to disappointed parties; and

 (i) the state statute under which such appeals are to be brought, which governs such things as the court to which the appeal must be brought and whether the appeal is to a single justice (G.L. c. 231 § 118, first para.) or an appellate panel (G.L. c. 231 § 118, second para.).

Plaintiff would resist calling the lis pendens motion procedure "procedural," even though a lis pendens motion merely serves a notice-giving function. But plaintiff has no reservation labeling "procedural" the special-motion-to-dismiss provisions that the legislature adopted for clearing the defendant's title. In essence, the title-*clouding* features of the statute are, in plaintiff's analysis, substantive and applicable in federal court, but the title-*clearing* features of the statute are, in plaintiff's mistaken analysis, procedural and therefore inapplicable in federal court.

 A. *Erie's* Twin Aims

Because of the conceptual difficulty in identifying which state laws are procedural and which are substantive, the Supreme Court has articulated principles governing the application of ostensibly procedural state statutes in federal diversity cases under Erie R. Co. v. Tompkins, 304 U.S. 64 (1938). Classifying a state law as substantive or procedural for purposes of whether the law is to be given effect in federal court "is sometimes a challenging endeavor." Gasperini v. Center For Humanities, Inc, 518 U.S. 415, 427 (1996). A governing principle is whether the federal court would "significantly affect the result of a litigation" if it were to "disregard a law of a State that would be controlling in an action upon the same claim by the same parties in State court." Id. In diversity cases, "the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of litigation, as it would be if tried in a State court." Guaranty Trust Co. v. York, 326 U.S. 99, 109 (1945). The application of

4

the outcome-determination test has been "qualif[ied]" in that federal courts "must be guided by 'the twin aims of the *Erie* rule: discouragement of forum shopping and avoidance of inequitable administration of the laws.'" Gasperini, 518 U.S. at 428, *citing* Hanna v. Plumer, 380 U.S. 460 (1965) (emphasis added).

Paraphrasing Hanna, the Supreme Court in Gasperini framed the inquiry as whether the state's law is "outcome affective" in the sense that application of the state's law would "have so important an effect upon the fortunes of one or both of the litigants that failure to apply it would unfairly discriminate against citizens of the forum State or be likely to cause a plaintiff to choose the federal court." Gasperini, 518 U.S. at 428 (brackets omitted) (emphasis added). Put another way, a federal court is required to apply a state statute if, in failing to do so, there would be "substantial variations" in outcome depending on whether the case were litigated in federal or state court such as to implicate *Erie*'s twin aims. Id. at 430. The "*Erie* principle precludes a federal court from giving a state-created claim 'longer life ... than the claim would have had in the state court.'" Id. at 43-31 (brackets omitted), *citing* Ragan v. Merchants Transfer & Warehouse Co., 337 U.S. 530 (1949).³

If defendant's special motion to dismiss could not be heard in federal court, or if the

---

³ Ragan held that state law rather than Fed. R. Civ. P. 3 determines when a diversity action commences for purposes of tolling the state statute of limitations. In Ragan, there was a conflict between Fed. R. Civ. P. 3, which states that an action commences upon the filing of a complaint, and a state statute, which provided that an action commences upon service. Under the federal rule, the suit would have been timely but, under state law, the action would have been time barred because the defendant was not served until after the period of limitations expired. Plaintiff argued that the state statute was procedural, and that the time of commencement of a federal court action should be governed by the federal rules of procedure. In applying state law, the Supreme Court said:

> [W]e look to local law to find the cause of action on which suit is brought. Since that cause of action is created by local law, the measure of it is to be found only in local law. It carries the same burden and is subject to the same defenses in the federal court as in the state court.... It accrues and comes to an end when local law so declares.... Where local law qualifies or abridges it, the federal court must follow suit. Otherwise there is a different measure of the cause of action in one court than in the other, and the principle of *Erie R. Co. v. Tompkins* is transgressed.

Ragan v. Merchants Transfer & Warehouse Co., 337 U.S. 530, 533 (1949).

