UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FAFARD REAL ESTATE & DEVELOPMENT CORP., <br><br> Plaintiff, <br><br> vs. <br><br> METRO-BOSTON BROADCASTING, INC., <br><br> Defendant, | CIVIL ACTION NO. 04-11531-RGS |

## DEFENDANTS' MOTION FOR RECONSIDERATION OF, AND ORAL ARGUMENT ON, SPECIAL MOTION TO DISMISS

Defendant moves for reconsideration of, and oral argument on, defendant's special motion to dismiss. As grounds for this motion, defendant says:

1. The special motion to dismiss was premised largely on the ground that plaintiff's repetitive requests for an extension of the May 21, 2004 expiration of the purchase and sale agreement – coupled with plaintiff's unequivocal notice to defendant that plaintiff needed to work out an access issue to Sewall Road before closing, which defendant was under no obligation to resolve – excused defendant from performing as seller under the purchase and sale agreement as a matter of law.

2. Plaintiff at first filed a brief in opposition to the special motion to dismiss, without filing any supporting affidavit. Later, after defendant filed a supplemental brief in support of its motion in response to plaintiff's brief, plaintiff filed a supplemental opposition to the special motion to dismiss together with the affidavit of Janice Hannert, a representative of plaintiff. In substance, Hannert said that plaintiff wanted, but never needed, access to Sewall

Road, and that plaintiff was willing to close despite not having worked out an agreement for access to Sewall Road. Hannert's affidavit also asserted that defendants' alleged failure to generate a recordable plan and to eliminate title defects was a breach of contract.

3. While Hannert's affidavit says many things, it does not dispute the key facts that entitle defendant to judgment. In particular, Hannert's affidavit does not call the Court's attention to, or explain away, two key documents (discussed below) that were attached to the previously filed affidavit of Mary Heller Halcomb, documents that foreclose any recovery by plaintiff. Further, if the facts in Hannert's affidavit are true, the affidavit raises two questions of law, the answers to which demonstrate that plaintiff's complaint is frivolous. Defendant was planning to address these issues either in a reply brief or at the hearing on the motion. However, the motion was decided without a hearing, and defendant therefore did not have a meaningful opportunity to address these issues.

4. The two legal questions raised by Hannert's affidavit are:

    a. After a buyer tells the seller of its unwillingness to close unless a particular conditions is met – a condition the seller was not legally obligated to meet – does the buyer's subjective willingness to close,[1] which was not disclosed to the seller, entitle the buyer to enforce the purchase and sale agreement?

    b. Where the buyer had clearly and objectively manifested its unwillingness to purchase the land without having access to Sewall Road, does the seller's alleged failure to eliminate title defects or the seller's alleged failure to produce a recordable plan entitle the buyer to enforce the purchase and sale agreement?

As we show below, the answer to each of these questions is no. These are not even close questions of law. The law is clear on these two points.

5. Reconsideration is appropriate because, Hannert's affidavit, even if true, does

---

[1] For purposes of the special motion to dismiss and this motion for reconsideration, defendant assumes in plaintiff's favor that, despite what plaintiff had said to defendant, plaintiff was subjectively willing to close.

- 2 -

not rescue plaintiff's complaint. If, upon reconsideration, the Court grants defendant's special motion to dismiss, then reconsideration of the motion will have saved the parties and the Court from having to devote significant time and resources to the litigation of this case.

### The Buyer's Statements To The Seller About Its Willingness To Close And Its Need For Access To Sewall Road, And Not The Buyer's Undisclosed Subjective Intent, Determine Whether The Buyer May Enforce The Purchase And Sale Agreement

6. Hannert's affidavit (¶ 9) asserts that plaintiff only *wanted* access to Sewall Road before closing, but never *needed* or *required* such access before closing. Hannert's affidavit claims that plaintiff already had access to the property through Adams Road, and that a second means of access through Sewall Road, though desirable, was never something plaintiff actually needed.[2]

7. Though this may have been plaintiff's subjective intent, a point defendant concedes for purposes of this motion but will disprove at trial if necessary, this is not what plaintiff told defendant before the expiration of the purchase and sale agreement. To the contrary, according to numerous faxes from Hannert to defendant, plaintiff *needed* access to Sewall and was unwilling to close without it. While plaintiff also *wanted* to buy additional land from defendant (over and above that which was needed for access to Sewall), plaintiff told defendant that plaintiff *needed* access to Sewall, whether or not plaintiff purchased additional land.[3]

---

[2] Even if plaintiff already had a single access into the site from Adams Road, a second access into the site would have considerably enhanced the development potential of the site. A single access into the site would require doing the development with a dead end street, but the Ashland subdivision regulations prohibit dead end streets in excess of 800 feet. Ashland Subdivision Regulations § 344-12 (F) (2) ("Dead-end streets and their extensions shall not be longer than eight hundred (800) feet"). A second access would have permitted a longer subdivision road, and hence more units of housing. In all events, it does not matter whether plaintiff could have developed the site with only one access. As this motion demonstrates, what matters is what plaintiff *said* to defendant about its needs, and not whether plaintiff's actual needs were different from its stated needs.

