UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FAFARD REAL ESTATE &
DEVELOPMENT CORP.,

    Plaintiff/Defendant-in Counterclaim

vs.

METRO-BOSTON BROADCASTING,
INC.,

    Defendant/Plaintiff-in-Counterclaim

Civil Action No. 04-11531 RGS

## ANSWER AND COUNTERCLAIM
## [JURY TRIAL DEMANDED]

### First Defense

The verified complaint fails to state a claim upon which relief can be granted.

### Second Defense

Defendant (Metro-Boston) answers the paragraphs of the verified complaint as follows:

Introduction.  Defendant denies the first sentence of the Introduction. Defendant admits the second and third sentences of the Introduction. The Defendant denies the fourth and fifth sentences of the Introduction. Defendant admits that the parties extended the date for performance numerous times, most recently until May 21, 2004, and denies the remainder of the sixth sentence of the Introduction. Defendant admits that Metro-Boston has not prepared a new subdivision plan and otherwise denies the seventh sentence of the Introduction. Defendant admits that it did not appear at Middlesex South Registry of Deeds and denies the remaining allegations in the eighth sentence of the Introduction. Defendant admits that on May 21, 2004,

Metro-Boston sent plaintiff (Fafard) a letter, the terms of which speak for itself, and denies the remaining allegations in the ninth sentence of the Introduction.

1. Admitted.

2. Admitted.

3. There is no paragraph 3.

4. Denied.

5. Denied.

6. Admitted.

7. Admitted.

8. Defendant admits that on or about January 31, 2001, Metro-Boston (as general partner of Tower Sites Limited Partnership) and Fafard executed a purchase and sale agreement for the sale of land in Ashland, Massachusetts, and that a copy of the purchase and sale agreement is attached to the verified complaint as Exhibit 1. Defendant denies the remaining allegations in paragraph 8.

9. Admitted.

10. Admitted.

11. Paragraph 11, which pleads conclusions of law and attempts to characterize the terms and meaning of a written agreement, requires no answer. To the extent, paragraph 11 alleges any facts which require a response, Defendant admits that the Agreement excepted certain encumbrances, admits that the words "a good and clear record and marketable title" appear in the purchase and sale agreement, and otherwise denies the remaining allegations in paragraph 11.

12. Denied.

13. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 13.

14. Paragraph 14 attempts to characterize the terms of a written agreement, which speaks for itself. Therefore, no response is required to paragraph 14. To the extent paragraph 14 alleges any facts to which a response might be required, defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 14.

15. Defendant admits that the agreement states "All permits and approvals shall be secured at Buyer's expense on or before January 31, 2002. Buyer shall give quarterly reports during term of Agreement as to status of permits and approvals sought. Closing to occur thirty (30) days after receipt of all permits or February 28, 2002, whichever is earlier." Defendant denies the remaining allegations in paragraph 15.

16. Admitted.

17. Denied.

18. Defendant admits that the parties did not close the sale of the Ashland property. Defendant denies the remaining allegations in paragraph 18.

19. Defendant admits that on or about January 30, 2002, the parties executed an "Extension For Purchase and Sale Agreement," which stated: "Permit and Approval date extended to April 30, 2002 and the time for performance under the Purchase and Sale Agreement dated 30 January 2001 for the above-mentioned property between Metro-Boston Broadcasting, Inc., General Partner, Tower Sites Limited and Fafard Real Estate and Development Corp. or Nominee is extended until May 31, 2002." Defendant denies the remaining allegations in paragraph 19.

20. Defendant admits that Metro-Boston did not provide Fafard with a new

subdivision plan and denies the remaining allegations in paragraph 20.

21. Defendant admits that the parties signed a number of documents entitled "Extension For Purchase and Sale Agreement," all at plaintiff's request, the effect of which was to extend the time for performance under the closing agreement, and that the last such document extended the time for performance to May 21, 2004. Defendant denies the remaining allegations in paragraph 21.

22. Defendant admits that on or about November 7, 2003, Fafard sent Metro-Boston a letter identifying certain alleged encumbrances that Plaintiff requested be addressed or removed before the closing. Defendant lacks knowledge of information sufficient to form a belief as to the truth of the remaining allegations in paragraph 22.

23. Denied.

24. Defendant admits that Metro-Boston did not provide Fafard with a new subdivision plan and denies the remaining allegations in paragraph 24.

25. Defendant admits that on May 21, 2004, it sent plaintiff a letter stating, in substance, that defendant would not grant any additional extension for the purchase and sale agreement and that the letter addressed other subjects as well. Defendant denies the remaining allegations in paragraph 25.

