UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FAFARD REAL ESTATE & DEVELOPMENT CORP., <br><br> Plaintiff, <br><br> vs. <br><br> METRO-BOSTON BROADCASTING, INC., <br><br> Defendant, | CIVIL ACTION NO. 04-11531-RGS |

DEFENDANT'S MEMORANDUM IN SUPPORT
OF ITS MOTION TO DISSOLVE LIS PENDENS,
OR, IN THE ALTERNATIVE, FOR RECONSIDERATION

Introduction

Plaintiff has taken advantage of the removal of this case to federal court to change its position on a fundamental issue fatal to plaintiff's motion for endorsement of a memorandum of lis pendens case.[1] Plaintiff's new position on this issue, while seemingly side-stepping the problems created by plaintiff's former position, creates new problems, which are also fatal to the endorsement of a memorandum of lis pendens.

When this case was in state court, plaintiff's position was that it bargained to purchase so much of Lot 11 as was zoned residential. When defendant filed its special motion to dismiss in state court, defendant pointed out that plaintiff's position not only led to having an unendorsable memorandum of lis pendens but required dismissal of the complaint, as it proved the parties had failed to reach agreement on an essential term, i.e. the location of the northeastern boundary line

---

[1] Plaintiff did not conduct a Local Rule 7.1 conference for its initial or renewed motion for a lis pendens memorandum.

of the land to be conveyed.

After defendant removed the case to federal court, plaintiff filed new papers in this court and changed its position. In particular, plaintiff now denies that its bargain was to purchase so much of Lot 11 as was zoned residential. Instead, plaintiff claims that its bargain was to purchase 10 acres in Lot 11, regardless of how zoned.

As discussed below, plaintiff's change of position bespeaks not simply a fatal weakness in its case, but still leaves plaintiff without an endorsable memorandum of lis pendens. Plaintiff's memorandum of lis pendens should be dissolved because:

    a.    Plaintiff's lis pendens memorandum does not, and cannot, describe the land affected by this action, as required by G.L. c. 184, § 15;

    b.    Plaintiff's complaint should be dismissed in accordance with defendant's motion for reconsideration of its special motion to dismiss;

    c.    Plaintiff's verified complaint failed to reveal all material facts, as required by G.L. c. 184, § 15.

## Discussion

### I. PLAINTIFF'S MEMORANDUM OF LIS PENDENS SHOULD BE DISSOLVED BECAUSE IT DOES NOT AND CANNOT DESCRIBE THE LAND AFFECTED BY THIS ACTION

When plaintiff sought endorsement of its proposed memorandum of lis pendens in state court, it filed a proposed memorandum describing its lawsuit as seeking "the enforcement of a Purchase and Sale Agreement for real estate located at Lots 6B, 12, and <u>that portion of Lot 11 zoned "Residential,"</u> Sewall Street, Ashland, in Middlesex County of Massachusetts" (emphasis added).[2] The memorandum then described the affected property as follows:

> [T]he property so affected is that certain plot, piece or parcel of land in Ashland, MA, known and numbered as Lots 12, 6B, and <u>that portion of Lot 11 zoned "Residential,"</u>

---

[2] A copy of plaintiff's first proposed memorandum of lis pendens, filed in state court, is attached as Exhibit A.

> Sewall Street, which land is shown on a plan of land record [sic] in the Middlesex Registry of Deeds as Plan #16849 of 1981, and is more fully described in a deed recorded with the Middlesex South Registry of Deeds in Book 936, Page 51.

(emphasis added).

In its state court brief filed in opposition to plaintiff's motion to endorse its proposed lis pendens memorandum, and in the previously filed affidavit of Mary Heller Halcomb (¶¶ 21-26), defendant explained the parties' dealings on trying to identify what part of Lot 11 as was zoned residential and pointed out two consequences. First, because of (a) a discrepancy between where the zoning line actually was and a hand-drawn approximated boundary line in the drawing attached to the purchase and sale agreement, (b) plaintiff's reservation of a right to petition the Town of Ashland to "straighten" the zoning line, and (c) the parties' intent to fix the boundary line once the location of the zoning line was straightened or otherwise determined, the agreement was unenforceable due to a failure of the parties' minds to meet on all essential terms. Second, because of the uncertainty surrounding the location of this boundary line, plaintiff's proposed lis pendens memorandum was unendorsable.

