# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|   |   |   |
|---|---|---|
| FAFARD REAL ESTATE & DEVELOPMENT CORP.,<br><br>Plaintiff,<br><br>vs.<br><br>METRO-BOSTON BROADCASTING, INC.,<br><br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | NO. 04-11531-RGS |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION OF, AND ORAL ARGUMENT ON, SPECIAL MOTION TO DISMISS AND OPPOSITION TO DEFENDANT'S MOTION TO DISSOLVE LIS PENDENS, OR IN THE ALTERNATIVE, FOR RECONSIDERATION**

Defendant Metro-Boston's Special Motion to dismiss was properly denied because Metro-Boston failed to meet the high burden under G.L. c. 184, § 15(c) to dismiss the case. Metro-Boston did not demonstrate that Fafard's action is "devoid of reasonable factual support," *nor could it*. Fafard's Verified Complaint and the Affidavit of Janice Hannert demonstrate that the parties signed a Purchase and Sale Agreement for the sale of real property, that the boundary line of the property to be sold was unequivocally demarcated in the Agreement, that the parties mutually agreed to extend the closing date, and that Metro-Boston failed to fulfill its obligations under the contract to clear title and prepare a new subdivision plan. Metro-Boston also did not demonstrate that Fafard's action is "devoid of any arguable basis in the law" or subject to a "valid legal defense such as the statute of frauds," *nor could it*. The P&S Agreement and the extensions are enforceable. That some purported *issues of fact* may remain for discovery and a trial does not render Fafard's action "frivolous," as defined by the lis pendens statute. Thus,

there are no grounds whatsoever to reconsider the ruling denying Metro-Boston's special motion to dismiss.

Nor are there any grounds to dissolve the memorandum of lis pendens. The Court correctly concluded that Fafard's action "affects title to real property or the use and occupation thereof," and the lis pendens memorandum otherwise satisfies the requirements set forth pursuant to G.L. c. 184, § 15.

### I. THE COURT CORRECTLY GRANTED FAFARD'S MOTION FOR A MEMORANDUM OF LIS PENDENS.

#### A. The Court Properly Endorsed the Memorandum Because Fafard's Action "Constitutes a Claim of Right to Title to Real Property,"

Pursuant to Massachusetts G.L. c. 184, § 15, when a court determines that the "subject matter of the action constitutes a claim of right to title to real property," then the court "shall" make a finding to that effect and endorse the memorandum of lis pendens. See G.L. c. 194, § 15. See also Sutherland v. Aolean Development Corp., 399 Mass. 36, 40 (1987).

That is the case here. Fafard's complaint seeks, in part, specific performance under an executed purchase and sale agreement which required Metro-Boston, as the seller, to convey certain parcels of real property in Ashland, Massachusetts to Fafard. See Verified Complaint ¶ 8. Metro-Boston admits that it executed the P&S Agreement. Answer ¶ 8. Thus, there can be no dispute that this action is one in which the "subject matter of the action constitutes a claim of right to title to real property." On these grounds, the statute requires that the court endorse a lis pendens memorandum. See G.L. c. 184, § 15; Sutherland, 399 Mass. at 41 ("With the mandate that the judge 'shall' find and endorse, § 15 gives little discretion to the judge once the judge determines that the subject matter of the action concerns an interest in real estate.").

Accordingly, the Court did not err in finding that this action is one that involves interests in real property, and there is no basis to dissolve the memorandum of lis pendens.

      B.      **The Memorandum of Lis Pendens Describes the Property "Sufficiently Accurate for Identification" in Accordance with Massachusetts G.L. c. 184, § 15.**

As grounds to dissolve the lis pendens, Metro-Boston contends that the lis pendens memorandum does not sufficiently describe the property that is the subject of the dispute. This argument fails as an initial matter because Metro-Boston <u>ignores</u> the fact that the language in the memorandum tracks <u>exactly</u> the language of the Purchase and Sale Agreement. The P&S Agreement provides that Metro-Boston will convey to Fafard,

> Those three (3) parcels of land in Ashland, Massachusetts, shown as Lots 12 and 6B (9.6 Acres) and a portion of Lot 11 (10 acres) on the Plan attached hereto and incorporated herein by reference as Exhibit A. For title see Certificate # 194925 and 189907 Middlesex South District of Land Court.

Exhibit A to the P&S Agreement is subdivision plan of land in Ashland No. 16849, referenced by Book No. 936, Page 51.

