UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FAFARD REAL ESTATE & DEVELOPMENT CORP.,<br><br>       Plaintiff,<br><br>vs.<br><br>METRO-BOSTON BROADCASTING, INC.,<br>       Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) NO. 04-11531-RGS<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF FAFARD REAL ESTATE & DEVELOPMENT CORP.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIM**

Pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiff Fafard Real Estate & Development Corp. ("Fafard") respectfully submits this memorandum in support of its Motion to Dismiss the Counterclaim filed by Defendant and Plaintiff-in-Counterclaim Metro-Boston Broadcasting, Inc. ("Metro-Boston").

Metro-Boston asserts three counterclaims against Fafard: abuse of process, intentional interference with advantageous business relations, and a violation of Massachusetts G.L. c. 93A, unfair and deceptive trade practices. Metro-Boston alleges that these causes of action arise from Fafard's commencement of a breach of contract lawsuit and action for specific performance that Fafard initiated as a result of Metro-Boston's failure to convey real property to Fafard or otherwise satisfy obligations under a purchase and sale agreement. Dismissal of each of these counts is warranted pursuant to Fed. R. Civ. P. 12(b)(6) because the counterclaims fail to allege essential elements of the claims.

## **BACKGROUND**

On or about January 31, 2001, Fafard and Metro-Boston executed a Purchase and Sale Agreement ("P&S Agreement:") for the sale of real property in Ashland, Massachusetts. The P&S Agreement called for Metro-Boston to convey to Fafard Lots 12, 6B, and a ten-acre portion of Lot 11. See Fafard's Verified Complaint ("Compl.") ¶ 8, and Exhibit A thereto.

Metro-Boston knew that Fafard intended to develop the land for residential use. Accordingly, the P&S Agreement required Metro-Boston to, among other things, prepare a new subdivision plan. Compl. ¶ 13. The P&S Agreement also required Metro-Boston to take the steps necessary to cure certain easements, restrictions and encumbrances of record that would interfere with Fafard's proposed use. Compl. ¶¶ 11, 12. The P&S Agreement a set time to allow Fafard to obtain (if Fafard desired) the necessary permits, and called for closing by February 28, 2002. Compl. ¶ 15; Metro-Boston's Counterclaim ("Counterclaim") ¶ 6.

Metro-Boston failed to provide Fafard with a new subdivision plan, and the parties were unable to close the transaction on February 28, 2002. Compl. ¶¶ 16-18. Metro-Boston and Fafard mutually agreed to extend the closing date. Compl. ¶ The parties then continued to mutually execute extensions of the closing date until May 31, 2002. Compl. ¶ 19. Metro-Boston *still* failed to provide Fafard with the new plan despite numerous requests and reminders by Fafard, and the parties continued to extend the closing date through May 21, 2004. Compl. ¶¶ 20-21. Metro-Boston also failed to take steps necessary to clear title, and cure easements, restrictions and encumbrances of

record, despite repeated requests by Fafard to fulfill this contractual obligation. Compl. ¶¶ 22-23.

On May 21, 2004, Metro-Boston purported to unilaterally back out of its contractual obligation to convey the land. Compl. ¶ 25. Thereafter, on June 2, 2004, Fafard commenced an action in the Superior Court of Middlesex County, seeking specific performance under the P&S Agreement.[1] Fafard also moved the Court to endorse a memorandum of lis pendens, because this action is one in which interests in real property are at issue.

On June 25, 2004, Metro-Boston moved to dismiss Fafard's action under Massachusetts G.L. c. 184, § 15. Fafard opposed the motion, and pursuant to Massachusetts Superior Court Rule 9A, filed the papers with the Middlesex County Superior Court on July 8, 2004.

The same day, Metro-Boston removed the action to this Court. On August 10, 2004, the Court denied Metro-Boston's special motion to dismiss, and found that Fafard's action is one that affects right and title to real property. And on August 24, 2004, the Court endorsed Fafard's memorandum of lis pendens.[2]

On August 23, 2004, Metro-Boston served its Answer and a Counterclaim. In the Counterclaim, Metro-Boston admits that Fafard and Metro-Boston contracted for the purchase and sale of real property owned by Metro-Boston in Ashland, Massachusetts, and that the parties executed extensions of the closing date through May 21, 2004.

