UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| FAFARD REAL ESTATE & DEVELOPMENT CORP., | ) ) ) ) | |
| Plaintiff/Defendant-in Counterclaim | ) ) | |
| vs. | ) ) | Civil Action No. 04-11531 RGS |
| METRO-BOSTON BROADCASTING, INC., | ) ) ) | |
| Defendant/Plaintiff-in-Counterclaim | ) ) | |

## DEFENDANT'S OPPOSITION TO MOTION TO DISMISS COUNTERCLAIM

### Introduction

Misapprehending or misapplying the standard by which the sufficiency of a pleading is judged, plaintiff Fafard Real Estate Development Corp. ("Fafard") seeks to dismiss the counterclaim of defendant Metro-Boston Broadcasting, Inc. ("Metro-Boston" or "Tower Sites").[1] In substance, Metro-Boston's counterclaim seeks relief on account of Fafard's prosecution of a groundless lawsuit, which Metro-Boston contends Fafard brought for ulterior and improper motives, including to cloud Metro-Boston's title, to interfere with Metro-Boston's ability to sell its property to a third party buyer, and to gain improper leverage over Metro-Boston in negotiating for additional land. Fafard's motion conveniently overlooks certain aspects of the pleadings that are fatal to its motion, and also overlooks case law unfavorable to its position.

---

[1] Metro-Boston is the general partner of Tower Sites Limited Partnership.

Standard Of Review

Because the burden on a party moving to dismiss is so high, motions to dismiss are viewed with disfavor and rarely granted. 5B C. Wright & A. Miller, Federal Practice & Procedure § 1357 at 557 (3d ed. 2004). A pleader need surmount only a minimal hurdle to survive a Rule 12(b)(6) motion to dismiss. A pleading "is sufficient unless it shows beyond doubt that there is no set of facts which the [pleader] could prove in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

A court confronted with a Rule 12(b)(6) motion "may dismiss a complaint only if it is clear that <u>no</u> relief could be granted under <u>any</u> set of facts that could be proved consistent with the allegations." *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984) (emphasis added). To grant such a motion, it must appear to a certainty that that the pleader is entitled to no relief under any state of facts which could be proved in support of the claim. *O'Brien v. Moriarty*, 489 F.2d 941, 943 n.3 (1st Cir. 1974).

If relief would be available under at least one set of facts that could be proved in support of the claim, the motion to dismiss must be denied, even though the particular relief demanded and the theory on which the pleader seems to rely may not be appropriate. *Connecticut General Life Ins. Co. v. Universal Ins. Co.*, 838 F.2d 612, 622 (1st Cir. 1988). Thus, even if the wrong legal theory is pleaded, the pleading will still withstand a motion to dismiss if the factual allegations would permit the pleader to relief under any legal theory, whether pleaded or not. *Id.* The outdated notion that the pleadings must proceed on a specific theory, and that recited facts will not be sufficient against a motion to dismiss if the theory is deemed inapplicable, is not the law. 5B C. Wright & A. Miller, Federal Practice and Procedure § 1357 at 676 (3d ed. 2004). "[A]s long as the district judge can ascertain from

what has been alleged that some relief may be granted," the motion must be denied. *Id.* at 681-82.

Fafard invokes a different standard by which to judge the sufficiency of the counterclaim. Fafard cites *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1988) for the proposition that a pleading must set forth facts on "each material element necessary to sustain recovery under some actionable legal theory." This is no longer good law.

In *Swierkiewicz v. Soreman N.A.*, 534 U.S. 506 (2002), the Supreme Court reversed a dismissal of a complaint from a federal circuit that "maintain[ed] that a complaint must contain factual allegations that support each element of a prima facie case." *Id.* at 510 n.2. The Supreme Court held that the requirements for establishing a prima facie case, which is an evidentiary standard, do not apply to the pleading standard that must be met to survive a motion to dismiss. *Id.* at 511-14. The Supreme Court reinforced that a pleading need only comply with the "simplified pleading standard" of Rule 8(a) and simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* at 512-13.[2]

