UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| FAFARD REAL ESTATE & DEVELOPMENT CORP.,<br><br>Plaintiff,<br><br>vs.<br><br>METRO-BOSTON BROADCASTING, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) NO. 0411531-RGS<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM IN SUPPORT OF MOTION OF PLAINTIFF FAFARD REAL ESTATE & DEVELOPMENT CORP. TO HOLD SEPARATE TRIALS**

Plaintiff Fafard Real Estate & Development Corp. ("Fafard") respectfully submits this Memorandum in support of its Motion for an order separating this action into two trials: First, an estimated one-day bench trial on Fafard's claim for specific performance of a purchase and sale agreement, and second, a jury trial on defendant Metro-Boston Broadcasting, Inc.'s ("Metro-Boston") three counterclaims for abuse of process, intentional interference with advantageous relations, and violation of G.L. c. 93A.

Bifurcation of the equitable claim and legal counterclaims is particularly warranted in this case, and clearly within the discretion of the Court under Fed.R.Civ.P. 42(b). Fafard brought a simple claim for specific performance of a real estate purchase and sale agreement. The contract is either enforceable or it is not, and the evidence relevant to this straightforward claim is necessarily limited. The claim can be tried to the Court quickly and efficiently. Defendant Metro-Boston, after its special motion to dismiss was denied, filed an answer and asserted three counterclaims and a claim for a

trial by jury. At a hearing on November 17, 2004, the Court expressed concern over expeditiously resolving the parties' competing claims to the real estate and ordered an expedited trial, which is presently scheduled for February 14, 2005. The parties made their initial voluntary disclosures in December of 2004, then served paper discovery and exchanged documents and interrogatory answers in January of 2005. The parties then began taking depositions, with the last scheduled deposition occurring today, February 2, 2005.

Fafard is prepared to go forward with its specific performance claim on February 14, 2005, with the benefit of only the limited discovery that has been conducted. Such discovery, however, has revealed numerous issues relating to the defendant's counterclaims which require further investigation. Moreover, trying the claim for specific performance, which is to be decided by the Court, together with the defendant's counterclaims, before a jury, will create insurmountable difficulties and confusion. For example, Metro-Boston's claim for damages for intentional interference is wholly speculative in the absence of a determination on Fafard's claim for specific performance: how can Metro-Boston pursue a claim for interference with an alleged right to sell the property to another until it has been determined whether such right existed in the first place? Furthermore, how can the jury be expected to analyze and determine whether Fafard pursued its claim in good faith absent a prior determination as to whether the underlying contract is enforceable? Indeed, Fafard should not be deprived of the opportunity to present a judicial determination on the merits of it claim in its defense.

This case was put on an expedited trial schedule because of the need to quickly resolve the plaintiff's equitable claim of a right to title to the subject real estate. There is

no corresponding need to rush to trial on the defendant's more factually complicated legal counterclaims for money damages. The equitable claim can be tried quickly with little or no overlapping evidence pertaining to Metro-Boston's counterclaims. The Court will have latitude to limit the testimonial evidence to the satisfaction of conditions precedent, explanations of any ambiguities that the Court might perceive in the contract documents, and Metro-Boston's affirmative defenses. By contrast, if Fafard's claim is tried at the same time as Metro-Boston's counterclaims, before a jury, the exclusion of proffered evidence carries greater risk of reversal on appeal and the trial will be lengthened.

## ARGUMENT

### A. The Equities Favor Trying Fafard's Specific Performance Claim First.

The Court has discretion to bifurcate an action into separate trials to further convenience, expedition and economy, or to avoid prejudice. See Fed. R. Civ. P. 42(b); see also Warner v. Rossignol, 513 F.2d 678 (1st Cir. 1975). See also, e.g., Dollar Systems, Inc. v. Avcar Leasing Sys., Inc., 890 F.2d 165, 170-71 (9th Cir. 1989) (upholding decision of trial court to conduct separate trials of legal and equitable issues).

There are substantial grounds to try and determine Fafard's specific performance claim separately and first. Fafard is prepared to present its claim for specific performance at the trial commencing February 14, 2005. Fafard expects that its specific performance claim will be tried in a single day. It is a simple, uncomplicated and straightforward claim that requires few witnesses and exhibits. A decision on Fafard's single claim, whether favorable or unfavorable to the plaintiff, will dissolve the lis

pendens on the Property, which was the motivating factor behind the expedited trial schedule.

