UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2005 FEB -9  P 4: 46

U.S. DISTRICT COURT
DISTRICT OF MASS.

|  |  |  |
|---|---|---|
| FAFARD REAL ESTATE & DEVELOPMENT CORP., | ) ) ) ) | |
| Plaintiff/Defendant-in Counterclaim | ) ) | |
| vs. | ) ) | Civil Action No. 04-11531 RGS |
| METRO-BOSTON BROADCASTING, INC., | ) ) ) | |
| Defendant/Plaintiff-in-Counterclaim | ) ) ) | |

DEFENDANT'S SECOND MOTION TO AMEND ANSWER
[ORAL ARGUMENT REQUESTED]

Pursuant to Fed. R. Civ. P. 15(a), defendant Metro-Boston Broadcasting, Inc. (referred to

as "Tower Sites") moves to amend its answer by adding the following affirmative defense:

Fourteenth Defense

Plaintiff's claim is barred – and the contract on which plaintiff's claim rests

should be deemed null and void – by the doctrine of mistake.[1]  In particular, at the time of

contracting, the parties mutually, but mistakenly, believed that part of Lot 11 was zoned

residential, that the balance of Lot 11 was zoned industrial, and that the line separating

the residential-zoned land from the industrial-zoned land on Lot 11 was as shown on a

1979 drawing prepared by the engineering firm of McCarthy & Sullivan (the "1979

Drawing").  The 1979 Drawing represented the zoning line as a sawtooth shaped lined to

the northeast of the boundary line between Lot 11 and Lot 12.  In entering into the

purchase and sale agreement, the parties intended that the portion of Lot 11 to be included

in the conveyance was only the portion of Lot 11 that was zoned residential, and that the

balance of Lot 11, which was zoned industrial, was to be retained by defendant.

Consistent with that intent, defendant agreed to a price for the land to be conveyed

relying on its belief that the land to be conveyed was all zoned residential.  Defendant

---

[1] Fed. R. Civ. P. 9(b) requires the circumstances constituting mistake to be pleaded with particularity.

intended to retain all of the industrially zoned land, which the defendant regarded as more valuable than the residential land. Contrary to what the parties believed at the time, and contrary to what was shown on the 1979 Drawing, the zoning boundary line did not in fact run through Lot 11 but ran on the property boundary line between Lot 11 and Lot 12. To the extent the parties' written purchase and sale agreement can be construed as obligating defendant to convey a parcel of land that includes any industrially zoned land on Lot 11, as plaintiff now contends, the agreement does not conform to the parties' mutual intent. Alternatively, if, at the time of contracting, plaintiff knew or was indifferent to the fact that land shown as residential on Lot 11 in the 1979 Drawing was actually zoned industrial, plaintiff knew that defendant believed such land was zoned residential, that defendant considered the zoning to be material, and that defendant only intended to convey the land that was zoned residential.

In addition, the 1979 Drawing purported to show the location of structures, wetlands, boundaries, and other geographical and man-made features pertaining to defendant's land in general and Lot 11 in particular. In fact, a number of these features were not accurately shown on the 1979 Drawing, including the location of tower sites, guy wires, wetlands, and boundaries. At the time the parties entered into the purchase and sale agreement, the parties mutually believed that these features were accurately shown on the 1979 Drawing and intended that the conveyance would comprise only such land as did not interfere with the existing structures, activities, and uses on Lot 11. Alternatively, if, at the time of contracting, plaintiff knew or was indifferent to the location of the features shown in the 1979 Drawing, plaintiff knew that defendant believed such features to be where depicted in the 1979 Drawing, that defendant considered the location of these features to be material, and that defendant only intended to make a conveyance that would not interfere with the existing structures, activities, and uses on Lot 11.

Had defendant known the true facts, defendant would not have signed the purchase and sale agreement as drafted, but would have signed a different purchase and sale agreement or none at all.

## Grounds For This Motion

1.      The proposed fourteenth affirmative defense is intertwined with the existing sixth defense (absence of meeting of the minds on essential terms) and arises from evidence that Tower Sites will offer in all events.

2.      Leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a).   This rule is to be liberally applied for "[i]f the underlying facts or circumstances relied upon by a [party] may be a proper subject of relief, the [party] ought to be afforded an opportunity to test his claim on the merits." Foman v. Davis, 371 U.S. 178, 182 (1962).

3.      Tower Sites is acting in good faith and without undue delay in seeking this amendment, particularly given that this action has been expedited for discovery and trial. The proposed affirmative defenses are intrinsically related to the subject matter of this case, and no "radical remaking of the case" is contemplated by this motion to amend.  See Grant v. New Group Boston, Inc., 55 F.3d 1, 6 (1st Cir. 1995).  The proposed affirmative defenses arise out of the same conduct, transaction, or occurrences that are the subject of the original answer.

4.      The proposed affirmative defenses allegations are so intertwined with the defenses pleaded in the original answer that, if this amendment were not made at this time, Tower Sites would in all likelihood be permitted to amend its answer at or after trial in accordance with Fed. R. Civ. P. 15 (b) (amendments to conform to the evidence) and 54(c) (every final judgment shall grant a party the relief to which it is entitled, even if such relief was not demanded in the party's pleadings).

5.      This amendment will not prejudice plaintiff.  Plaintiff has been aware of the mistake issue, and indeed addressed it in both the Trial Memorandum (on the section addressing

foreseeable issues of law) and in a motion in limine.[2]

6.    Legal support for this amendment can be found in, for example, LaFleur v. C.C. Pierce Co., 398 Mass. 254, 257-58 (1986) ("[w]here there has been a mistake between the parties as to the subject matter of a contract, there has been no 'meeting of the minds,' and the contract is voidable at the election of the party adversely affected").

METRO-BOSTON BROADCASTING, INC.

By its attorneys,

Kenneth R. Berman (BBO #040320)
Erik P. Bartenhagen (BBO #640003)
Nutter McClennen & Fish LLP
World Trade Center West
155 Seaport Boulevard
Boston, Massachusetts 02210
(617) 439-2000

February 9, 2005

Local Rule 7.1 Certificate

I certify that on February 7, 2005, I conferred with counsel for plaintiff in a good faith attempt to narrow or resolve the issues presented by this motion. It is my understanding that plaintiff has agreed in principle to the allowance of this motion.

Kenneth R. Berman

February 9, 2005

Certificate Of Service

I certify that I served this document today on opposing counsel by hand.

Kenneth R. Berman

February 9, 2005

---

[2] The motion in limine was not based on any asserted pleading deficiency. It was based on deposition testimony and addressed the merits of the defense.

1402330.2