UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2005 FEB -9  P 4:47

U.S. DISTRICT COURT
DISTRICT OF MASS.

)
FAFARD REAL ESTATE &           )
DEVELOPMENT CORP.              )
                               )
         Plaintiff             )
                               )
vs.                            )   NO. 04-11531-RGS
                               )
METRO-BOSTON BROADCASTING,     )
INC.,                          )
         Defendant             )
                               )

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE
TO EXCLUDE EVIDENCE PERTAINING TO CERTAIN AFFIRMATIVE DEFENSES

Introduction

Plaintiff's motion in limine to exclude evidence pertaining to certain affirmative defenses is in reality a mis-styled motion for partial summary judgment, not a motion in limine at all. Rather than seeking to exclude *inadmissible* evidence for the purpose of avoiding undue prejudice, which is the proper purpose of a motion in limine, the motion improperly seeks to exclude *admissible* evidence for the unabashed purpose of precluding defendant from establishing certain of its affirmative defenses.[1] Plaintiff's motion is anchored on the mistaken belief that evidentiary admissions in a deposition are binding admissions, and preclude a party from offering any evidence to explain or clarify the testimony or to place it in proper context.

Apart from these fatal errors in the foundation of plaintiff's motion, plaintiff's interpretation of the deposition testimony on which the motion relies is simply that, an interpretation, and a wrong interpretation to boot. It is an interpretation slanted to favor the

---

[1] Plaintiff's motion asserts that, if the motion is allowed, it will "eliminat[e] ... defenses [and] leave open exactly one issue of fact for trial on plaintiff's specific performance claim." Motion p.2.

moving party, not the opposing party. If this were a motion for partial summary judgment, the Court would be required to draw all reasonable inferences in the opponent's favor, not the movant's favor. Plaintiff cannot leverage itself into a better position by avoiding Rule 56 (and the correlative local rules) and instead labeling its motion a motion in limine. The motion is simply an improper attempt to pre-try the affirmative defenses based on nothing more than the gloss plaintiff would like to place on defendant's deposition.

In all events, if it were proper to prejudge the issues on the eve of trial based on what one party has said in a deposition, such an effort would have to fail in light of the offer of proof defendant has made below.

## Analysis

I.  PURPOSE OF MOTION IN LIMINE

A motion in limine is intended to keep offensive, inadmissible evidence away from a jury because of the prejudicial effect arising from the mere mention or offering of it, even if it is objected to and excluded from the record.

> The motion [in limine] affords an opportunity to the court to rule on the *admissibility* of evidence in advance, and prevents encumbering the record with immaterial or prejudicial matter, as well as providing a means of ensuring that privileged material as to which discovery has been allowed by the court will not be used at trial if it is found to be inadmissible. It recognizes that the mere asking of an improper question in the hearing of the jury may prove so prejudicial that, notwithstanding an instruction by the court to disregard the offensive matter, the moving party will be denied his right to a fair trial. *It is the prejudicial effect of the questions asked or statements made in connection with the offer of evidence, and not so much the prejudicial effect of the evidence itself, that this very practical tool was designed to reach.* Thus, the real purpose of a motion in limine is to give the trial judge notice of the movant's position so as to avoid the introduction of damaging evidence *which may irretrievably infect the fairness of the trial.*

75 Am. Jur. 2d *Trial* §94 (2004 ed.) (emphasis added). Such a motion "can serve no useful purpose in a nonjury case." Id. § 100.

Because a motion in limine is a potentially powerful and dangerous weapon, "courts must be certain that such action will not unduly restrict the opposing party's presentation of its case." Id. § 99. An order in limine:

> should only be used as a shield and never to gag the truth and permit other evidence to mislead the jury because the order prevents such evidence from being rebutted. *And it should not ordinarily be employed to choke off an entire claim or defense.... It is clearly improper for the court to allow a motion in limine which limits or refuses the introduction of relevant admissible evidence.*

Id. § 99 (emphasis added).

Importantly:

> The use of motions in limine to summarily dismiss a portion of a claim has been condemned, and trial courts are cautioned *not to allow motions in limine to be used as unwritten and unnoticed motions for summary judgment or motions to dismiss.* Nor should the motion be used to perform the function of a directed verdict. Motions in limine are not to be used as a sweeping means of testing issues of law. And deficiencies in pleadings or evidence are not appropriately resolved by a motion in limine. Clearly, a motion in limine cannot properly be used as a vehicle to circumvent the requirements of rules of procedure.