5

motion would be denied by virtue of a federal court applying different standards, then the federal court would be giving plaintiff's state-created claim "longer life ... than the claim would have had in state court," in violation of the principle announced in Ragan. Such a result would transgress both of *Erie's* twin aims: it would result in unequal administration of the law depending on whether the suit were in state or federal court and it would give plaintiffs in a diversity case a powerful incentive to choose the federal forum, knowing they could use the lis pendens statute offensively to *cloud* the defendants' title while avoiding the statute's provisions that enable defendants to obtain a speedy dismissal to *clear* their title. For these reasons, both parts of the lis pendens statute – the offensive and defensive features – are substantive for *Erie* purposes and fully applicable in federal court, or else neither part is applicable.

This conclusion is buttressed by other Supreme Court cases analyzing the procedural-substantive distinction under *Erie*. In Hanna v. Plumer, 380 U.S. 460 (1965), the Supreme Court held that federal rules for service of process, not state rules, apply in federal court, because the choice between the state in-hand service rule and the Federal Rule on service "would be of scant, if any, relevance to the choice of forum" as "adherence to the state rule would have resulted only in altering the way in which process was served." Id. at 469.[4] This notwithstanding, the Court acknowledged that *Erie* permits the applicability "of a state rule in the face of an argument that

---

[4] Plaintiff might argue that the lis pendens statute is not the type of state law that would affect a plaintiff's decision to sue in state or federal court, as evidenced by the fact that this plaintiff commenced suit in state, not federal, court. This plaintiff's decision to file in state court does not affect the analysis because, at the time this plaintiff selected its forum, there was no case holding that a special motion to dismiss under the lis pendens statute was inapplicable in federal court. Had there been such a holding, it is unlikely plaintiff would have filed in state court. The most that can be inferred from plaintiff's selection of state court is that, at the time plaintiff commenced this suit, plaintiff either assumed the lis pendens statute would be equally applicable in state and federal court or plaintiff was unaware of the issue. However, if this Court were now to hold that a plaintiff could avoid the defensive features of the lis pendens statute by filing suit in federal court, such a ruling would most assuredly affect a future plaintiff's choice of forum. In considering the forum-shopping effects of the ruling plaintiff is now seeking, the Court should consider the effect such a ruling would have on future plaintiffs, not what the present plaintiff did at a time before this issue had been judicially decided.

the situation [is] governed by one of the Federal Rules." Id. at 470. Noting that "*Erie* command[s] the enforcement of state law" when there is "no Federal Rule which cover[s] the point in dispute," id., the Court held that it would apply the federal rule when it is "in direct collision with the law of the relevant state." Id. at 472 (emphasis added).

The "direct collision" requirement is the touchstone for the rejection of state law under Hanna. Walker v. Armco Steel Corp., 446 U.S. 740, 749 (1980) ("Application of the *Hanna* analysis is premised on a 'direct collision' between the Federal Rule and the state law"). Whether there is a direct collision depends on whether "the Federal Rule in fact is sufficiently broad to control the issue before the Court. It is only if that question is answered affirmatively that the *Hanna* analysis applies." Id. at 750 (emphasis added). In Walker, the Court held that the federal court was required to apply the state rule concerning when an action is commenced, as opposed to the different federal rule, because each rule "can exist side by side, therefore, each controlling its own intended sphere of coverage without conflict." Id. at 752. In the absence of a "direct conflict between the Federal Rule and the state law, the *Hanna* analysis does not apply. Instead the policies behind *Erie* and *Ragan* control" whether the federal court should apply the state rule. Id. at 752. If there would be an inequitable administration of the law, state law should be applied, even if the rejection of state law would not result in forum shopping. Id. at 753.