[3] There are ways of providing access without purchasing additional land, such as, for instance, by easement or ground lease.

8. Thus, in a May 19, 2003 fax from Janice Hannert – a copy of which was attached as Exhibit G to the previously filed affidavit of Mary Heller Halcomb and another copy of which is attached to this motion as Exhibit A – Hannert told defendant:

> Please find a sketch which shows the connection between the residential land we have under agreement and Sewall Street. As we discussed, <u>we need written confirmation from you that this access is available for our use as joint access</u>. We would also like to obtain additional acreage if it is available <u>but that is a separate issue</u>. We have previously depicted the location of wetlands on the site, which make the Tri Street access unusable.

(emphasis added).

9. In a later fax from Hannert dated November 6, 2003 – a copy of which was included in Exhibit B to the previously filed affidavit of Mary Heller Halcomb and another copy of which is attached to this motion as Exhibit B – Hannert told defendant:

> We also need an answer to the access issue. Attached is another copy of the sketch showing where we <u>need</u> to access the property. <u>The Tri Street access is unusable so we need to access the property from Sewall Street</u> as joint access with other adjacent owners . . . . We are ready to close on this property but <u>need to obtain approval to access through Sewall Street</u> and the update of the property line. Please find an extension of the Purchase and Sale Agreement for your Ashland property <u>until we can obtain these items</u>.

(emphasis added).

10. In a series of faxes on February 12, 2004, February 26, 2004, March 19, 2004, April 16, 2004, May 7, 2004, May 17, 2004, and May 20, 2004 – all of which sought extensions of the closing – Hannert listed three items she said plaintiff needed for the closing:

> We <u>need to resolve the access issue out to Sewall Street</u>, need clean title (see letter dated November 7, 2003) and need a plan we can deed off of.

(emphasis added). Halcomb Aff. Ex. B. "[A]ccess ... out to Sewall" was the first item on Hannert's list. She made no distinction between "clean title," the "plan [to] deed off of," and "access ... out to Sewall." She presented all three items as what she "need[ed]" for the

- 4 -

closing to happen. She did not tell defendant that access to Sewall was desired but not needed.

11.  There is thus a material discrepancy between what Hannert privately believed (according to her affidavit) and what she told defendant. The question of law, therefore, is whether plaintiff's ability to enforce the purchase and sale agreement turns on what Hannert privately believed, or rather on what she told defendant. If plaintiff did not *really* need access to Sewall, but told defendant that plaintiff *did* need access to Sewall before closing, was defendant required to perform under the purchase and sale agreement given that defendant was under no obligation to provide access to Sewall? The answer is no. Plaintiff's multiple requests to postpone the closing pending the satisfaction of an access condition, which plaintiff said it "need[ed]" but which defendant was under no duty to satisfy, excused defendant from performance under the purchase and sale agreement. Leigh v. Rule, 331 Mass. 664, 668 (1954). Plaintiff's suit is barred, even if plaintiff was privately willing to dispense with its expressed "need" for access to Sewall Road. M. De Matteo Constr. Co. v. Daggett, 341 Mass. 252, 258 (1960) (where seller told buyer that seller wanted to negotiate an alternative arrangement and that seller was not willing to close until such an alternative arrangement was made, buyer was not obliged to appear at closing or tender performance and was not in breach for failing to do so "in the absence of seasonable notice [from seller] that performance was to take place" on date called for by agreement); Schilling v. Levin, 328 Mass. 2, 5 (1951) (where buyer showed up at closing but seller did not, buyer could not hold seller in breach where buyer told seller before closing that buyer was unable to close due to lack of financing); Kattor v. Adams, 323 Mass. 686, 688-89 (1949) (buyer's stated unwillingness to go forward with purchase transaction unless seller included three additional acres not covered by purchase and sale agreement "was a breach of the agreement which excused the [sellers] from any further

performance or offer of performance"); Beach & Claridge Co. v. American Steam Gauge & Valve Manuf. Co., 202 Mass. 177, 183-84 (1909) (buyer's statement to defendant that buyer would not go forward with purchase unless certain contingencies happened that were not provided for in the parties' agreement "was a breach by the [buyer] of its agreement, which operated to excuse the [seller] from any further performance or offer of performance").[4]