26. Defendant admits that Metro-Boston did not appear at a closing on May 21, 2004. Defendant denies that there was a closing on May 21, 2004 and denies the remaining allegations in paragraph 26.

27. Defendant repeats and incorporates by reference its responses to paragraphs 1 through 26.

28. Defendant admits that it signed a purchase and sale agreement for the sale to

4

Fafard of real estate in Ashland, Massachusetts. Defendant denies that Fafard may enforce the purchase and sale agreement. To the extent there are any remaining allegations in paragraph 28, defendant denies them.

29. Denied.

30. The terms of the purchase and sale agreement speak for themselves, and therefore no answer is required to paragraph 30. To the extent that paragraph 30 alleges any facts to which a response is required, defendant admits that the purchase and sale agreement stated, among other things, that, with certain exceptions and subject to certain conditions, a deed was to be delivered conveying a good and clear record and marketable title, free from encumbrances. Defendant denies the remaining allegations in paragraph 30.

31. Denied.

32. Denied.

33. Denied.

34. Defendant repeats and incorporates by reference its responses to paragraphs 1 through 33.

35. Defendant admits that it signed a purchase and sale agreement for the sale to Fafard of real estate in Ashland, Massachusetts. Defendant denies that Fafard may enforce the purchase and sale agreement. To the extent there are any remaining allegations in paragraph 35, defendant denies them.

36. Denied.

37. Defendant admits that the time for performance under the purchase and sale agreement expired on May 21, 2004. Defendant denies that May 21, 2004 was "the mutually

agreed upon closing date." Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 37.

38.    Defendant admits that it did not appear at a closing but denies that a closing was scheduled. Defendant denies the remaining allegations in paragraph 38.

39.    Denied.

40.    Defendant repeats and incorporates by reference its responses to paragraphs 1 through 39.

41.    Defendant admits that it signed a purchase and sale agreement for the sale to Fafard of real estate in Ashland, Massachusetts. Defendant denies that Fafard may enforce the purchase and sale agreement. To the extent there are any remaining allegations in paragraph 41, defendant denies them.

42.    The terms of the purchase and sale agreement speak for themselves, and consequently no answer is required to paragraph 42. To the extent that paragraph 42 alleges any facts to which a response is required, defendant admits that the purchase and sale agreement stated, among other things, that, with certain exceptions and subject to certain conditions, a deed was to be delivered conveying a good and clear record and marketable title, free from encumbrances. Defendant denies the remaining allegations in paragraph 42.

43.    Defendant admits that it has not given Fafard title to the real estate and that it did not provide Fafard with a new subdivision plan. Defendant denies the remaining allegations in paragraph 43.

44.    Denied.

45.    Denied.

46.    Denied.

### Third Defense

Plaintiff has failed to comply with conditions precedent. In particular, plaintiff was not ready, willing, or able to close the transaction because plaintiff insisted that defendant agree to additional terms to provide plaintiff with an access to Sewall Road, which defendant was under no obligation to give. Plaintiff was neither ready, willing, nor able to close on the transaction without such access and so notified defendant on numerous occasions before the agreement expired. Also, the purchase and sale agreement imposed on plaintiff the obligation to secure, at plaintiff's own expense, whatever subdivision approvals it needed for the subject premises. Plaintiff claims that it needed approval of such a subdivision plan to close the transaction and that this condition remained unfulfilled as of the time the purchase and sale agreement expired.

### Fourth Defense

Plaintiff's complaint is barred by the statute of frauds in that there is no written agreement fixing the location of an essential boundary line.

### Fifth Defense

The purchase and sale agreement is void for its failure to set forth all essential terms.

### Sixth Defense

The parties never had a meeting of the minds on all essential terms of an agreement.

### Seventh Defense

The purchase and sale agreement contains an exclusive remedy that bars plaintiff's cause of action.

### Eighth Defense

Plaintiff comes to court with unclean hands.

Ninth Defense

Plaintiff has waived its purported claims.

Tenth Defense

Plaintiff is estopped from asserting its purported claims.

Eleventh Defense

Plaintiff breached its obligation, set forth in the purchase and sale agreement, to report to defendant on the status of plaintiff's efforts to obtain permits.

COUNTERCLAIM

Introduction

1. Defendant/plaintiff-in-counterclaim seeks relief for abuse of process, interference with advantageous relations, and violations of G.L.c. 93A, arising from the assertion by defendant-in-counterclaim of groundless or unmeritorious litigation to cloud title to land owned by plaintiff-in-counterclaim and thereby interfere with the ability of plaintiff-in-counterclaim to sell the land to third parties.