When the case came over to federal court, the clerk asked plaintiff to file "new versions of the plaintiff's Motion for Lis Pendens and Memorandum of Lis Pendens containing the Federal Court's caption," see Exhibit B (first para.), which plaintiff filed on July 15, 2004. However, instead of simply changing the caption as the clerk had requested, plaintiff also changed the content of the proposed lis pendens memorandum. The change was material, and plaintiff did not call it to the attention of the Court or defendant's counsel.[3] The change removed all references to the "portion of Lot 11 zoned Residential." Instead, plaintiff's new proposed lis

---

[3] Plaintiff's first motion for a lis pendens, as filed in this Court, was denied without prejudice shortly after it was filed and before defendant had a chance to point out the changes plaintiff made to the proposed memorandum.

pendens memorandum – which plaintiff replicated on August 17, 2004 when it filed its renewed motion for a lis pendens – seeks a lis pendens on 10 unspecified acres in Lot 11. It describes the land as follows:

> [T]he property so affected is that certain plot, piece or parcel of land in Ashland, MA, known and numbered as Lots 12, 6B, and <u>ten (10) acres of Lot 11</u>, which land is shown on a plan of land recorded in the Middlesex Registry of Deeds as Plan #16849 of 1981, and is more fully described in a deed recorded with the Middlesex South Registry of Deeds in Book 936, Page 51.

(emphasis added).

This change in plaintiff's position has consequences for whether a lis pendens memorandum should, or even can, be endorsed. The lis pendens statute requires that a memorandum of lis pendens contain a "description of the real property sufficiently accurate for identification." G.L. c. 184 § 15 (a). Further, a lis pendens memorandum should not cover "more land ... than the subject matter of the action asserts an interest in." <u>Sutherland v. Aolian Dev. Corp.</u>, 399 Mass. 36, 41 (1987).[4]

Upon reading defendant's state court opposition to the motion, plaintiff must have realized that the likelihood of getting a lis pendens memorandum on the "portion of Lot 11 zoned residential" was problematical, as very little, if any, of Lot 11 is zoned residential (Halcomb Aff. ¶ 24) and such a land description is too vague to support a lis pendens memorandum. Further, such a land description drew attention to the fact that the parties had never reached agreement on the location of the northeastern boundary line.

By recasting the proposed lis pendens memorandum as affecting "10 acres of Lot 11," plaintiff's proposed lis pendens memorandum invites new, and fatal, obstacles to the

---

[4] In <u>Sutherland</u>, the Court recognized an exception to this rule, not applicable in this case, where the purchase and sale agreement enables the seller to select which lots to convey from a multi-lot tract. Until the seller makes the selection, it would be appropriate for the lis pendens to cover the entire tract, but once the selection is made, the memorandum must be revised to cover only the lots selected. 399 Mass. at 41.

4

endorsement of a lis pendens memorandum. To be sure, a narrative description of the land in the purchase and sale agreement describes the land to be conveyed as including "a portion of lot 11 (10 acres) . . . ." But the proposed lis pendens memorandum fails to describe which 10 acres are affected, a problem rooted in the fact that the parties' never finally agreed where the boundary line would be (Halcomb Aff. ¶¶ 21-26).[5]

Plaintiff only compounds the problem by having the proposed lis pendens memorandum describe the affected 10 acres as: the "land is shown on a plan of land recorded in the Middlesex Registry of Deeds as Plan # 16849 of 1981 and is more fully described in a Subdivision Plan of Land recorded with the Middlesex South Registry of Deeds in Book 936, Page 51." The plan to which the memorandum attempts to make reference – recorded in the land registration office of the Middlesex South Registry District of the Land Court – does not identify which 10 acres are affected. It shows Lot 11 in its entirety. *Contrast* Berman Aff. (July 15, 2004) ¶¶ 2-3 & Ex. A *with* Exhibit A to the Purchase and Sale Agreement attached to the verified complaint. Hence, plaintiff's proposed lis pendens memorandum impermissibly covers "more land ... than the subject matter of the action asserts an interest in." Sutherland v. Aolian Dev. Corp., 399 Mass. 36, 41 (1987). In this respect, the instant case is similar to Keating v. Zukauskas, 10 Mass. L.