Significantly, the memorandum of lis pendens endorsed by the Court <u>mirrors</u> this language, providing, in relevant part, that,

> said action involves a claim of right to title to real property or the use and occupancy thereof within the meaning of Massachusetts General Laws, Chapter 184, § 15, and the property so affected is that certain plot, piece or parcel of land in Ashland, Massachusetts, <u>known and numbered as Lots 12, 6B and ten (10) acres of Lot 11, which land is shown on a plan of land recorded in the Middlesex South Registry of Deeds as Plan #16849 of 1981, and is more fully described in a Subdivision Plan of Land recorded with the Middlesex South Registry of Deeds in Book 936, Page 51.</u>"

Thus, the endorsed memorandum of lis pendens tracks the language of the P&S Agreement, *i.e.* the language which describes exactly what the parties bargained for. The lis

3

pendens therefore is not ambiguous or unclear.[1] Nor does the lis pendens impermissibly "cover" more land than Fafard could recover.[2] And in any event, "[a]lthough the scope of a lis pendens memorandum's reach is a relevant consideration ... the fact that the memorandum casts a cloud over more real estate than a claimant could recover, even if completely successful, is not always a basis for denying approval of the recording of such a memorandum." Sutherland v. Aolean Development Corp., 399 Mass. 36, 41 (1987).

Moreover, there is no merit whatsoever to Metro-Boston's contention that Fafard has changed its position with respect to what property it contracted to purchase from Metro-Boston, or that such purported change is fatal to Fafard's case or the lis pendens memorandum. From the onset of this action, Fafard consistently taken position the that it bargained to purchase from Metro-Boston Lots 12, 6B, and that the portion of Lot 11 that is expressly demarcated in the P&S Agreement -- irrespective of zoning. That there may be an issue of fact respecting where, in fact, a boundary line is located does not necessarily make the contract unenforceable or render

---

[1] In support for its argument to dissolve the lis pendens, Metro-Boston analogizes to Keating v. Zukausaks. But that case is distinguishable from the present dispute, because Keating involved a party's claim to some "*unspecified* portion" of land based on the theory of adverse possession. See Keating v. Zukausaks, 10 Mass. L. Rptr. 258 (July 7, 1999) (Hely, J.) (emphasis added). By contrast, Fafard makes a claim to land based on an express and unambiguous written agreement of the parties, which clearly demarcated the boundary line of the property to be sold. The land subject to the instant dispute is not "unspecified."

[2] To the extent the Court has some concern that the lis pendens "covers" more land than the subject matter of this action, Fafard requests that the Court "blue pencil" the lis pendens to append a copy of the P&S Agreement to it. Indeed, that is exactly the result reached by the Court in Hy-Mare, Inc. v. O'Brien, 2001 WL 1313803 (Mass. Super. Ct. Oct. 17, 2001), a copy of which is attached hereto as Exhibit A. In that case, the Court (Agnes, J.) held that the action "affect[ed] title to real property." But because the lawsuit involved only a portion of the land described in the broader deed to the land, the Court ordered that a copy of a proposed, but not approved plot plan that described the parcel in dispute be attached to the memorandum of lis pendens, for the sole purpose of describing the property subject to dispute. Significantly, the fact that the litigation involved only a portion of a lot of land did not defeat the action or the motion for a lis pendens. As the Hy-Mare court explained, "[t]he question is not whether this plan was approved or whether the description of lot 8 contained in it appears in any approved plan, but rather *whether the disputed area of real property can be described in such a way that the public, including anyone with an interest in the real property that is the subject of the litigation, is on notice of what property is in dispute.*" Id. (emphasis added).

a court unable to grant a lis pendens. See Hy-Mare, Inc. v. O'Brien, 2001 WL 1313803. That is a <u>factual</u> issue for trial. See Restatement (Second) Contracts § 152.

The purpose of a memorandum of lis pendens is to give notice to third parties that some real property is the subject of a pending lawsuit and that interests in that property may be affected by the litigation. See Debral Realty, Inc. v. DiChiara, 383 Mass. 559, 560-61 (1981) (the lis pendens puts "anyone interested in real estate on notice of the dispute [and] ensures that a prospective third-party transferee can, with the exercise of reasonable prudence, acquire information relevant to a decision whether to consummate the transaction"). The endorsed memorandum of lis pendens issued in this case accomplishes that purpose, by sufficiently describing the land as it is described in the P& S Agreement.[3]

## II.     THE COURT CORRECTLY DENIED METRO-BOSTON'S SPECIAL MOTION TO DISMISS.

Metro-Boston raises two issues in its motion for reconsideration of the Court's denial of its special motion to dismiss, but neither entitles it to a reconsideration of that ruling, or to an order dissolving the memorandum of lis pendens.