---

[1] Case No. 04-2282.

[2] On August 27, 2004, Fafard filed a Motion to Amend the Lis Pendens Memorandum to comply with the additional request of the Chief Examiner of the Land Court that the name "Tower Sites, Ltd." appear on the memorandum of lis pendens, as the record title owner of the property, notwithstanding that this obligation is not imposed by the lis pendens statute, M.G.L. c. 184, § 15.

3

Counterclaim ¶ 6. But Metro-Boston contends that Fafard insisted on access to the property via a different point of entry and refused to close without such access, which Metro-Boston did not provide. Counterclaim ¶¶ 7-8. Metro-Boston also alleges that Fafard's lawsuit to enforce the P&S Agreement is "groundless" and brought with "malice for the improper and unlawful purpose of clouding [Metro-Boston's] title, interfering with [Metro-Boston's] ability to convey the property to others, and thereby gain leverage over [Metro-Boston] to negotiate for the acquisition of [Metro-Boston's] property. Counterclaim ¶ 11. Metro-Boston claims that such actions constitute an abuse of process, interference with advantageous business relations, and a violation of G.L. c. 93A.

## ARGUMENT

The standard on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is well settled. A court will grant a motion where the facts, taken as true, do not justify recovery and the pleading "shows no set of facts which could entitle the plaintiff to relief." Doyle v. Hasbro, Inc., 103 F.3d 186, 189 (1st Cir. 1996). Although this standard is liberal, these "minimal requirements are not tantamount to nonexistent requirements." Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988) ("The threshold may be low, but it is real—and it is the plaintiff's burden to take the step which brings his case safely into the next phase of the litigation."). See also The Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989) ("the pleading requirement is "not an entirely toothless tiger").

Thus, the pleader must set forth factual allegations respecting "each material element necessary to sustain recovery under some actionable legal theory." Gooley, 851 F.2d at 515 (quoting Sutliff, Inc. v. Donovan Companies, 727 F.2d 648, 654 (7th Cir.

1984) (where facts narrated by plaintiff 'do not at least outline or adumbrate' a viable claim, the complaint must be dismissed). Moreover, "bald assertions, unsupportable conclusions, periphrastic circumlocutions and the like" are not sufficient to state a claim upon which relief can be granted. Doyle, 103 F.3d at 190 (quoting Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996)).

### I. METRO-BOSTON'S CLAIM FOR ABUSE OF PROCESS FAILS BECAUSE METRO-BOSTON DOES NOT ALLEGE AN ESSENTIAL ELEMENT OF THE CLAIM.

Metro-Boston's claim for abuse of process must be dismissed because Metro-Boston fails to allege an essential element of the claim: that process was used "to accomplish some ulterior purpose *for which it was not designed or intended*, or which was not the legitimate purpose of the particular process employed." Quaranto v. Silverman, 345 Mass. 423, 426 (1963) (emphasis added); Beecy v. Pucciarelli, 387 Mass. 589 (1982). See also Broadway Management Serv., Ltd. v. Cullinet Software, Inc., 652 F Supp. 1501, 1503 (D. Mass. 1987) ("The essence of the tort of abuse of process is use of process as a threat or a club to coerce or extort some collateral advantage not properly involved in the proceeding.").

Metro-Boston alleges only that Fafard intends to accomplish *exactly* that which its lawsuit demands: that Metro-Boston convey the Ashland property to Fafard as agreed in the P&S Agreement. See Counterclaim ¶ 11. This is not an ulterior purpose for which it was not designed or a collateral advantage. The law is clear that where a claimant alleges only that the plaintiff's lawsuit demands exactly that to which it would be entitled if successful in its lawsuit, the tort of abuse of process has not been made out. Indeed, that is the exact result reached by the Court in Broadway Management, in which the Court

dismissed an abuse of process counterclaim because the counterclaimant alleged *only* that plaintiff's lawsuit demanded damages for a wrongfully terminated contract. The Court explained that such damages are "naturally tied up with interests properly part of" its lawsuit, and therefore not some outside or collateral advantage or benefit which would give rise to an abuse of process claim. Broadway Management, 652 F. Supp. at 1503. That is exactly the case here. See also, e.g., Jones v. Brockton Public Markets, Inc., 369 Mass. 387 (1975) (dismissing abuse of process claim where "defendant used the relevant process for the exact purpose for which it was designed," *i.e.*, to litigate rights between the parties); Bickford v. Bickford, 12 Mass. L. Rptr. 572 (Mass. Super. 2000) (dismissing abuse of process claim on summary judgment because plaintiff served the process "for the exact purpose for which it was designed: to determine the validity of a prenuptial agreement") (attached hereto as Exhibit A).