*Swierkiewicz* prompted a district judge in the First Circuit to remark how the pleading standard articulated by the Supreme Court is "more liberal[] than recently has been the practice of . . . the First Circuit" and that a pleading "that does not address every element of every claim may nevertheless be adequate under Rule 8(a)." *Greenier v. Pace, Local No. 1188*, 201 F. Supp. 2d 172, 176-77 (D. Me. 2002). Following *Swierkiewicz*, the First Circuit appears to have retreated from its earlier insistence that pleadings state facts supporting each material element of the cause of action. *Educadores Puertorriquenos En Accion v. Hernandez*, 367

---

[2] Although *Swierkiewicz* was an employment discrimination case, the Supreme Court stated that this "simplified pleading standard applies to all civil actions, with limited exceptions," such as claims governed by the particularity requirements of Rule 9(b). 534 U.S. at 513.

F.3d 61, 65-66 (1st Cir. 2004). See also *Lalonde v. Textron, Inc*, 369 F.3d 1, 6-7 (1st Cir. 2004) (allegations need not be terribly specific to provide defendant with fair notice of the claim and the grounds upon which it rests); *Mendez v. Brown*, 311 F. Supp. 2d 134, 141 (D. Mass. 2004) (pleading need not set out in detail the facts upon which the claim is based).

## Analysis

Fafard's motion to dismiss does not look at the counterclaim in its totality. Nor does Fafard show that it is impossible for Metro-Boston to prove some set of facts that would entitle it to relief. Rather, Fafard attempts to portray the counterclaim as missing certain allegations to support an isolated element of specifically mentioned legal theories. Fafard's arguments lack merit. The counterclaim alleges sufficient facts to meet Rule 8's notice pleading requirement and Fafard's motion does not meet the rigorous standards necessary to dismiss the counterclaim.

I.     ABUSE OF PROCESS

Abuse of process is the use of process to accomplish some ulterior purpose for which it was not designed or intended or to extract a collateral advantage. *Datacomm Interface, Inc. v. Computerworld, Inc.*, 396 Mass. 760, 775-76 (1986). Fafard argues that, because Fafard's complaint seeks to enforce the purchase and sale agreement it signed with Metro-Boston, which is a proper purpose of an action for specific performance, Metro-Boston will be unable to prove that Fafard is using process for an ulterior or illegitimate purpose or for a purpose for which it was not designed.

But the counterclaim alleges more than Fafard's use of the process to enforce a purchase and sale agreement. It also alleges that Fafard initiated this groundless lawsuit with malice, for the improper and unlawful purpose of gaining leverage over Metro-Boston to

- 4 -

negotiate for the acquisition of adjoining property that is <u>not</u> subject to the purchase and sale agreement. Counterclaim at ¶¶ 7-8, 11. The counterclaim would thus permit Metro-Boston to prove that Fafard brought this lawsuit for the ulterior and improper purpose of clouding Metro-Boston's title, interfering with Metro-Boston's ability to convey the property to others, and thereby positioning Fafard to negotiate from a stronger position in order to make a contract not only for the land purportedly described in the purchase and sale agreement but for some other adjoining land also owned by Metro-Boston. This is enough to state a claim for abuse of process.

Fafard focuses on the <u>means</u> by which it attempts to accomplish its ulterior purpose – clouding Tower Sites' title and interfering with Tower Sites' ability to convey the property to others – and concludes that because such consequences naturally flow from an action for specific performance and a motion for a lis pendens, Tower Sites' abuse of process claim must be dismissed. *See* Pl.'s Memo. at pp. 5-6. However, it is no defense to an abuse of process claim that the plaintiff is using a proper means for an improper ulterior purpose. Restatement (Second) of Torts § 682 *comment a* (1977). *See Vittands v. Sudduth*, 49 Mass. App. Ct. 401, 407 (2000) ("even process that is obtained with probable cause and for a proper purpose does not necessarily preclude liability" for abuse of process).

Fafard claims that the commencement of groundless and unmeritorious litigation, without more, is not an abuse of process. *See* Pl.'s Memo. at p. 6. However, the fact "[t]hat the person commencing the litigation knew or had reason to know his claim was groundless is relevant ... as tending to show that the process was used for an ulterior purpose." *Fishman v. Brooks*, 396 Mass. 643, 652 (1986).