But simultaneously trying Metro-Boston's counterclaims for an abuse of process, intentional interference with advantageous business relations and a violation of G.L. c. 93A, before a jury, presents special problems. While it is true that the bringing of a meritorious claim can still constitute an abuse of process if brought for an illegitimate, ulterior purpose, the question of whether the claim was meritorious is still evidence to be considered in an abuse of process action. The merits of Fafard's claim, in this case, must be decided by the Court and not a jury.

The counterclaim of intentional interference requires proof of interference by improper means or with an improper motive. Fafard should have the opportunity to first obtain a judgment on its equitable claim for specific performance in order to defend itself against a claim of use of improper means of interference. Metro-Boston's c. 93A claim is not to be decided by a jury, but there is no reason why that counterclaim should not be tried together with the other two.

These counterclaims greatly complicate this otherwise straightforward action. The counterclaims necessarily involve, for example, Metro-Boston's dealings with third parties and its "potential purchasers" for the property. See Speen v. Crown Clothing Corp., 102 F.3d 625 (1st Cir. 1997). The counterclaims also involve evidence of damages, which Metro-Boston declined to provide in response to Fafard's interrogatories. Indeed, the identities of the potential purchasers of Metro-Boston's property were only recently disclosed to Fafard, and Fafard has not yet been able to conduct discovery into the readiness, willingness and ability of these potential purchasers to close on the

property. Because of the shortened discovery period, however, Fafard only learned *this week* the identity of Metro-Boston's purported "advantageous business relations." In order to defend adequately against Metro-Boston's claims, Fafard must depose additional witnesses, including Bradford Bleidt, Christopher Egan and Alex Langer, each of whom has relevant information concerning Metro-Boston's prospective advantageous business relations. Fafard also needs to subpoena and review additional documents, such as accounting records identifying the value of improvements to Metro-Boston's property, as opposed to the land itself, and a purported offer to purchase only so much of Metro-Boston's land as is <u>not</u> subject to the purchase and sale agreement with Fafard.[1]

Fafard must be allowed the opportunity to complete its discovery before being called upon to defend itself against these counterclaims. Fafard has only been able to take the deposition of one person – Metro-Boston's principal, Mary Heller-Halcomb – which did not occur until February 1st due to the belated production of Metro-Boston's documents and then witness's busy schedule. It was during the course of this deposition that these other issues came to light. To compel Fafard to defend against the counterclaims without the benefit of additional discovery and on the extremely expedited trial schedule prejudices Fafard. Under these circumstances, separate trials are entirely appropriate. See Fed. R. Civ. P. 42(b) (trial court has discretion to separate trials to avoid prejudice).

---

[1] Fafard seeks to enforce an agreement to sell 19.6 undeveloped acres out of an approximately 40 acre parcel, the balance of which is improved by five 550 foot radio antennae and six buildings. Metro-Boston claims to be entertaining an offer to purchase the developed portion of the property, including ten of the 19.6 undeveloped acres under agreement with Fafard, as well as an alternative offer that does not include the ten acres under agreement with Fafard. The value of the ten acres in dispute cannot be determined without subtracting the value of the improvements on the land and then dividing the resulting number by the number of acres.

### B. Holding a Separate Trial on Fafard's Claim Will Simplify the Case for the Jury.

Separating Fafard's specific performance claim from the counterclaims will reduce the risk of jury confusion and simplify the jury's task. See <u>Barr Labs, Inc. v. Abbott Labs</u>, 978 F.2d 98 (3d Cir. 1992) (upholding decision of trial court to bifurcate issue to avoid jury confusion). Fafard brings an equitable claim, which will be decided by the bench, regardless of whether the claims are tried together. See <u>Noyes v. Bragg</u>, 220 Mass. 106 (1915); Wright & Miller, 9 Federal Practice & Proc., § 2309, at 85 (no right to jury trial in specific performance claim in equity). The jury should have the benefit of the Court's decision as to whether the P&S Agreement is enforceable and the benefit of the Court's determination as to whether Fafard's claim was meritorious <u>before</u> it decides whether Fafard engaged in an abuse of process or interfered with advantageous business relations by filing a frivolous lawsuit. Indeed, the analogous claim of malicious prosecution is not deemed to be ripe and <u>cannot</u> be brought until <u>after</u> the underlying case has been tried and a judgment entered in favor of the defendant. See <u>Bannon v. Auger</u>, 262 Mass. 427 (1928).