Id. (emphasis added).

II.   **PLAINTIFF'S MOTION IN LIMINE IS A MISNAMED AND IMPROPER MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff's motion has all the earmarks of a motion for partial summary judgment except it is not so named and does not follow the procedures established by Rule 56 and Local Rule 56.1. It is premised on the theory that defendant's Rule 30(b)(6) deponent said something in her deposition that plaintiff interprets as foreclosing certain affirmative defenses. The motion seeks to (a) limit the evidentiary record to what was said in the deposition, (b) preclude the defendant from offering any evidence to explain or clarify the deposition or place it in context, and (c) avoid a trial on the merits of the targeted affirmative defenses.

Were this a motion for partial summary judgment, defendant could defeat it by offering

an affidavit explaining or clarifying the deposition or placing it in context, while attesting to facts that support the affirmative defenses now under attack. Plaintiff should not, by the simple expedient of moving in limine, be able to deprive defendant of doing the same thing at trial. If defendant gives testimony at trial to support the affirmative defenses, and if plaintiff believes that defendant's deposition testimony contradicts her trial testimony, plaintiff can use the deposition in an attempt to impeach defendant, and can point out any alleged inconsistency in an effort to impugn defendant's credibility. But the mere fact that a party has given some deposition testimony that might be helpful to the opponent's case has never been a ground for precluding trial testimony on certain claims or defenses, except under the exacting standards and procedural safeguards applying to summary judgment motions.

Plaintiff's motion assumes that, once a statement is made in a deposition, it is unalterably binding on the party who made it. Plaintiff thus mistakenly attempts to elevate the status of deposition testimony from evidentiary admission to judicial admission, which it clearly is not. A judicial admission is ordinarily binding on a party, although a court has power to relieve a party from a judicial admission made inadvisedly. United States v. Belculfine, 527 F.2d 941, 944 (1st Cir. 1975). An evidentiary admission is not binding, and may be contradicted with other evidence. Id.

"[J]udicial admissions generally arise only from deliberate voluntary waivers that expressly concede for the purposes of trial the truth of an alleged fact." Id. A judicial admission is a statement made in a pleading, Schott Motorcycle Supply, Inc. v. American Honda Motor Co., 976 F.2d 58, 61 (1st Cir. 1992), or in a Rule 36 response, Fed. R. Civ. P. 36, or in a stipulation. United States v. Brewton, 1991 U.S. Dist. LEXIS 6839 *19 (D. Mass. 1991). Spontaneous deposition testimony does not constitute a judicial admission. It is a mere

evidentiary or ordinary admission. Hence, it does not operate to exclude trial testimony, assuming that the deposition testimony, if left unexplained, could somehow entitle plaintiff to prevail against certain affirmative defenses.

III.  NOTWITHSTANDING THE DEPOSITION TESTIMONY – WHICH PLAINTIFF HAS TAKEN OUT OF CONTEXT AND WHICH PERTAINS ONLY TO STATE OF MIND – THERE WILL BE TRIAL TESTIMONY SUPPORTING THE CHALLENGED AFFIRMATIVE DEFENSES

At issue under the affirmative defenses that plaintiff now attacks is whether the parties had a meeting of the minds or were mistaken as to what property would be conveyed and whether that meeting of the minds was expressed in a written memorandum that satisfies the statute of frauds.

By way of offer of proof, defendant will offer evidence at trial to the following effect:

- Defendant owns a large parcel, part of which is zoned for industrial use and part of which is zoned for residential use;

- In their discussions leading up to the signing of the purchase and sale agreement, defendant offered to sell plaintiff only the portion of the land that was zoned residential, it being defendant's disclosed intent to retain the more valuable industrially zoned land;

- In offering to buy land from the defendant, it was plaintiff's intention to buy only the land that was zoned residential.

- The price was determined on the assumption that the land to be conveyed was zoned residential. Had defendant intended to sell industrially zoned land, it would have charged a higher price.