The lis pendens statute is not in collision, direct or otherwise, with the Federal Rules. There is no federal rule addressing the administration of lis pendens. 1937 Advisory Committee Notes to Fed. R. Civ. P. 64. To be sure, many federal rules provide mechanisms for dismissal against the wishes of the claimant, short of a trial on the merits: Rule 4(m); Rule 12 (b), subparts (1) through (7); Rule 12 (c); Rule 16(b) (1); Rule 16(f); Rule 17(a); Rule 19(b); Rule 23.1; Rule 37(b)(2)(C); Rule 37(c)(1); Rule 37 (d); Rule 41(b); and Rule 56. Each rule has its own

standards and criteria. Some have their own procedure. These various rules of dismissal co-exist, standing side-by-side without conflict. For the most part, these same rules have been incorporated into the Massachusetts Rules of Civil Procedure and apply in Massachusetts state courts. The lis pendens statute creates no collision, direct or otherwise, with these rules of procedure in Massachusetts courts. The statute simply creates another way for a claim to be dismissed. It likewise creates no collision with the same rules in the federal system. The two "can exist side by side, ... each controlling its own intended sphere of coverage without conflict." Walker v. Armco Steel Corp., 446 U.S. 740 (1980).

II.   STATE GATE-KEEPING AND LITIGATION-MITIGATION STATUTES ARE APPLICABLE IN FEDERAL COURT

States sometimes adopt gate-keeping or litigation-mitigation statutes, requiring plaintiffs to meet certain burdens or do certain things as a condition to going forward with their claims. When federal jurisdiction is grounded on diversity of citizenship, federal courts typically hold these statutes, including the procedural elements of these statutes, applicable in federal court to the same extent as if the case were in state court. These statutes can take the form, as here, of a statute that provides a dismissal mechanism for screening out meritless claims. Such a statute does not collide, directly or otherwise, with the Federal Rules of Procedure, even if its mechanism uses different dismissal standards and procedures from those in the Federal Rules.

The leading case in this circuit is Feinstein v. Massachusetts General Hospital, 643 F.2d 880 (1st Cir. 1981), which held that federal courts must apply the Massachusetts medical malpractice tribunal statute, G.L. c. 231 § 60B, even though its procedures and standards of review are not found in the Federal Rules. Essentially, the statute "is an initial screen, derailing claims with no legal merit from clogging already congested civil court dockets and increasing litigation costs." Joseph v. Sweet, 125 F. Supp. 2d 573, 575 (D. Mass. 2000). Under the statute,

8

within 15 days after a defendant's answer has been filed, a medical malpractice plaintiff must make an offer of proof to a tribunal, consisting of a superior court judge, a physician, and an attorney. The tribunal can hear witnesses if it chooses. If the tribunal concludes that the claim presents a legitimate question of liability, plaintiff's suit may proceed. Otherwise, the suit may proceed only if plaintiff posts a bond, which the court may reduce but not eliminate for indigents. If the plaintiff fails to post the required bond, the case must be dismissed. This procedure is purely a creature of state law and employs a dismissal standard not found in Federal Rule 12(b)(6). There is no analogous federal law or rule imposing a screening mechanism or other conditions on a federal plaintiff's right to prosecute a malpractice suit.

In Feinstein, the plaintiff argued the statute was procedural in nature and hence inapplicable in federal court. The First Circuit disagreed, holding that federal courts, sitting in diversity, must apply this statute, notwithstanding its procedural nature, and that because the plaintiff failed to post a bond after a tribunal had determined that plaintiff's case did not present a substantial question of liability, the federal court had to dismiss the case. 643 F.2d at 883.

The Court began with the Rules of Decision Act, 28 U.S.C. § 1652, which provides:

> The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply.

Under the Rules of Decision Act, "the federal courts should conform as near as may be in the absence of other considerations *to state rules even of form and mode* where the state rules may bear substantially on the question whether the litigation would come out one way in the federal court and another way in the state court if the federal court failed to apply a particular local rule." Feinstein, 643 F.2d at 884, *citing* Byrd v. Blue Ridge Rural Elec. Coop., 356 U.S. 525, 536-37 (1958) (emphasis added).