12. Plaintiff cannot repetitively seek extensions of the date for closing until defendant fulfills a condition that it is under no obligation to satisfy, and then, when defendant declines to grant another extension, assert that defendant is in breach because plaintiff really never meant what it said. Here, plaintiff made three requests for an extension of the purchase and sale agreement beyond May 21, 2004, telling defendant, among other things, that plaintiff needed to arrange with defendant for access rights to Sewall before closing. One does not request an extension, much less request it on three occasions, if one is ready, willing, and able to close by the date called for in the agreement. Under the circumstances, what plaintiff said, and not what plaintiff privately intended but never communicated, controls. Gentile Bros., Corp. v. Rowena Homes, Inc., 352 Mass. 584, 587, 589 (1967) (when seller told buyer that seller would not show up at registry for closing on agreed-upon day for performance, buyer had right to rely on seller's statement and was not in breach for not appearing at registry, even though seller appeared at registry to close transaction).

<u>In Light Of Plaintiff's Insistence On Access To Sewall Before
Closing, Defendant Was Excused, As A Matter Of Law, From
Its Alleged Obligations To Prepare A Recordable Plan And To Clear Title</u>

13. Plaintiff claims that defendant's failure to prepare a recordable plan and failure

---

[4] See also Mayer v. Boston Metropolitan Airport, Inc., 355 Mass. 344, 354 (1969) (where party to land purchase agreement informed other party of its unwillingness to perform on terms required by the contract, party did not "accrue rights under the contract" and could not hold other party in breach).

to clear title defects were breaches of the purchase and sale agreement. They were not. Assuming in plaintiff's favor that the purchase and sale agreement obligated defendant to prepare such a plan and to clear title defects, the time for defendant to have cleared title and to deliver a recordable plan was either at closing, or within 30 days after the date scheduled for closing. Hannert Aff. Ex. 1 [Purchase and Sale Agreement] ¶¶ 8, 10.

14. However, defendant had no obligation to do either of these things because plaintiff had told defendant of its unwillingness to close without having access to Sewall. On this point, the law is clear that, when one party to a purchase and sale agreement tells the other party of its unwillingness to go forward with the transaction except on new terms, the second party is not obligated to attend the closing, to clear title, to deliver deeds, or otherwise to perform its end of the bargain. To hold a party in breach, the party seeking to enforce a contract must show not simply that it was ready to perform its part of the bargain, but also that it was willing and able to perform and that it "manifested this by some offer of performance." Leigh v. Rule, 331 Mass. 664, 668 (1954). When the buyer gives notice that it does not intend to perform, or that it is unwilling to perform unless the seller and buyer can agree on new terms not addressed in the existing agreement, the seller is excused from performance. Id. (tender of performance not necessary if the other party has shown he will not perform).

15. In Schilling v. Levin, 328 Mass. 2 (1951), the buyer told the seller that it could not finance the deal and therefore would not show up at the closing. Later, the buyer changed its mind and showed up at the time and place set for the closing without informing the seller of its intent to do so. In a later suit by the buyer for specific performance, the Court held that, in light of the buyer's earlier statement that it could not finance the deal, the buyer's appearance at the closing was a sham and the seller was not in breach for failing to appear at the closing.

Further, the Court held that the buyer could not charge the seller with breach for failing to clear title of a mortgage encumbrance. The buyer could not take advantage of the seller's failure to clear title after having told the seller that the buyer was unable to perform. Id. at 5.

16. Leigh and Schilling bar plaintiff from complaining about defendant's alleged failure to clear title or provide a subdivision plan. Having told defendant that plaintiff was not prepared to close without getting access to Sewall Road, plaintiff's appearance at the closing was a sham and plaintiff cannot hold defendant in breach for failing to clear title or appear at the closing. Id.

METRO-BOSTON BROADCASTING, INC.

By its attorneys,

*/s/ Kenneth R. Berman*
Kenneth R. Berman (BBO 040320)
Nutter McClennen & Fish LLP
World Trade Center West
155 Seaport Boulevard
Boston, Massachusetts 02210
(617) 439-2000

August 20, 2004

Local Rule 7.1 Certificate

On August 20, 2004, I placed a call to opposing counsel Halye Sugarman in a good faith effort to resolve the issues presented by this motion. Ms. Sugarman and her co-counsel Mr. Upton were both unavailable. I intend to supplement this certificate after speaking with Ms. Sugarman or Mr. Upton. Given that this motion seeks reconsideration of an underlying dispositive motion, and that plaintiff has already filed two or three memoranda and an affidavit in opposition to the underlying motion, I do not expect to be able to reach agreement with opposing counsel on this motion for reconsideration.

*/s/ Kenneth R. Berman*
Kenneth R. Berman

## Certificate Of Service

I certify that I served this document today on opposing counsel by hand.

*[signature]*
Kenneth R. Berman

August 20, 2004

1355060.1