Parties

2. Plaintiff-in-counterclaim is Metro-Boston Broadcasting, Inc. ("Metro-Boston"), is the general partner of Tower Sites Limited Partnership ("Tower Sites"). Metro-Boston brings this counterclaim in its capacity as general partner of Tower Sites and on Tower Sites' behalf. Metro-Boston is a Texas corporation and Tower Sites is a Texas limited partnership. Metro-Boston and Tower Sites have their principal places of business in Dallas, Texas. Tower Sites is the owner of land in Ashland, Massachusetts, and was party to a purchase and sale agreement with defendant-in-counterclaim.

3.  Defendant-in-counterclaim, Fafard Real Estate & Development Corp. ("Fafard"), is a Massachusetts corporation and is engaged in the trade or business of real estate development. Fafard was the buyer under a purchase and sale agreement with Tower Sites. Upon information and belief, Fafard's principal place of business is in Ashland, Massachusetts

## Jurisdiction

4.  This court has jurisdiction because this is a controversy between citizens of different states and the amount in controversy exceeds $75,000.

5.  Venue is proper in this district because defendant-in-counterclaim is a citizen of Massachusetts and the land at issue is in Massachusetts.

## Facts and Claims

6.  Fafard and Tower Sites entered into a purchase and sale agreement for land in Ashland, Massachusetts, which Fafard intended to develop as a residential development (the "Locus"). The purchase and sale agreement initially called for performance in February of 2002, but the parties, by numerous written extension agreements requested by Fafard, extended the date for performance, the last such extension expiring on May 21, 2004.

7.  At the time the parties entered the purchase and sale agreement, Fafard expected and intended to have access to the Locus through a portion of the locus fronting on Tri Street in Ashland. However, after signing the purchase and sale agreement, Fafard learned it could not have access through Tri Street because the part of the Locus fronting on Tri Street was wetlands. Accordingly, Fafard notified Tower Sites that, before closing on the purchase of the Locus, Fafard would need to have access to the Locus from Sewall Street (a/k/a Sewall Road), a road near, but not fronting on, the Locus.

8. Sewall Street is separated from the Locus by other land owned by Tower Sites. Tower Sites was and remains under no obligation to provide Fafard with access to Sewall Street, and in fact Tower Sites has never agreed to provide Fafard with access to the Locus through Sewall Street.

9. Because Fafard notified Tower Sites that Fafard needed access to the Locus through Sewall Street before Fafard would close the transaction, and because Fafard had not been given rights of access to the Locus through Sewall Street, Tower Sites was under no obligation to close the sale.

10. After the purchase and sale agreement expired on May 21, 2004, Fafard brought a groundless lawsuit against Metro-Boston purportedly to enforce the purchase and sale agreement. In that lawsuit, Fafard has falsely claimed that Metro-Boston was in breach of the purchase and sale agreement for not closing or being ready to close the transaction on May 21, 2004, when in fact Fafard knew that (a) it had repeatedly informed Tower Sites that it would need access to Sewall Road before it would close the transaction, and (b) Fafard had not been granted such access by the time the purchase and sale agreement expired.

11. Fafard is suing Metro-Boston with malice for the improper and unlawful purpose of clouding Tower Sites' title, interfering with Tower Sites' ability to convey the property to others, and thereby gain leverage over Tower Sites to negotiate for the acquisition of Tower Sites' property.

12. The foregoing actions by Fafard constitute an abuse of process, interference with Tower Sites' advantageous relations with other potential buyers for the property, and unfair or deceptive acts or practices in the course of Fafard's trade or commerce.

13. The foregoing actions have damaged Tower Sites.

14. The foregoing actions were knowing or willful, for which Fafard is liable to Tower Sites for double or treble damages.

15. All conditions precedent have been performed or have occurred.

<u>Prayers For Relief</u>

WHEREFORE, plaintiff-in-counterclaim prays that this Court:

1. Determine the damages sustained by plaintiff-in-counterclaim and award judgment in that amount, doubled or trebled pursuant to G.L. c. 93A, § 11;

2. Award plaintiff-in-counterclaim its attorneys' fees and costs;

3. Grant such other and further relief as the Court deems meet and just.

DEFENDANT/PLAINTIFF-IN-COUNTERCLAIM DEMANDS A TRIAL BY JURY.

METRO-BOSTON BROADCASTING, INC.

By its attorneys,

*/s/ Kenneth R. Berman*
Kenneth R. Berman (BBO #040320)
Nutter McClennen & Fish LLP
World Trade Center West
155 Seaport Boulevard
Boston, Massachusetts 02210
(617) 439-2000

Date: 8/23/04

<u>Certificate of Service</u>

I certify that I served the foregoing document today on opposing counsel by mail.

*/s/ Kenneth R. Berman*
Kenneth R. Berman

Date: 8/23/04

1354310.2