---

[5] In contradiction to its earlier position that the affected land was the portion of Lot 11 zoned residential, defendant filed the affidavit of Jannice Hannert on August 2, 2004, in which Hannert flatly asserts that the portion of Lot 11 Fafard was to buy had nothing to do with whether the land was zoned residential, that the boundary line was fixed by a hand-drawn saw-tooth line on a drawing attached to the purchase and sale agreement, and that the parties had never discussed any other boundary line for Lot 11. Hannert Aff. ¶¶ 4-7. Hannert's affidavit is contradicted not simply by Fafard's first proposed memorandum of lis pendens but by two faxes Hannert sent to Metro-Boston. On October 23, 2003, Hannert sent a fax to Halcomb (Exhibit C), stating: "We also discussed the problems with the zone line on the original McCarthy plans," referring to the discrepancy noted in Halcomb's affidavit (¶ 24) between the saw-tooth shaped zoning line appearing on a 1979 plan of Lot 11 and the actual zoning line, which ran straight across the existing boundary between Lot 11 and Lot 12. Although this fax does not itself expressly refer to boundary lines, Hannert followed this fax with a second fax on November 6, 2003 (Exhibit D), stating: "I have been trying to get a copy of the plan which you mentioned where the property line has been straightened out . . . . We are ready to close on this property but need to obtain approval to access through Sewall Street and the update of the property line." (emphasis added). These faxes belie Hannert's affidavit and show the parties intended a boundary line for Lot 11 coterminous with the zoning line.

Rep. 258, 1999 Mass. Super. LEXIS 259 (Mass. Super. 1999), a copy of which is attached as Exhibit E, where the superior court denied a motion to endorse a memorandum of lis pendens because it did not specify which portion of the lot was affected by the dispute.

Plaintiff cannot, consistent with Rule 11, cure this problem by tendering a new proposed lis pendens memorandum that attempts to claim 10 specific acres in Lot 11. This is because plaintiff has already gone on record as saying this dispute affects the portion of Lot 11 "zoned residential." Plaintiff's dilemma is that Lot 11 does not have 10 acres that are zoned residential. (Halcomb Aff. ¶¶ 24-25 & Exs. I-L).

In the final analysis, plaintiff's effort to encumber defendant's land with a memorandum of lis pendens is infected by plaintiff's own inconsistent positions about what land is at issue. It is not simply that plaintiff and defendant lacked a meeting of the minds on what portion of Lot 11 was to be included in the sale.[6] The plaintiff itself is of two minds on the subject, one of which is in disagreement with the other. As a consequence, it is impossible to craft a lis pendens memorandum that describes the affected property at issue, as required by G.L.c. 184 § 15, and

---

[6] Of course, the failure of the parties to have agreed on the location of the perimeter of the land is fatal not only to a lis pendens endorsement but to plaintiff's case itself. Michelson v. Sherman, 310 Mass. 774, 777 (1942) ("location of the boundary line between the land sold and the land kept by the defendants was an essential element of the ... contract"); Sherer v. Trowbridge, 135 Mass. 500, 502 (1883) (writing must "describ[e] the boundaries with sufficient certainty"). If it is impossible from the written memorandum "to lay out on the land the boundaries of the lots to be conveyed, ... the agreement is unenforceable because of uncertainty." Knowles v. L.D. Griswold Land Co., 252 Mass. 172, 175 (1925). Further, where a land purchase agreement contemplates that the boundaries will ultimately be determined by a plan to be approved by a public board or authority (see Verified Complaint ¶ 13), the written agreement is too indefinite to be enforced, even if the agreement describes the land by metes and bounds and by reference to lots shown on a tentative plan. Id. See also Whelan v. Sullivan, 102 Mass. 204, 206 (1869) (where piece of land to be conveyed was part of larger tract, and where memorandum did "not, either in itself, or by reference to any other writing, contain the means of describing or identifying the boundaries of the piece to be conveyed," statute of frauds rendered contract unenforceable; parol evidence cannot be taken to complete the memorandum); Klein v. Brodie, 167 Mont. 47, 48 (1975) (where buy-sell agreement gave approximate description of land to be conveyed "but the exact boundary was to be determined by a survey," agreement was unenforceable under statute of frauds); Plantation Land Co. v. Bradshaw, 232 Ga. 435 (1974) (where written agreement described land by reference to attached plat "and the property being outlined in red thereon," the contract did not meet the requirements of the statute of frauds because "a determination of the exact boundaries of the ... acres to be sold cannot be made, either from the plat alone or in conjunction with the contract").