---

[3] Metro-Boston also argues to dissolve the lis pendens because of a purported "failure of a meeting of the minds" with respect to the northeast boundary line, and analogizes to cases in which the boundary line of the property to be sold was never agreed upon by the parties. These case inapposite because here the P&S Agreement unambiguously and clearly demarcates the boundary line of the property to be sold to Fafard. Metro-Boston and Fafard <u>never</u> discussed the boundary line of the land to be sold to be anything other than the line indicated in the P&S Agreement, and Fafard <u>never</u> agreed to purchase anything other what was expressly agreed to in the P&S Agreement. See Affidavit of Janice Hannert, ¶¶ 4-6. Thus, the instant action is not at all akin to Michelson v. Sherman, where the contract for the sale of land made *no reference whatsoever* to boundary line of the property to be sold. See Michelson v. Sherman, 310 Mass. 771, 777 (1942) ("there is nothing in [the contract] to indicate the location of the boundary line between the land sold and the land retained" by the seller.). Nor is Knowles v. L.D. Griswold Land Co., 252 Mass. 172 (1925), also relied upon by Metro-Boston, apposite to this dispute, as the writing Knowles provided that the boundary line "*may be changed or altered* in connection with a possible lay-out of said parcel of land..." Id. (emphasis added).

5

A.  **Metro-Boston's Argument that It was Excused From Performance Ignores <u>the Fact</u> that Metro-Boston and Fafard Mutually Executed Extensions of the Closing Date.**

First, Metro-Boston argues that its performance under the P&S Agreement was excused because Fafard refused to close without Sewell Street access. This argument is belied by the documents. The parties executed a P&S Agreement. Metro-Boston does not dispute this. The parties then <u>mutually</u> agreed to extensions of the closing date. See Verified Complaint ¶ 21; Answer ¶ 21. These extensions extended the time for performance under the P&S Agreement, but made no other modifications to the contract. The last extension executed by the parties extended the closing date until May 21, 2004. Metro-Boston ignores this crucial fact, which defeats Metro-Boston's exact argument. The extensions <u>affirm</u> that Fafard intended to close the deal and fulfill its obligations under the contract to purchase the land *as described in the P&S Agreement*. Fafard <u>never</u> imposed Sewell Street access as a condition to closing in <u>any</u> extension of the closing date. Nor did Fafard seek to amend the P&S Agreement or otherwise modify the description of the land to be sold to include Sewell Street access. At all times, Fafard was ready, willing and able to purchase the property as set forth in the P&S Agreement, *i.e.* perform under the contract and its extensions.

Significantly, the extensions also affirm <u>Metro-Boston's</u> obligations under the P&S Agreement to convey clear title and prepare and file a new subdivision plan by the closing date. Notably, Metro-Boston executed *twenty one* extensions of the closing date <u>after</u> May 2003 -- the date on which Metro-Boston contends Fafard conditioned closing on Sewell Street access and *thirteen* extensions after November 2003, the other date on which Metro-Boston claims Fafard conveyed its unwillingness to perform. If Metro-Boston's argument were correct, *i.e.* that in either May or November 2003 Fafard informed Metro-Boston of its unwillingness to perform

without Sewell Street access, then Metro-Boston *could have and should have* backed out of this sale *at that time* on the grounds that its performance was excused. But it did not. To the contrary, Metro-Boston executed extensions of the closing deadlines with no objection whatsoever, thereby affirming its obligation to perform under the P&S Agreement and convey the land described therein to Fafard. Thus, Metro-Boston's entire argument that it was excused from performance "because plaintiff had told defendant of its unwillingness to close without having access to Sewell" is belied by the extensions themselves. And the <u>fact</u> of these extensions, moreover, renders inapposite the cases relied upon by Metro-Boston regarding performance and excuse, none of which involved mutually executed extensions.

      **B.**      **A Purported "Discrepancy" Between Hannert's Affidavit and Documents Produced by the Defendant Do Not Establish that Fafard's Action is "Frivolous" Under the Lis Pendens Statute.**

Metro-Boston's second argument on reconsideration is that there is a "discrepancy" between the Affidavit of Janice Hannert and two documents Metro-Boston produced as exhibits and that the documents (and not the sworn affidavit) "control" the issue of whether Fafard was ready, willing and able to close on the property. This argument fails because misses the point and improperly conflates the special motion to dismiss with a trial on the merits.