Moreover, Metro-Boston's vague allegation that Fafard commenced "groundless or unmeritorious litigation" is also insufficient to state an abuse of process claim. It is well settled that commencement of an action which the plaintiff knew or reasonably should have known to be groundless does not constitute an abuse of process claim. Beecy v. Pucciarelli, 387 Mass. 589, 596 (1982). There must be *some allegation* of ulterior motive beyond mere commencement of an allegedly baseless lawsuit. Id. Metro-Boston fails to make such allegation, and consequently, the claim fails.

Metro-Boston's allegation that Fafard's lawsuit was brought "for the unlawful purpose of clouding title," is also insufficient to make out a claim of abuse of process. A lawsuit brought to enforce a purchase and sale agreement, of and by itself, does not cloud title. Thus, there can be no claim Fafard commenced its action for the collateral purpose

6

of clouding title, and Metro-Boston's claim fails. Likewise, a memorandum of lis pendens (assuming a lis pendens constitutes "process"),[3] also is not a cloud on title. Debral Realty, Inc. v. DiChiara, 383 Mass. 559, 560 (1981) (lis pendens services a notice function). See also In re Kodo Prop., Inc., 63 B.R. 588, 589 (Bankr. E.D.N.Y. 1986) (a lis pendens "is a notice of a claim…but it does not itself create an encumbrance upon the property"). And *even assuming* that a lis pendens is a cloud on title (a point not conceded by Fafard), Metro-Boston's allegation that the lis pendens memorandum constitutes an abuse of process would *still* fail because Metro-Boston alleges only that Fafard is using the lis pendens (*i.e.*, the process) for the *exact* purpose for which it was intended. Thus, no claim for an abuse of process has beed stated. See Broadway Management, 652 F. Supp. at 1503.

## II. METRO-BOSTON FAILS TO STATE A CLAIM FOR INTERFERENCE WITH ADVANTAGE BUSINESS RELATIONS.

It is axiomatic that to succeed on a claim for interference with advantage business relations, a plaintiff must be able to demonstrate both a business relationship or contemplated business relationship that the plaintiff has and the defendant's knowledge of such relationship. See Comey v. Hill, 387 Mass. 11, 19 (1982); Powers v. Leno, 24 Mass. App. Ct. 381 (1987). See also Speen v. Crown Clothing Corp., 102 F.2d 625 (1st

---

[3] It is well settled in Massachusetts that an abuse of process claim is limited to three types of process: writs of attachment, bringing of criminal charges, and the commencement of a civil action. See Jones v. Brockton Public Markets, Inc., 369 Mass. 387, 389-90 (1975) (declining to broaden definition of process to include injunctions). See also Mustapha v. Town of Methuen, 1998 WL 77882 (Mass. Super. Feb. 20, 1998) (noting that Massachusetts recognizes only three kinds of "process," and declining to hold that letter from Town Building Commissioner constituted "process") (attached hereto as Exhibit B). Thus, the recording of a memorandum of lis pendens, by itself, does not constitute "process" under Massachusetts law. Notably, no Massachusetts court has broadened the definition of "process" set forth in Jones to include the filing of a memorandum of lis pendens as "process," even though at least two appellate courts could have reached that issue. See Madan v. Royal Indemnity Co., 26 Mass. App. Ct. 756, 764 (1989) (declining to reach issue of whether a notice of lis pendens constituted process). See also Edgartown Forest Estates Ass'n, Inc. v. North Bridge Assocs., Inc., 57 Mass. App. Ct. 1102 (2003) (UNPUBLISHED), review denied 439 Mass. 1103 (2003) (declining to resolve issue of whether "a lis pendens is per se within the elements of an abuse of process claim") (attached hereto as Exhibit B).