A number of cases have held that a lawsuit initiated ostensibly for valid reasons but

- 5 -

actually brought with the intent to hinder a party's ability to develop or alienate its own property (both through the use of a memorandum of lis pendens or otherwise) supports a claim for abuse of process. *See Malone v. Belcher*, 216 Mass. 209 (1913) (abuse of process claim lies where "the real object of the suit and attachment ... was for the purpose of preventing the transfer of the property to [a third party] and getting it ... for himself"); *Vittands v. Sudduth*, 49 Mass. App. Ct. 401, 407 (2000) (abuse of process claim is valid where "ulterior, collateral purpose" was "to maintain their access to [owner's] private property by involving the property in protracted litigation before the sale [to a third party] could be finalized"); *Cappy's Way Realty Trust v. New Dedham Development*, 18 Mass. L. Rptr. 84 (Mass. Super. May 28, 2004) (where plaintiff obtained a lis pendens, a claim for abuse of process may lie where the defendant/plaintiff-in-counterclaim "contends that the plaintiff filed the lawsuit to interfere with the development of [his] real estate project").[3] *See also Strachan v. Sheedy*, 13 Mass. L. Rptr. 48 (Mass. Super. Mar. 15, 2001) (denying motion to dismiss abuse of process counterclaim, which alleged that buyers groundlessly sued to enforce purchase and sale agreement and obtain

---

[3] In its Memorandum, Fafard argues that a lis pendens is neither a "cloud on title" nor "process." Because Fafard does not contest that at the very least its lawsuit constitutes "process" for purposes of Tower Sites' abuse of process claim, Fafard's argument is academic. However, Fafard appears to be incorrect on both subjects. Massachusetts cases indeed recognize "process" to include lis pendens. *See Strachan v. Sheedy*, 13 Mass. L. Rptr. 48 (Mass. Super. Mar. 15, 2001) ("process" at issue was "commencement of the plaintiffs' lawsuit *and* recording of the *lis pendens*") (emphasis in original); *Powell v. Stevens*, 17 Mass. L. Rptr. 592 (Mass. Super. May 3, 2004) (because "the authorization of a lis pendens memorandum lies inside, not outside, the process of the underlying litigation" and "is an element of the lawsuit, and not a separate or independent event," an action for abuse of process will lie for bad faith claims involving lis pendens). In addition, a lis pendens is a form of "cloud on title." *See Giuliano v. GTWO, LLC*, 2000 WL 744363 *3 (Mass. Super. May 14, 2000) ("As a result of the cloud on title placed on the Property by the filing of the Lis Pendens..."). The hallmark of a cloud on title is whether there is a practical impediment to delivering clean title to a buyer, such as a claim or unreleased encumbrance. Ballentine's Law Dictionary (3d ed. 1969). A lis pendens results in the same inability to deliver clean title as any other cloud on title. *See Debral Realty, Inc. v. DiChiara*, 383 Mass. 559, 564 (1981) ("A memorandum of lis pendens, like an attachment of real estate, temporarily restricts the power of a landowner to sell his or her property, by depriving the owner of the ability to convey clear title while the litigation is pending").

lis pendens for ulterior purposes) (attached as Exhibit A).[4]

Where the only element of Metro-Boston's abuse of process claim in dispute on Fafard's motion – improper purpose – involves state of mind, dismissal at this stage would be improper as the basic facts have yet to be fleshed out in discovery and trial. *See General Electric Co. v. Lyon*, 894 F. Supp. 544, 552 (D. Mass. 1995) (denying motion to dismiss abuse of process because "[a]t this point, obviously, [defendant] need not prove that [plaintiff's] intentions were improper ... [but] must simply plead some set of facts that would support its contentions that [plaintiff's] suit was brought with ulterior motives"). *Accord Vittands*, 49 Mass. App. Ct. at 407-08 (even as late as the summary judgment stage, summary disposition is "disfavored" on an abuse of process claim where "state of mind is an essential element of the cause of action" and "the [plaintiffs'] true motivation for filing this action is in fact in dispute").