If Fafard's specific performance claim were to be tried at the same time as Metro-Boston's counterclaims, in front of (but not to) the jury, the jury would be hard pressed to distinguish what evidence relates to the claims it is to be deciding and what evidence relates to the equitable claim that it is not deciding. Evidence as to Metro-Boston's affirmative defenses, e.g. that there was no meeting of the minds and that the purchase and sale agreement does not satisfy the statute of frauds, would only tend to confuse the issues that the jury is to be deciding. Nor can this confusion be adequately addressed by

6

instructions from the bench. If the jury is told that it is not to consider whether Fafard is entitled to enforce the purchase and sale agreement, as that is a matter for the Court to determine, it would still be utterly confusing for the jury to sort out how to deal with the evidence of the parties' contractual dealings in the context of the counterclaims, which essentially assert bad faith in bringing the lawsuit, without considering whether the contract is enforceable.

### C. A Separate Trial on Metro-Boston's Counterclaims Will Cause No Prejudice to Metro-Boston, and, as a Practical Matter, May Lead to Metro-Boston's Counterclaims Being Dropped or Settled.

This case is really about the conveyance of title to the Property. Fafard wants to buy the Property, but Metro-Boston wants to sell it to someone else. Thus, if the Court were to try Fafard's specific performance claim in a separate (and first) trial, it will resolve the primary dispute between the parties. Either the P&S Agreement is enforceable, or it is not. Either specific performance will be granted, and Metro-Boston will be ordered to prepare the survey necessary to divide the Property in the Land Court and then convey clear and marketable title to the Property to Fafard, or the Court will not grant specific performance and Metro-Boston can do with the Property as it wishes. Thus, once the enforceability of the P&S Agreement is decided, *either way*, there is a likelihood that Metro-Boston will drop its counterclaims or that the parties will settle the counterclaims. Under these circumstances, bifurcation of Fafard's specific performance claim from Metro-Boston's counterclaims is appropriate. See Wright & Miller, 9 Federal Prac. & Proc. § 2388, at 476.

Moreover, Metro-Boston's counterclaims are entirely unrelated to the specific performance claim. The counterclaims are not *defenses* to the enforcement of the P&S

7

Agreement, but entirely *separate* causes of action. Indeed, the counterclaims each could have been brought in an entirely separate lawsuit, and they exist independently from Fafard's claim. See Fed. R. Civ. P. 13(b). A determination of Fafard's claim will not conclusively decide Metro-Boston's counterclaims. Therefore, there is <u>no risk</u> that Metro-Boston's claims will be dismissed before a jury can decide them. And there is <u>no risk</u> of an impairment to Metro-Boston's right to a jury trial on its counterclaims. See Fed. R. Civ. P. 42(b).

## CONCLUSION

In this case, the Court should exercise its discretion to hold two separate trials to avoid prejudice to Fafard and resolve the claim involving title to real property. Fafard is ready to present its specific performance case on February 14. Trying the counterclaims at a later date will greatly simplify the case for the jury and cause no prejudice to Metro-Boston.

Respectfully submitted,

FAFARD REAL ESTATE
DEVELOPMENT CORP.

By its attorneys,

_____
Jeffrey J. Upton (BBO#552221)
Halye A. Sugarman (BBO#646773)

HANIFY & KING
Professional Corporation
One Beacon Street
Boston, MA 02108-3107
(617) 423-0400

DATED: February 2, 2005
422520

CERTIFICATE OF SERVICE

I, Halye A. Sugarman, certify that on February 2, 2004, I served a copy of the foregoing Memorandum in Support of Motion to Hold Separate Trials, by hand on:

>Kenneth Berman
>Nutter McClennan & Fish, LLP
>World Trade Center West
>155 Seaport Boulevard
>Boston, MA  02110

_____
Halye A. Sugarman