- During their negotiations, the parties had available to them a 1979 drawing that showed the zoning boundary in the form of a zigzag or saw-tooth shaped line running through a portion of defendant's property;

- Both parties actually, but mistakenly, believed that the zoning line on the 1979 drawing was accurate. In fact, the actual zoning line was not in a zigzag shape at all but ran in a relatively straight line, in a different location from the zigzag line.

- When the purchase and sale agreement was signed, plaintiff – who drafted the

agreement – described the land to be conveyed by hand drawing a zigzag line across a plan of defendant's property.

- In drawing the line in this fashion, neither the plaintiff nor the defendant intended that line to represent the actual land to be conveyed. Rather, they intended it to approximate what they both (mistakenly) thought was the then-existing zoning line running across defendant's property, as shown on the 1979 drawing.

- The agreement contemplated that the plaintiff would have the right to petition the town to straighten the zoning line, and that, once straightened, the new zoning line would become the boundary of the land to be conveyed.

- The parties had discussed both before and after the signing of the purchase and sale agreement that the precise location of the land to be conveyed was a matter to be worked out between plaintiff and defendant.

- Plaintiff's position in this suit has been that the only way the land in question could be conveyed would be if (a) a survey were performed, (b) a surveyed drawing were prepared showing new lot lines, and (c) the drawing were approved by both the Ashland planning board (under local subdivision regulations) and the Land Court, as this was registered land.

This evidence would place defendant's deposition testimony in context. In context, defendant's Rule 30(b)(6) designee did not testify that she intended the zigzag line in the purchase and sale agreement to represent the physical boundary of the land to be conveyed, regardless of how the land was zoned. She testified that it "crudely, and certainly not definitively,... represented the basic general idea of the scope of the property Fafard wanted to buy" and "*to show the residential land*, which was the subject of a purchase." (Halcomb Dep. p.38). She further testified that the zigzag line in the purchase and sale agreement was intended to represent "the zoning line separating industrial from Residential A land on the 1979 McCarthy plan," and that she "understood [the Residential A land] to be the subject of this purchase and sale agreement ... that was designated as Residential A in Lot 11 on the 1979 McCarthy plan" (Halcomb Dep. pp.40-41).

There is nothing inconsistent between this deposition testimony and the remaining

evidence defendant will offer about the parties' mutual intent to buy and sell only land that was zoned residential, and the parties' mutual mistake about what land was zoned residential and what land was zoned industrial. The testimony on which plaintiff's motion relies is ambiguous at best. Conveniently, plaintiff failed to disclose in its motion papers other deposition testimony of defendant that removed any doubt as to what the witness meant by her testimony. Thus, plaintiff did not point out how defendant testified:

- "[S]he [Fafard's Jannice Hannert] was only interested in the residential land" (Halcomb Dep. p.17)

- "I believe she [Hannert] called and said that Fafard was interested in the residential land...." (Halcomb Dep. p. 25)

- "What I meant [by Exhibit 1] is that we intended to sell only the residential land" (Halcomb Dep. p. 39)

In essence, plaintiff would like to characterize defendant's testimony as meaning that defendant intended to sell the land shown as residential and demarcated by the zigzag line on the 1979 drawing, whether or not it was actually zoned residential. Plaintiff is free to argue that interpretation of the evidence in closing at trial, although defendant believes the testimony does not support that interpretation. But plaintiff is not free to have the Court accept that interpretation of the evidence before trial and, based on that interpretation, to bar the defendant from offering evidence at trial that not only supports a contrary interpretation but which also supports defendant's affirmative defenses.

IV. DEFENDANT'S EVIDENCE WILL SUPPORT DEFENSES BASED ON STATUTE OF FRAUDS, MUTUAL MISTAKE, AND FAILURE OF THE MINDS TO MEET

Before there can be a contract, there must be a meeting of the minds on all essential terms. Conos v. Sullivan, 250 Mass. 376, 378 (1924). In a land purchase contract, the boundaries of the land to be conveyed are essential terms. Michelson v. Sherman, 310 Mass.

774, 777 (1942) ("location of the boundary line between the land sold and the land kept by the defendants was an essential element of the ... contract"). Further, "[w]here there has been a mistake between the parties as to the subject matter of a contract, there has been no 'meeting of the minds,' and the contract is voidable at the election of the party adversely affected." LaFleur v. C.C. Pierce Co., 398 Mass. 254, 257-58 (1986). Defendant will offer evidence at trial to the effect that both parties were mistaken as to the existence of the location of the zoning line, and that this was a material fact affecting what land was to be sold to Fafard and what land was to be retained.