Applying these principles, and noting the "twin aims of the Erie rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws," Feinstein, 643 F.2d at 884, the First Circuit observed that the medical malpractice statute was adopted "to discourage frivolous claims whose defense would tend to increase premium charges for medical malpractice insurance ... as part of a comprehensive package designed to ensure the continued availability of medical malpractice insurance at a reasonable cost." Id. at 885 (citations and quotations omitted). The statute serves "these substantive policy objectives by providing for <u>a prompt determination of the likely merits of a claim</u>," which made "the procedures [of the statute] more than simply a 'form and mode' of regulating litigation in the state courts." Id. (emphasis added). Accordingly, the Rules of Decision Act required the federal courts "to apply the state rules at issue here." Id. The "constraints imposed on a plaintiff by the necessity of either prevailing before the tribunal or filing a bond for the defendant's costs and attorney's fees are state-created limitations on the plaintiff's right of recovery that a federal court must apply in diversity actions." Id. at 888.

In the Court's view, the failure to apply the statute in federal court could "have a significant effect on the outcome of the litigation," and would undermine the twin aims of *Erie*. Id. at 886. It would result in "the inequitable administration of the law by compelling a defendant sued in federal court to forego the procedural protection and substantive right ... afforded by section 60B solely because of the fortuity that there is diversity of citizenship between the litigants." Id. (internal quotations omitted). It would also "encourage forum-shopping by ... plaintiffs ... wishing to avoid the screening procedure mandated in the Massachusetts courts." Id.[5]

---

[5] Feinstein is not the only case involving the application in federal court of state statutes that perform a (continued...)

As explained below, the Massachusetts lis pendens statute – especially in its defensive aspect – is like the medical malpractice tribunal statute in that both provide a prompt determination on the merits of the claim in order to serve a substantive policy objective.

III. THE LIS PENDENS STATUTE IS SUBSTANTIVE, AND FULLY APPLICABLE IN FEDERAL COURT

As noted in the 1937 Advisory Committee Note to Fed. R. Civ. P. 64, which incorporates state-created pre-judgment remedies, "No rule concerning lis pendens is stated [in Rule 64], *for this would appear to be a matter of substantive law affecting State laws of property*" (emphasis added). The lis pendens statute appears in Chapter 184, the chapter containing general provisions regarding real property. Lis pendens memoranda are part of the state-law system of recorded land titles. When recorded in the land registry, a lis pendens memorandum is a cloud on title, adversely affecting marketability, transferability, and financability of real estate.[6] Debral Realty, Inc. v. DiChiara, 383 Mass. 559, 564 (1981). A lis pendens memorandum does not simply affect the parties to the suit but impairs would-be buyers, lenders, land developers, commercial lessees, and title insurance companies, none of whom are before the court.

Under the common law, before there was a lis pendens statute, a lawsuit affecting title gave notice to the world, and the judgment bound anyone who acquired an interest in the land while the suit was pending. Id. at 560. This created a problem, as court dockets do not cross-

---

gate-keeping or litigation-mitigation function. See, e.g., Cohen v. Beneficial Loan Corp., 337 U.S. 541 (1949) (in diversity action, federal court must apply state bond-posting statute, which requires plaintiff to post bond in amount determined by judge "as a condition of further prosecution of the suit" to secure potential post-judgment attorney fee award in stockholder derivative action); Woods v. Interstate Realty Co., 337 U.S. 535, 538 (1949) (state door-closing statute, denying unregistered foreign corporations right to sue in state court, must be applied in federal court; where "one is barred from recovery in the state court, he should likewise be barred in the federal court"); Dopp v. Pritzker, 38 F.3d 1239, 1252 (1st Cir. 1994) (Rule 44.1(d) of Puerto Rico Rules of Civil Procedure is substantive for *Erie* purposes and must be applied in federal court sitting in diversity; rule requires court to determine and assess attorney's fees against party deemed to be obstinate or frivolous).