that describes *only* the affected property at issue, as required by Sutherland v. Aolian Dev. Corp., 399 Mass. 36, 41 (1987).

## II. THE COURT SHOULD DISSOLVE THE LIS PENDENS MEMORANDUM BECAUSE PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED IN ACCORDANCE WITH DEFENDANT'S MOTION FOR RECONSIDERATION OF ITS SPECIAL MOTION TO DISMISS

As G.L. c. 184 § 15 makes clear, a lis pendens memorandum should not be endorsed where the complaint is dismissible on a special motion to dismiss. For the reasons in defendant's motion for reconsideration of its special motion to dismiss, which is incorporated by reference, the verified complaint should be dismissed and therefore no lis pendens memorandum should be endorsed.

## III. IN VIOLATION OF THE LIS PENDENS STATUTE, PLAINTIFF'S VERIFIED COMPLAINT DID NOT DISCLOSE ALL MATERIAL FACTS

The 2003 amendments to the lis pendens statute imposed a new pleading requirement on plaintiffs who seek a lis pendens. The verified complaint must now include all material facts, and plaintiff must certify under oath that "no material facts have been omitted." G.L.c. 184, § 15 (b). The omission of a material fact from the complaint, without more, is grounds for refusing to endorse a lis pendens memorandum.[7]

Plaintiff's verified complaint omits important material facts. Included among them are plaintiff's understanding about the relationship between the zoning line and the boundary line. In light of the discrepancy between plaintiff's initial proposed lis pendens memorandum and the one it now advances, and in light of the conflict between Hannert's affidavit and the faxes

---

[7] In Matt v. Lehman Brothers Holdings, Inc., Suffolk Superior Court No. 04-02297 (Mass. Super. May 26, 2004), Judge Hinkle declined to issue a memorandum of lis pendens due to the failure of the "verified complaint to comply with the requirement in M.G.L. c. 184 § 15(b) to include all material facts." In that case, plaintiff's complaint had failed to mention that the plaintiff had asserted a counterclaim in litigation in New York, and that the counterclaim had been dismissed. See Exhibit F attached.

Hannert sent on October 23, 2003 and November 6, 2003 (see fn. 5), the verified complaint should have disclosed the pertinent facts on this issue.

Further, the verified complaint says nothing about the previously briefed issues surrounding plaintiff's unwillingness to close the transaction without resolving the issue of how plaintiff would get access to the property through Sewall Road. The verified complaint asserts in conclusory fashion that plaintiff was ready, willing, and able to close on the property, without disclosing any of the well-documented contrary history, as set forth in the exhibits to Mary Heller Halcomb's affidavit. These facts are material because they belie plaintiff's conclusory assertion that plaintiff was ready, willing, and able to close on the property, and they establish a valid defense.

## Conclusion

For the foregoing reasons, the memorandum of lis pendens should be dissolved.

METRO-BOSTON BROADCASTING, INC.

By its attorneys,

_/s/ Kenneth R. Berman_
Kenneth R. Berman (BBO 040320)
Nutter McClennen & Fish LLP
World Trade Center West
155 Seaport Boulevard
Boston, Massachusetts 02210
(617) 439-2000

August 25, 2004

## Certificate Of Service

I certify that I served this document today on opposing counsel by hand.

_/s/ Kenneth R. Berman_
Kenneth R. Berman

August 25, 2004

1354507.2

8