As a threshold matter, however, Metro-Boston is mistaken. There is no conflict between Ms. Hannert's affidavit and the documents. In her affidavit, Ms. Hannert explains that Fafard learned that access via Sewell Street was a possibility (*i.e.* others had used the road for access to the property) and on the basis of that information, inquired about access for Fafard from that road. Ms. Hannert also explains that Fafard made an offer to Metro-Boston to purchase the land (for substantial consideration) that would provide access for Fafard, and that Fafard continued to negotiate with Metro-Boston for the sale of that additional land. <u>See</u> Hannert Aff. ¶¶ 8-11.

Absolutely *nothing* in the two exhibits produced by Metro-Boston is inconsistent with these facts.

That Fafard wrote a note to Metro-Boston, during the time period in which it was working with Metro-Boston to purchase additional land, that Fafard "need[ed] to resolve the access issue out to Sewell Street" is a far cry from "unequivocally" insisting that Fafard would not close on the property without Sewell Street access, as Metro-Boston contends.[4] Absolutely *nowhere* in these two documents (or elsewhere) is there evidence Fafard threatened to back out of the contract if Metro-Boston would not provide access via Sewell Street. And absolutely *nowhere* in these two documents (or elsewhere) is there evidence that Fafard refused to close if Metro-Boston would not provide access via Sewell Street. For these reasons there is no merit whatsoever to Metro-Boston's argument that Fafard omitted from its Verified Complaint material facts respecting Fafard's unwillingness to close. Simply put, there are no <u>facts</u> to support this contention.

However, *even assuming* a discrepancy between Ms. Hannert's affidavit and the two exhibits, such a discrepancy does not give rise to a "valid legal defense" or otherwise grant Metro-Boston grounds to dismiss the lawsuit as frivolous as defined under G.L. c. 184, § 15(c). What Ms. Hannert may or may not have meant by her words or what Ms. Hannert was or was not thinking at that time are <u>issues of fact</u> that are appropriate for <u>discovery</u>. They are not grounds to dismiss the lawsuit at this stage. Indeed, the purported discrepancy underscores that there are *issues of fact* that must be resolved on the basis of a fully developed factual record. The cases relied upon by Metro-Boston further underscore this point—significantly, *each one* was

---

[4] In fact, the opposite is true: the documents contain multiple reminders from Ms. Hannert to Metro-Boston to fulfill its obligations under the P&S Agreement, and therefore are evidence that <u>Metro-Boston</u> failed to provide Fafard with clear title and a new subdivision plan, *despite repeated requests by Fafard to do so and despite the fact that the P&S Agreement required it.*

decided <u>after</u> full discovery and <u>after</u> a trial on the merits, where either a judge or jury made specific findings of fact based on witness testimony and other evidence. Metro-Boston cannot try this case at the lis pendens stage.

## CONCLUSION

For the foregoing reasons, Fafard respectfully requests that the Court deny Metro-Boston's motion for reconsideration and deny Metro-Boston's motion to dissolve the memorandum of lis pendens. Because Fafard has satisfied <u>all</u> statutory requirements for a lis pendens and this action is not "frivolous," as defined by the statute, the Court correctly denied the special motion to dismiss and issued a memorandum of lis pendens.

Respectfully submitted,

FAFARD REAL ESTATE &
DEVELOPMENT CORP.

By its attorneys,

_____
Jeffrey J. Upton (BBO#552221)
Halye A. Sugarman (BBO#646773)
HANIFY & KING
Professional Corporation
One Beacon Street
Boston, MA 02108-3107
(617) 423-0400

DATED:     September 3, 2004
413562

9

CERTIFICATE OF SERVICE

I, Halye A. Sugarman, certify that on September 3, 2004, I served a copy of the foregoing Opposition to Defendants' Motion for Reconsideration of, and Oral Argument on, Special Motion to Dismiss and Opposition to Defendant's Motion to Dissolve Lis Pendens, or in the Alternative, for Reconsideration, by hand on:

>Kenneth Berman
>Nutter McClennan & Fish, LLP
>World Trade Center West
>155 Seaport Boulevard
>Boston, MA 02110

*Halye Sugarman*
Halye A. Sugarman