Cir. 1997) (elements of tort of interference with advantage business relations include a business relationship or contemplated contract of economic benefit and the defendant's knowledge of such relationship); Doyle v. Hasbro, Inc., 103 F.3d 186 (1st Cir. 1996) (same). Metro-Boston's claim fails because it alleges no facts in support of either of these two elements.

Metro-Boston's claim fails, first, because Metro-Boston makes no allegations whatsoever that it has either an actual or contemplated business relationship. Although a claimant need not allege that it has a contract reduced to writing, the plaintiff must still identify *some* contemplated or actual business relationship. See Owen v. William, 322 Mass. 356 (1948). Here, no entity with which Metro-Boston has a business relationship is identified anywhere in the Counterclaim. Nor is there any allegation whatsoever that Metro-Boston is communicating with any potential or prospective buyer or is in negotiations with any potential buyer. Metro-Boston's blanket and conclusory assertion that it might at some future time have an advantageous relationship with an unknown and unidentified entity is entirely insufficient to make out a claim of interference with advantageous business relations. See United Truck Leasing Corp. v. Geltman, 26 Mass. App. Ct. 847, 855 (1989).

Metro-Boston's claim also fails because it makes no allegation whatsoever that Fafard knew of such potential or prospective business relationship of Metro-Boston. There can be no tort of intentional interference with advantage business relations where the alleged offender is not alleged to have any knowledge or awareness of the purportedly advantageous business relationship. See, e.g., Yaikas v. Savoy, 26 Mass. App. Ct. 310, 315 (1988) (reversing finding of intentional interference with advantage business

8

relations where no evidence that defendant had knowledge of relations or intended by her actions to interfere with such relations). Thus, absent any allegation that Fafard <u>knew</u> about some prospective or potential advantageous relations that Metro-Boston has, the counterclaim fails.

### III.   METRO-BOSTON FAILS TO ALLEGE A VIOLATION OF MASSACHUSETTS G.L. c. 93A.

Metro-Boston also claims that Fafard has engaged in unfair and deceptive acts or practices in violation of Massachusetts G.L. c. 93A. This claim must be dismissed for failure to state a claim upon which relief can be granted because Metro-Boston's claim under G.L. c. 93A is based <u>exclusively</u> and <u>solely</u> on the allegations that Fafard has engaged in an abuse of process and interfered with advantageous business relations. But, as stated above, Metro-Boston failed to allege the necessary elements of these two underlying claims. Moreover, there is no allegation anywhere in the Counterclaim that Fafard engaged in any *other* unfair or deceptive acts or practices. For these reasons, Metro-Boston has failed to make out a claim that Fafard has violated G.L. c. 93A. <u>See</u> <u>Duval v. Hallisey</u>, 17 Mass. L. Rptr. 572 (2004) (dismissing 93A claim because plaintiff failed to adequately allege elements of underlying abuse of process claim) (attached hereto as Exhibit C); <u>Home Depot U.S.A., Inc. v. Rosencranz</u>, 1994 WL 287585 (Mass. Super. 1994) (dismissing 93A claim where alleged misconduct was based solely on a letter to editor which contained statements of pure opinion and were not defamatory; where underlying libel claim dismissed, court also held claim under c. 93A failed as matter of law) (attached hereto as Exhibit D).

## CONCLUSION

For the foregoing reasons, because Metro-Boston has failed to plead essential elements of its counterclaim Fafard respectfully requests that the Court dismiss each count of the Counterclaim pursuant to Fed. R. Civ. P 12(b)(6).

Respectfully submitted,

FAFARD REAL ESTATE &
DEVELOPMENT CORP.

By its attorneys,

_/s/ Halye Suge_
Jeffrey J. Upton (BBO#552221)
Halye A. Sugarman (BBO#646773)
HANIFY & KING
Professional Corporation
One Beacon Street
Boston, MA 02108-3107
(617) 423-0400

DATED:    September 13, 2004
413647

## CERTIFICATE OF SERVICE

I, Halye A. Sugarman, certify that on September 13, 2004, I served a copy of the foregoing Memorandum in Support of Motion to Dismiss Counterclaim, by hand on:

Kenneth Berman
Nutter McClennan & Fish, LLP
World Trade Center West
155 Seaport Boulevard
Boston, MA 02110

_/s/ Halye Suge_
Halye A. Sugarman

10