## II. INTENTIONAL INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONS

Fafard argues that the counterclaim does not state a claim for interference with prospective advantageous business relationships because it lacks an allegation of a specific contemplated business relationship.[5] In contrast to the tort of interference with contractual

---

[4] In *Strachan*, as in this case, the plaintiffs, as purchasers, sued defendants, as sellers, seeking specific performance. They obtained a lis pendens. The defendants counterclaimed for abuse of process after their motion to dissolve the lis pendens was denied. The plaintiffs moved to dismiss the abuse of process counterclaim, which the Court denied. The Court held that the "the 'process' at issue is commencement of the plaintiffs' lawsuit and recording of the lis pendens," the counterclaim "alleges sufficient facts to support its allegation of ulterior motive," and "where the lis pendens prevents defendants from entering into any financial transaction for their property, the element of damages is sufficiently pled" to support an abuse of process claim. *Id.*

[5] Fafard does not, and cannot, argue that the counterclaim fails to plead an improper means of interference. *See, e.g., Skenderian v. Data Technology, Inc.*, 2001 Mass. Super. LEXIS 654 *7 (Mass. Super. May 23, 2001) ("[T]he filing of a lawsuit is an improper means of interference with advantageous business relations if it constitutes as abuse of process; i.e., the defendant does not have probable cause to believe that the (continued . . .)

relations, which requires showing there was a contract, the tort of interference with prospective or advantageous business relationships does not require the showing of an actual contract. As a matter of proof, it is sufficient if plaintiff shows "a business *relationship* or *contemplated* contract of economic benefit." *Comey v. Hill*, 387 Mass. 11, 19 (1982). As a matter of pleading, there is no requirement that the counterclaim identify "an entity with which Metro-Boston has a business relationship" or that it allege "that Metro-Boston is communicating with [a] potential or prospective buyer or is in negotiations with [a] potential buyer." (Pl. Memo p.8)  Indeed, pleadings aside, recovery for interference would not require proving the identity of any such specific entity or potential buyer. *See Malatesta v. Leichter*, 186 Ill. App. 3d 602, 619, 542 N.E.2d 768, 780-81 (Ill. App. Ct. 1989) ("plaintiff alleged a cause of action for interference with prospective economic advantage by alleging that the defendant intentionally sought to prevent the plaintiff from entering into credit agreements with potential creditors by publishing a negative credit report, although there was no indication that the defendant knew the nature of the proposed dealings between the plaintiff and its potential customers when it published its report"). The counterclaim alleges that Fafard "interfer[ed] with Tower Sites' ability to convey the property to others" and interfered with "Tower Sites' advantageous relations with other potential buyers for the property." Counterclaim ¶¶ 11-12. Under the notice pleading standard of Rule 8, these allegations are broad enough to permit Tower Sites to prove that it had a business relationship or contemplated contract of economic benefit.

Fafard also alleges that the counterclaim neglects to plead Fafard's knowledge of the

---

suit will succeed and is acting primarily for an ulterior purpose other than that of properly adjudicating his claims").

business relationship or contemplated contract of economic benefit. Massachusetts "cases have

been imprecise on the elements of the tort[]" of interference with prospective or advantageous

business relations. *United Truck Leasing Corp. v. Geltman*, 406 Mass. 811, 813 (1990).

While the Massachusetts appellate courts have yet to make clear whether the tortfeasor must

have knowledge of specific prospective opportunities, or whether it is sufficient that the

tortfeasor simply have knowledge of the likelihood of prospective opportunities and an intent to

prevent such opportunities from ripening, the Restatement (Second) of Torts § 766B suggests

there is no requirement the tortfeasor know of a specific prospective opportunity. It is

sufficient if the tortfeasor acts for the purpose simply of preventing such an opportunity from

developing:

> The relations protected against intentional interference by the rule stated in this Section
> [766B] include any prospective contractual relations, except those leading to contracts
> to marry . . . , if the potential contract would be of pecuniary value to the plaintiff.
> Included are interferences with the prospect of obtaining employment or employees [or]
> the opportunity of selling or buying land . . . . The expression, prospective contractual
> relation, is not used in this Section in a strict, technical sense. It is not necessary that
> the prospective relation be expected to be reduced to a formal, binding contract.

Restatement (Second) of Torts § 766B *comment c* (1979) (emphasis added).