Further, any promise involving real property is enforceable only if that promise meets the requirements of the statute of frauds. Schwanbeck v. Federal-Mogul Corp., 412 Mass. 703, 709 (1992). To satisfy the statute of frauds, the writing "must contain directly, or by implication, all of the essential terms of the parties' agreement." Simon v. Simon, 35 Mass. App. Ct. 705, 709 (1994). In the absence of a mutual mistake permitting reformation, the omission of an essential term, not supplied by reasonable implication, renders the memorandum insufficient." Id.

The boundaries of land to be conveyed are essential terms and must be fixed by the written memorandum. Michelson v. Sherman, 310 Mass. 774, 777 (1942) ("location of the boundary line between the land sold and the land kept by the defendants was an essential element of the ... contract"); Sherer v. Trowbridge, 135 Mass. 500, 502 (1883) (writing must "describ[e] the boundaries with sufficient certainty"). If it is impossible from the written memorandum "to lay out on the land the boundaries of the lots to be conveyed, ... the agreement is unenforceable because of uncertainty." Knowles v. L.D. Griswold Land Co., 252 Mass. 172, 175 (1925). Further, where a land purchase agreement contemplates that the

boundaries will ultimately be determined by a plan to be approved by a public board or authority, the written agreement is too indefinite to be enforced, even if the agreement describes the land by metes and bounds and by reference to lots shown on a tentative plan. Id. While parol evidence is admissible to ascertain the meaning of words used in an agreement, it cannot be used to supply deficiencies in a written memorandum under the statute of frauds. Michelson v. Sherman, 310 Mass. 774, 777-78 (1942) (even though parties orally agreed on location of boundary line and even though such boundary line would have been the natural and obvious division of the land, the written memorandum did not fix the location of the boundary line and hence contract was unenforceable). See also Whelan v. Sullivan, 102 Mass. 204, 206 (1869) (where piece of land to be conveyed was part of larger tract, and where memorandum did "not, either in itself, or by reference to any other writing, contain the means of describing or identifying the boundaries of the piece to be conveyed," statute of frauds rendered contract unenforceable; parol evidence cannot be taken to complete the memorandum); Klein v. Brodie, 167 Mont. 47, 48 (1975) (where buy-sell agreement gave approximate description of land to be conveyed "but the exact boundary was to be determined by a survey," agreement was unenforceable under statute of frauds); Plantation Land Co. v. Bradshaw, 232 Ga. 435 (1974) (where written agreement described land by reference to attached plat "and the property being outlined in red thereon," the contract did not meet the requirements of the statute of frauds because "a determination of the exact boundaries of the ... acres to be sold cannot be made, either from the plat alone or in conjunction with the contract").

Finally, plaintiff contends, without supporting authority, that defendant's execution of an amendment to the contract extending the time for performance, after discovery of the parties' mistake regarding the location of the zoning line, constitutes ratification of the

agreement. Whether this was a ratification, and what this ratified, are questions of fact. Hoag v. Hoag, 210 Mass. 94 (1911) ("Whether there had been ratification was a question, not of law but of fact"). It is defendants' position that the extensions merely enabled the parties to have additional time to work out open issues on which the parties did not have a meeting of the minds, and that resolving the location of the boundary line was one of those issues. Thus, the extensions are entirely consistent with the absence of a meeting of the minds on an essential term, and also consistent with the existence of a continuing, unratified mutual mistake. Plaintiff is free to argue a contrary interpretation of the evidence at trial. But plaintiff is not entitled to a pre-trial order precluding defendant from offering evidence on these affirmative defenses.

## Conclusion

Plaintiff's motion in limine to exclude evidence on certain affirmative defenses must be denied.

METRO-BOSTON BROADCASTING, INC.

By its attorneys,

*/s/ Kenneth R. Berman*
Kenneth R. Berman (BBO 040320)
Nutter McClennen & Fish LLP
World Trade Center West
155 Seaport Boulevard
Boston, Massachusetts 02210
(617) 439-2000

February 9, 2005

## Certificate Of Service

I certify that I served this document today on opposing counsel by hand.

*/s/ Kenneth R. Berman*
Kenneth R. Berman

February 9, 2005