[6] A cloud on title exists unless, on the face of the public record, the title can be sold "free from obvious defects, and substantial doubts" and the record shows an "indefeasible unencumbered estate." King v. Stephens, 9 Mass. App. Ct. 919, 920 (1980).

reference land titles, leaving a buyer without a practical way to learn of litigation that could affect the title. To create a convenient place for buyers to learn of pending litigation, in 1877 the legislature adopted the first iteration of the lis pendens statute, St. 1877, c. 229, providing in substance that parties who have no actual knowledge of a lawsuit take title free and clear of any claims in the suit, unless a lis pendens memorandum is recorded in the applicable land registry.[7]

This statute left open a potential for abuse. It gave plaintiffs unfettered freedom to record a lis pendens memorandum, without any form of judicial oversight. The statute did not prevent an unscrupulous plaintiff in a suit for damages, where title to land was not in issue, from recording a lis pendens memorandum, clouding the defendant's title, and thereby gaining improper leverage.

To address this potential for abuse, the legislature amended the statute in 1985 to require judicial approval before a plaintiff could record a lis pendens memorandum. The amended statute accorded little discretion to the reviewing judge. The judge was limited to reviewing the complaint to see whether it put the right to title, use, or occupancy of land in issue. If so, the judge was required to endorse the lis pendens memorandum, even if the complaint would not survive a motion to dismiss. Sutherland v. Aolean Dev. Corp., 399 Mass. 36, 41 n.6 (1987).

This amended statute solved some but not all problems. It still enabled any unhappy would-be buyer with an unmeritorious claim to bring suit, and through the lis pendens statute, cloud the owner's title, impair the free alienability of the owner's land, and thereby gain unwarranted leverage to secure or resurrect a deal that had failed. To eliminate this potential for abuse, the legislature passed the current iteration of the statute. A claimant is still entitled to

---

[7] This reflects the importance Massachusetts places on the state of land titles as appearing in public land registries. See Swasey v. Emerson, 168 Mass. 118, 120 (1897) (Holmes, J.) ("When the title to land is dealt with, the intent of the registry laws is that purchasers should not be required to look beyond the registry of deeds further than is absolutely necessary").

record a lis pendens memorandum, and thereby cloud the defendant's title at the inception of the suit, by showing a judge that the complaint puts the right to title, use, or occupancy of land in issue.[8] But the defendant is now permitted to clear the title at the inception of the suit by showing the judge – through a special motion to dismiss and supporting affidavits – that the complaint is "frivolous because (1) it is devoid of any reasonable factual support; or (2) it is devoid of any arguable basis in law; or (3) the action or claim is subject to dismissal based on a valid legal defense such as the statute of frauds." G.L. c.184 § 15 (c).

As with the medical malpractice statute, this statute provides for the prompt derailing of claims with no legal merit. If the claim has some legal merit, it may proceed. Creating a mechanism to screen out claims with no legal merit at the inception of the case furthers a substantive state policy to (a) facilitate land transactions, (b) preserve the integrity of the land registration system, and (c) prevent unworthy claimants from interfering with other people's transactions by the assertion of frivolous claims, claims that would delay or obstruct real estate and financing deals and make them more expensive.

Properly viewed, the lis pendens statute is not a procedural statute but is part of the state statutory scheme for the regulation of land titles and the public land recording system. It establishes the circumstances and standards that someone must meet to record a notice of litigation in a defendants' chain of title, and the circumstances and standards by which a defendant can obtain a speedy removal of the resulting cloud on title. The statute recognizes the serious harm property owners and third parties face if a lis pendens is allowed to remain of record when the claim on which it rests is meritless. The entire statutory scheme is therefore

---

[8] The statute raises the stakes for would-be abusers by requiring plaintiffs to sign their complaints under penalties of perjury and to make full disclosure of all material facts, which would therefore include facts that undercut the plaintiff's right to relief.

13

designed to balance the interests of parties with genuine (though disputed) claims against the interests of parties who seek to exercise their property rights free from encumbrance by meritless claims. To achieve this balance, the legislature created an even-handed mechanism for both encumbering property and removing the encumbrance.

The lis pendens system is a creature of state law, enabling someone to give notice of claims that are themselves creatures of state law. In the current version of the statute, the legislature has permitted a claimant to encumber someone else's title during a lawsuit. But it has conditioned or qualified that right by enabling the landowner to demonstrate expeditiously that the underlying claim is frivolous and, in making such a demonstration, to remove the cloud on title by extinguishing the claim.