Metro-Boston's counterclaim is broad enough to permit Metro-Boston to prove that

Fafard was aware of Metro-Boston's desire to sell its land and that Fafard acted maliciously

with intention of preventing such a sale from happening.[6] This is sufficient.

Fafard cites *Owen v. Williams*, 322 Mass. 356 (1948), for the proposition that a

plaintiff must identify a specific business relationship to sustain a claim of intentional

interference with advantageous business relations, but that case actually states that "even a

---

[6] The counterclaim alleges that Fafard's wrongful conduct was "knowing and willful." Counterclaim ¶ 13.

probable future business relationship from which there is a reasonable expectancy of financial benefit is enough." *Id.* at 361-62. *See also Powers v. Leno*, 24 Mass. App. Ct. 381, 385 (1987) (same); *American Private Line Services, Inc. v. Eastern Microwave, Inc.*, 980 F.2d 33, 36 (1st Cir. 1992) (same).[7] Where, as here, Metro-Boston has pleaded Fafard's intent to preclude all potential buyers from purchasing the property and to ensure that only it obtains possession of the property, Tower Sites has sufficiently pleaded intentional interference with prospective advantageous business relations. *See Davidson v. Cao*, 211 F. Supp. 2d 264, 284 (D. Mass. 2002) ("[i]t is the province of discovery and summary judgment motions to further elucidate the merits" of a defendant's counterclaim where that counterclaim "gives sufficient notice to file a responsive pleading").

A hypothetical illustrates the fallacy of Fafard's position that, under Rule 8(a), a pleading must identify a specific business opportunity with which Fafard interfered. Assume, for instance, that ABC Corp., a widget seller, wants to prevent XYZ Corp. from buying widgets from any source other then ABC. To achieve this result, ABC publishes an ad that reveals a private fact about XYZ of an unflattering nature. As a result of the ad, no other widget seller will deal with XYZ, leaving ABC as the only source of supply, the precise result ABC intended. If XYZ can prove that, absent the ad, it would have been able to buy widgets from another vendor or vendors, ABC ought to be liable for interfering with XYZ's prospective relationship with the other vendor or vendors, even though at the time of the ad, ABC had no knowledge of any specific contemplated or prospective relationship between

---

[7] Fafard also cites *Yaikas v. Savoy*, 26 Mass. App. Ct. 310 (1988), to support its position that knowledge of an actual future business relationship is required. However, *Yaikas* involves the similar but distinct tort of intentional interference with contractual relations, which, unlike intentional interference with advantageous business relations, requires proof of an actual contract. *See id.* at 315 ("the actor must have knowledge of the contract and must know that he is interfering with its performance") (emphasis added).

XYZ and the other vendor or vendors. For liability to attach, XYZ need only prove ABC's knowledge of, and intent to interfere with, XYZ's expectancy or opportunity for a future business relationship, and not XYZ's knowledge of a specific contemplated contract with a specific contemplated third party. *Malatesta v. Leichter*, 186 Ill. App. 3d 602, 619, 542 N.E.2d 768, 780-81 (Ill. App. Ct. 1989). Because liability for interference can thus attach without the tortfeasor's knowledge of a specific third party or specific contemplated contract, Rule 8(a) does not require identification of the third party or the specific contemplated contract in the pleading, nor need the pleading allege the tortfeasor's knowledge of same. *Swierkiewicz v. Soreman N.A.*, 534 U.S. 506, 512 (2002) (because "precise requirements of a prima facie case can vary depending on the context," they "should not be transposed into a rigid pleading requirement").

III.  G.L. c. 93A

Given that Fafard is unable to show that Tower Sites' claims of abuse of process and intentional interference with advantageous business relations should be dismissed, there is no basis to dismiss Tower Sites' claim under G.L. c. 93A, which can clearly be based on either of these underlying torts. *See Savin Corp. v. Rayne*, 2001 U.S. Dist. LEXIS 20574 *5 (D. Mass. Apr. 4, 2001) ("Generally speaking, an abuse of process claim is also actionable under Chapter 93A), *citing Refuse & Environmental Sys., Inc. v. Industrial Servs. of Am.*, 932 F.2d 37, 43 (1ˢᵗ Cir. 1991); *G.S. Enterprises, Inc. v. Falmouth Marine, Inc.*, 410 Mass. 262, 277 (1991) ("Because we have decided that the question of intentional interference ... is for the jury, we reach the same conclusion as to the related c. 93A allegations.").