The legislature is free to create or abolish claims. Klein v. Catalano, 386 Mass. 701, 712 (1982) (legislature may "abolish causes of action once recognized by the common law to further permissible legislative objectives"). It is likewise free to qualify them. "[W]hen local law that creates the cause of action qualifies it, [the] federal court must follow suit...." Gasperini v. Center For Humanities, Inc, 518 U.S. 415, 428 (1996) (internal quotations and brackets omitted), *citing* Ragan v. Merchants Transfer & Warehouse Co., 337 U.S. 530 (1949).

Here, the legislature that created the lis pendens mechanism qualified it. As it did with medical malpractice claims, the legislature conditioned a plaintiff's cause of action on the ability to survive the screening mechanism in the lis pendens statute. The federal court must therefore apply the statute as the legislature envisioned, for otherwise the Court will be refusing to protect landowners, recorded land titles, and the ability to conduct land transactions in the manner the legislature specified and had the right to specify. The legislature did not intend to enable a claimant to burden someone else's title without being exposed to the landowner's remedy to rid

himself of the title-clouding claim.

For these reasons, federal courts have not hesitated to apply and enforce state-created mechanisms for removing a lis pendens. See Orange County, California Airport Hotel Assoc. v. Hongkong & Shanghai Banking Corp., 52 F.3d 821 (9th Cir. 1994) (dismissing, as interlocutory, appeal from district court order dissolving lis pendens under California statute that requires court to expunge lis pendens if claimant has not, on preliminary basis, "established by a preponderance of the evidence the probable validity of the real property claim"); Demenus v. Tinton 35 Inc., 873 F.2d 50 (3rd Cir. 1989) (dismissing, as interlocutory, appeal from district court order dissolving lis pendens under New Jersey statute that authorized court to dissolve notice of lis pendens if the strength of plaintiff's case does not outweigh the detriment imposed on defendant by continuation of lis pendens); Beefy King International, Inc. v. Veigle, 464 F.2d 1102 (5th Cir. 1972) (affirming district court order dissolving lis pendens under Florida statute that permits court to "control and discharge notice of lis pendens as the court may grant and dissolve injunctions").[9] See Griffin v. Federal Land Bank, 1989 U.S. Dist. LEXIS 6309 * 4 (D. Kan. 1989) (Kansas lis pendens statute was "intended to outline comprehensively the subject of lis

---

[9] One might argue that these cases are distinguishable because the special motion to dismiss in Massachusetts results in the dismissal of the claim, rather than in the mere dissolution of the lis pendens. The *Erie* issue, however, is not whether the statute is unwise or too broad to achieve its apparent objective. Rather, the issue is whether the statute, if not applied in federal court, would produce a different outcome or affect a plaintiff's choice of forum. To the extent the wisdom of the legislature's solution is in issue, the legislature could well have decided that dismissal of the claim, rather than dissolution of the lis pendens, is the proper antidote. Before the adoption of the current statute, there was an open question about the efficacy of a dissolution of lis pendens, because the lis pendens merely served a notice function, and a party with actual knowledge of the suit would be bound by the result, regardless of whether a lis pendens were on record. Debral Realty, Inc. v. DiChiara, 383 Mass. 559, 565-66 (1981) (private party could publicize existence of lawsuit and thereby alert potential buyers, achieving same practical result as filing of lis pendens). See also Sutherland v. Aolean Dev. Corp., 399 Mass. 36, 42 (1987) (questioning, but not deciding, effect of dissolution of lis pendens on persons who have actual knowledge of lawsuit whether by way of the dissolved lis pendens or otherwise). The legislature could well have concluded that dismissal of the suit is the only sure way to restore the insurability of title and thereby restore the landowner's practical ability to deal with the property free of any specter of a cloud that might exist if the litigation were allowed to proceed after dissolution of the lis pendens. See Debral Realty, Inc. v. DiChiara, 383 Mass. 559, 565-66 (1981) ("disposition favorable to the property owner whether as the result of a pretrial motion or a trial on the merits results in the removal of any detrimental effects of the lis pendens procedure on contemplated transactions involving the property").