Fafard acknowledges as much. Fafard argues that the only reason Tower Sites' Chapter 93A claim should be dismissed is because that claim "is based exclusively and solely

on the allegations that Fafard has engaged in an abuse of process and interfered with advantageous business relations." Pl.'s Memo. at p. 9 (emphasis in original). While it is true that an interference with advantageous relations or an abuse of process will also constitute a violation of Chapter 93A, the converse is not true. Thus, Fafard does not ipso facto avoid liability under Chapter 93A by avoiding liability for tortious interference or abuse of process. Chapter 93A reaches conduct that was not unlawful under the common law of torts. *Slaney v. Westwood*, 366 Mass. 688, 703-04 (1975). It is sui generis. It is neither wholly tortious nor wholly contractual in nature, "and is not subject to the traditional limitations of preexisting causes of action . . . ." *Id.* at 704. In adopting Chapter 93A, the legislature intended to create a remedy for conduct that may be permissible under the common law, but which does not meet contemporary notions of fairness. *Shubach v. Household Finance Corp.*, 375 Mass. 133, 137-38 (1978) (filing suit in inconvenient forum may be unfair act under Chapter 93A, even though it is permitted by state venue statute).

So too here, it is no defense to a Chapter 93A claim – at the pleading stage – for Fafard to argue that the complaint does not plead all the elements of the torts of abuse of process or interference with prospective advantageous relations. Even if Fafard were correct that the counterclaim does not plead enough to allege abuse of process or interference, which Fafard is not, this would not be justification for dismissal of the Chapter 93A claim.

### Conclusion

Because the counterclaim is sufficient to enable Metro-Boston to plead facts that would permit recovery under one or more of the legal theories alleged, Fafard's motion to dismiss the counterclaim should be denied. In the event the Court were nonetheless to feel that the counterclaim does not meet Rule 8(a)'s liberal pleading standard, Metro-Boston asks for leave

to amend.

METRO-BOSTON BROADCASTING, INC.

By its attorneys,

Kenneth R. Berman (BBO #040320)
Erik Bartenhagen (BBO # 640003)
Nutter, McClennen & Fish, LLP
World Trade Center West
155 Seaport Boulevard
Boston, Massachusetts 02210
(617) 439-2000

October 12, 2004

## Certificate Of Service

I certify that I served this document today on opposing counsel by mail.

Kenneth R. Berman

10/12/04

1369639.2

LEXSEE 13 MASS. L. RPTR. 48

**Deborah Strachan et al. n1 v. Laura M. Sheedy et al. n2**

n1 Stephen Strachan.n2 As a Trustee of Cardinal Trust (a Nominee Trust), and Laura M. Sheedy and Thomas Sheedy, individually.

00-4831-C

SUPERIOR COURT OF MASSACHUSETTS, AT MIDDLESEX

*13 Mass. L. Rep. 48; 2001 Mass. Super. LEXIS 189*

**March 13, 2001, Decided
March 15, 2001, Filed**

**DISPOSITION:** [*1] For the foregoing reasons, plaintiffs' motion to dismiss the abuse of process counterclaim (Count I) is DENIED.

**LexisNexis(R) Headnotes**

**JUDGES:** Margaret R. Hinkle Justice of the Superior Court.

**OPINIONBY:** Margaret R. Hinkle

**OPINION:** MEMORANDUM OF DECISION AND ORDER ON PLAINTIFFS' MOTION TO DISMISS ABUSE OF PROCESS COUNTERCLAIM (COUNT I)

On February 12, 2000, this matter was before the court on plaintiffs' motion to dismiss defendants' counterclaim for abuse of process. n3 Plaintiffs argue that the counterclaim should be dismissed because the filing of this case and the obtaining of a *lis pendens* does not constitute an abuse of process.

> n3 The motion to dismiss defendants' counterclaim for slander of title was allowed at the hearing on the pending motion.

For the following reasons, plaintiffs' motion to dismiss is *DENIED*.