15

pendens;" "there appears no reason for not applying statutory lis pendens requirements in a federal court action which involves title to real property").

## IV. THE LIS PENDENS SPECIAL MOTION TO DISMISS IS MATERIALLY DISTINGUISHABLE FROM THE ANTI-SLAPP SPECIAL MOTION TO DISMISS

Plaintiff argues that the decisions in Baker v. Coxe, 940 F. Supp. 409 (D. Mass. 1996) and Stuborn L.P. v. Bernstein, 245 F. Supp. 312 (D. Mass. 2003) mandate denial of defendant's special motion to dismiss on the ground, allegedly, that federal courts cannot hear special motions to dismiss created by state statute. Plaintiff's argument overlooks the fundamental differences between the Anti-SLAPP statute and the lis pendens statute.[10]

The Anti-SLAPP statute creates a procedure for early dismissal of suits brought against persons for having exercised their right to petition the government. In the typical SLAPP suit, the plaintiff claims that the defendant's opposition to plaintiff's business project in some regulatory proceeding is causing, or has caused, plaintiff to suffer damages. To discourage these types of lawsuits, the Anti-SLAPP statute permits a defendant to file a special motion to dismiss in which defendant's only burden is to show that the suit is based on defendant's petitioning activities, as defined in the statute. G.L. c. 231 § 59H. Such a minimal showing by the defendant shifts the burden to the plaintiff – *the non-moving party* – to prove that:

- defendant's petitioning activities were devoid of any reasonable factual support or any arguable basis in law; and

- defendant's acts caused actual injury to the plaintiff.

This contrasts sharply with the lis pendens statute, where the burden of production and

---

[10] It is difficult to reconcile Baker and Stuborn with Feinstein v. Massachusetts General Hospital, 643 F.2d 880 (1st Cir. 1981), which was not even mentioned in Baker or Stuborn. While plaintiff believes that Baker and Stuborn were wrongly decided in light of Feinstein, and while Baker and Stuborn are not binding on this Court, see 18 J. Moore et al., *Moore's Federal Practice* ¶ 134.02[1][d] (3d ed.1999) (decision of federal district court judge is not binding precedent in same judicial district), this Court need take no position on whether Baker or Stuborn were wrongly decided, since they are distinguishable from the instant case.

persuasion rests with the defendant as the moving party. Further, the Anti-SLAPP statute could be viewed simply as a legislative effort to re-engineer pre-trial procedure in a particular category of lawsuit purely for the benefit of the defendant, whereas the lis pendens statute has a much broader purpose with benefits transcending the parties to the litigation.[11] The lis pendens statute provides a remedy to address collateral damage not simply to the defendant but to others, damage arising from the lawsuit's obstruction of real property transactions. Finally, unlike the lis pendens statute or the medical malpractice statute, the Anti-SLAPP statute is not designed to weed out frivolous claims. Rather, it is designed to require a plaintiff to prove two essential elements of its claim on a preliminary basis under penalty of dismissal, all as a way of insulating particular defendants from litigation where a certain type of conduct of theirs is in question.

## Conclusion

For the foregoing reasons, defendants' special motion to dismiss must be treated in the same manner the motion would be treated in state court.

METRO-BOSTON BROADCASTING, INC.

By its attorneys,

*/s/ Kenneth R. Berman*
Kenneth R. Berman (BBO 040320)
Nutter McClennen & Fish LLP
World Trade Center West
155 Seaport Boulevard
Boston, Massachusetts 02210
(617) 439-2000

Date: 8/2/04

---

[11] Unlike the Anti-SLAPP statute, the lis pendens statute does not appear in chapter 231, which governs pleading, practice, and court proceedings. Of course, a statute could appear in chapter 231, and still apply in federal court, such as the medical malpractice tribunal statute.

## Certificate of Service

I certify that I served the foregoing document today on opposing counsel by hand.

*Kenneth R. Berman*
Kenneth R. Berman

Date: 8/2/04

1345505.3