*BACKGROUND*

On September 29, 2000, defendant Laura Sheedy and Robert Cunningham, Trustee, signed plaintiff's offer to purchase Sheedy's property at 11 Harrington Road in Lexington. The offer stated that [*2] it was "subject to mutually acceptable P&S [purchase and sale agreement] to be signed by the parties" on or before October 10, 2000, and stipulated that "both parties are not bound until P&S is signed." The parties never executed a purchase and sale agreement.

On October 20, 2000, plaintiffs filed this action, seeking specific performance of their September 29 offer to purchase defendants' property. At the same time, plaintiffs requested *ex parte* a *lis pendens* under *G.L.c. 184, § 15*. The court endorsed the *lis pendens,* which the plaintiffs recorded at the Middlesex South District Registry of Deeds. On November 3, 2000, defendants moved to have the *lis pendens* dissolved. That motion was denied on November 13, 2000. Defendants then filed an answer and counterclaim.

*DISCUSSION*

Under *Mass.R.Civ.P. 12(b)(6),* a court must dismiss a complaint for failure to state a claim where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Blank v. Chelmsford OB/GYN, P.C., 420 Mass. 404, 407, 649 N.E.2d 1102 (1995),* quoting *Nader v. Citron, 372 Mass. 96, 98, 360 N.E.2d 870 (1977).* [*3] The court must accept as true the well-pleaded factual allegations of the complaint, as well as any inferences that can be drawn therefrom in the plaintiff's favor. *Eyal*

13 Mass. L. Rep. 48; 2001 Mass. Super. LEXIS 189, *

*v. The Helen Broadcasting Company, 411 Mass. 426, 429, 583 N.E.2d 228 (1991).* A motion to dismiss should be denied unless "it appears *with certainty* that [the plaintiff] is entitled to no relief under any combination of facts that could be proved in support of her claim." *Brum v. Town of Dartmouth, 44 Mass. App. Ct. 318, 322, 690 N.E.2d 844* (emphasis in the original). Here, therefore, the court must determine whether there is any set of facts that would entitle defendants to relief on their abuse of process counterclaim.

For abuse of process, a party "must allege facts which are sufficient to support the propositions that: (1) 'process' was used; (2) for an ulterior or illegitimate purpose; (3) resulting in damage." *Jones v. Brockton Public Markets, Inc., 369 Mass. 387, 389, 340 N.E.2d 484 (1975).* Here, defendants' counterclaim is sufficiently pled to survive a motion to dismiss.

In this case, defendants claim that the "process" at issue is commencement of the plaintiffs' lawsuit *and* recording of the *lis pendens* [*4] at the Registry of Deeds. In Massachusetts, institution of a civil action constitutes "process." See *Jones v. Brockton Public Markets, Inc., 369 Mass. 387, 391, 340 N.E.2d 484 (1975),* and cases cited (abuse of process limited to writs of attachment, process used to institute civil action and process related to bringing criminal charges). Thus, this court need not address defendants' argument that the *lis pendens* alone does not constitute "process." n4

n4 The parties agree that Massachusetts has not determined whether a *lis pendens* constitutes

process. Other jurisdictions are split on the issue. Alaska and California have held that there is no cause of action for abuse of process in filing a notice of *lis pendens.* See *City of Angoon v. Hodel, 836 F.2d 1245 (9th Cir. 1988),* citing *Woodcourt II Ltd. v. McDonald Co., 119 Cal. App. 3d 245, 173 Cal. Rptr. 836 (1981).* In contrast, Rhode Island has held that "filing a notice of lis pendens based on a nonexistent or frivolous claim may constitute abuse of process . . ." *Cok v. Cok, 558 A.2d 205 (R.I. 1989).*

[*5]

The counterclaim alleges sufficient facts to support its allegation of ulterior motive. See *McCarthy v. Tobin, 429 Mass. 84, 86, 706 N.E.2d 629* (to constitute binding contract, offer to purchase must include all essential terms and indicate parties' intent to be bound). In addition, where the *lis pendens* prevents defendants from entering into any financial transaction for their property, the element of damages is sufficiently pled.

*ORDER*

For the foregoing reasons, plaintiffs' motion to dismiss the abuse of process counterclaim (Count I) is *DENIED.*

Margaret R. Hinkle

Justice of the Superior Court

Dated: March 13, 2001