UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                        )
**FAFARD REAL ESTATE &**                )
**DEVELOPMENT CORP.,**                  )
                                        )
    **Plaintiff and Defendant-In-Counterclaim,** )
                                        )
vs.                                     )    CIVIL ACTION
                                        )    NO. 04-11531-RGS
**METRO-BOSTON BROADCASTING,**          )
**INC.,**                               )
                                        )
    **Defendant and Plaintiff-In-Counterclaim,** )
_____)

DEFENDANT'S MEMORANDUM IN SUPPORT
OF ITS MOTION FOR ENTRY OF SEPARATE
JUDGMENT ON COMPLAINT OR, ALTERNATIVELY,
TO SEVER COMPLAINT FROM COUNTERCLAIM

**Background**

At issue is whether Fafard's expected appeal from this Court's denial of Fafard's claim for specific performance must await the adjudication of Metro-Boston's tort counterclaim.[1] What turns on this motion is whether Metro-Boston must endure additional litigation-caused delay before it can sell or refinance its property, and suffer the harmful consequences that such delay will bring, including the loss of opportunities to sell its property, and the diminishment of the value of its property in this escalating interest-rate environment. This motion is also brought to ensure that, at the trial of the counterclaim, issue preclusive effect will be given to this Court's determination of the issues on the complaint.

This case tees up two independent, albeit related, claims: Fafard's complaint for

---

[1] **Fafard has advised Metro-Boston that it intends to appeal.**

specific performance of a purchase and sale agreement, and Metro-Boston's tort counterclaim for abuse of process, intentional interference with advantageous business relations, and violations of Mass. G.L. c. 93A, arising from the manner in which Fafard attempted to exercise and enforce its alleged rights under the agreement, and the objectives Fafard sought to achieve.  Because Fafard was suing for specific performance, Fafard was able to obtain a lis pendens memorandum, which has prevented Metro-Boston from selling or refinancing its property during the pendency of this suit.

From the beginning, the parties and the Court recognized a need for expedition due to ongoing prejudice to Metro Boston arising from the lis pendens memorandum.  Thus, discovery was accelerated and a speedy trial held only months after the case was docketed.

On February 11, 2005, the Court allowed Fafard's motion "to hold separate trials," thereby bifurcating this case for all practical purposes into two parts: first, a jury-waived trial on Fafard's complaint for specific performance, and second, a trial on Metro-Boston's counterclaims.[2]  Because the lis pendens memorandum was prejudicing Metro-Boston, the bifurcation order was designed to mitigate this prejudice, resolve the specific performance issues quickly, and thereby determine who had the right to title, while deferring the adjudication of the counterclaim to some later undetermined time.  Fafard itself made this point eloquently when it said, in its motion for separate trials, "[A] resolution of this claim [for specific performance] will remove the lis pendens on the property – the primary reason for the

---

[2] Fafard brought its motion under rule 42(b).  An order for separate trials under Rule 42(b) does not result in a severance under Rule 21 into two distinct actions.  9 C. Wright & A. Miller, Federal Practice & Procedure § 2387 at 470 (2d ed. 1995).  The case remains a single case with one docket number, but with separate trials of different issues or claims.  See Acevedo-Garcia v. Monroig, 351 F.3d 547, 558-59 (1st Cir. 2003) ("Rule 42(b) … authorizes courts to divide a single action into separate trials that remain under the umbrella of the original solitary action").

expedited trial schedule." And in its brief in support of that motion, Fafard stated, "This case was put on an expedited trial schedule because of the need to quickly resolve the plaintiff's equitable claim of a right to title to the subject real estate." Memorandum In Support Of Fafard's Motion to Hold Separate Trials, p.2.

After conducting a four-day trial, the Court found for Metro-Boston and denied Fafard's claim for specific performance. No trial has yet been held on the counterclaim, and Fafard asserts it needs more discovery – which will add more delay – before Fafard will be ready for such a trial.

Analysis

I.  A Rule 54(b) Certificate Should Enter

   A.   *Standard Under Rule 54(b)*

"When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim or third-party claim, … the court may direct entry of a final judgment as to one or more but fewer than all of the claims … only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." Fed. R. Civ. P. 54(b). A two-step approach determines whether a separate final judgment is appropriate under Rule 54(b). First, the Court must determine whether the ruling "disposed of all the rights and liabilities of at least one party as to at least one claim." Credit Francais Int'l S.A. v. Bio-Vita, Ltd., 78 F.3d 698, 706 (1st Cir. 1996). If this finality test is met, the Court then undertakes a more subjective analysis of whether there is "no just reason for delay," which involves comparing "the claims undergirding the proposed judgment (i.e., the jettisoned claims) and … the claims remaining in the case" to help the Court tip the balance between two competing policy goals: "the desirability of immediate review and the

undesirability of promoting piecemeal appeals." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 580 (1st Cir. 1994). In the process, the Court examines the relationship or overlap among the various legal and factual issues involved in the adjudicated and unadjudicated claims. Credit Francais Int'l S.A. v. Bio-Vita, Ltd., 78 F.3d 698, 706 (1st Cir. 1996).

"To warrant recourse to the special procedure envisioned by Rule 54(b), the district court typically must make an individualized assessment of the desirability and effect of an immediate appeal." Quinn v. City of Boston, 325 F.3d 18, 26 (1st Cir. 2003). "Thus, if a district court wishes to enter a partial final judgment on the ground that there is no just reason for delay, it should not only make that explicit determination but should also make specific findings and set forth its reasoning." Id. Indeed, the "parties have an obligation to bring this requirement to the district court's attention." Id. "In cases where the district court has provided a written statement of the grounds for certification," the First Circuit normally accords the district court's "discretionary decision 'substantial deference,' and will dismiss for lack of appellate jurisdiction only if the court's certification was 'clearly unreasonable.'" Kersey v. Dennison Mfg. Co., 3 F.3d 482, 486 (1st Cir. 1993).

  **B.**  *Rule 54(b) Has Been Satisfied Here*

This Court's August 26, 2005 decision has fully disposed of all claims against Metro-Boston. Hence, the first-step under Rule 54(b) is satisfied. Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 580 (1st Cir. 1994) (the ruling should dispose "completely either of all claims against a given defendant or of some discrete substantive claim or set of claims against the defendants generally"). This leaves only for consideration the second step, the subjective assessment of whether the desirability of immediate appeal outweighs the undesirability of a piecemeal appeal. Put another way, is it more desirable to delay the appeal

of Fafard's specific-performance claim, which – for prejudice-avoidance reasons – was bifurcated, expedited for trial, and tried to conclusion, when the only reason for delay would be to permit the First Circuit to consider, in one consolidated appeal, whether any mistakes were made in the trial of an as-yet untried tort counterclaim, the resolution of which will not affect the outcome of the specific-performance claim?  The answer is no.  The desirability of an immediate appeal from the complaint far outweighs the undesirability of separate appeals.

Until Fafard's expected appeal is resolved, Metro-Boston – by virtue of the lis pendens memorandum – is prevented from selling or refinancing the real estate, Aff. of Mary Heller Halcomb, Sept. 19, 2005 ("Halcomb Aff.") ¶ 5, despite this Court's determination that Fafard has no right to buy it.  Delay is the enemy of real estate transactions.  When a seller finds a buyer willing to pay a fair market price for real estate, sellers need to be free to go forward with the opportunity before it goes away and they lose the sale.  So long as Fafard has unexhausted appellate rights, Fafard's lis pendens will prevent any sale from occurring, and prevent Metro-Boston from converting sale opportunities into a sale before the opportunity goes away.  See Halcomb Aff. ¶ 7.

Indeed, Metro-Boston has already lost a sales opportunity due to the delay caused by the pendency of this suit.  At the time of trial, Metro-Boston had a waiting buyer.  But between the trial and the present, the buyer withdrew its offer, being unwilling to wait for the case to be resolved.  See Halcomb Aff. ¶ 6.  Metro-Boston therefore needs to be in a position to take advantage of the next sales opportunity when a potential buyer emerges.  Halcomb Aff. ¶ 7.  Continued delay will mean continued loss of other time-sensitive sales opportunities that arise during the period of delay.  As such, "the nature of the issue calls out for immediate resolution [and] time is of the essence."  Quinn v. City of Boston, 325 F.3d 18, 27 (1st Cir. 2003).

**Further, the current rising interest rate environment is compounding the prejudice. Rising interest rates typically have a depressive effect on value as they increase the cost of financing and development. If Metro-Boston must await the outcome of an appeal after a trial of the counterclaim before it can sell the property, this rising interest rate environment can be expected to make it more difficult for Metro-Boston to find a buyer willing to purchase the land at today's value. Halcomb Aff. ¶ 8.**

**The only other way for Metro-Boston to turn the real estate into cash would be to borrow against the property. But the lis pendens makes the property unfinancable and borrowing impossible. As the litigation-induced delay continues, the delay will mean that, when Metro-Boston is finally free to borrow against the property, the cost to borrow will be higher in this rising interest rate environment. Halcomb Aff. ¶ 8. Meanwhile, Metro-Boston will not have access to the equity on the property and will therefore be unable to use such equity to take advantage of business opportunities or necessities that might arise.**

**To eliminate such prejudicial delay, the lis pendens statute mandates the entry of a separate partial judgment once the court concludes that the claim for specific performance should be dismissed.[3] Mindful of the ongoing prejudice a defendant landowner experiences by having to endure the effects of a lis pendens memorandum while an unsuccessful plaintiff pursues an appeal, the legislature inserted a provision in the lis pendens statute to accelerate the taking of an appeal from the dismissal of a claim for specific performance, even though there are other unadjudicated claims in the case. Specifically, G.L. c. 184 § 15(c) (last sentence) provides:**

---

[3] **The lis pendens statute is substantive law for *Erie* purposes, and must be given effect in a diversity case. See Defendant's Reply Memorandum In Support Of Its Special Motion To Dismiss, filed August 2004.**

> **In the event there are un-adjudicated claims remaining after the dismissal of any claim pursuant to which the memorandum of lis pendens was recorded, the court shall order the entry of partial judgment with respect to the claim dismissed pursuant to this section.**

**All of the careful planning that went into this Court's case management orders to bring Fafard's title claim to a speedy trial will have been for naught if the appeal on the complaint must await the resolution of the tort counterclaim. In the absence of a Rule 54(b) certification, the parties will be in no different position than if the Court had simply postponed the trial of Fafard's title claim to the trial of the as-yet untried tort counterclaim. The speedy trial order, therefore, will have ended up not conferring its intended benefit.**

**Nothing in the relationship between the adjudicated complaint and the unadjudicated counterclaim mandates a marriage of the complaint to the counterclaim for appellate purposes. The complaint for specific performance sought an adjudication over whether Fafard had the right to buy the property. That issue now having been decided adversely to Fafard, the trial of the counterclaim will concentrate on Fafard's ulterior motives, Fafard's knowledge or awareness of Metro-Boston's opportunities to sell the property to others and derive economic benefit, Fafard's interference with these opportunities through improper motive or means, Fafard's unfair actions to achieve its objectives, and Metro-Boston's damages. In contrast to the complaint, the counterclaim seeks relief for the damages caused by the steps Fafard took in an attempt to leverage the property, and extract an unbargained-for easement, from Metro-Boston.**

**In seeming contradiction to a position it took earlier in the case, Fafard is opposing the issuance of a Rule 54(b) certificate, supposedly on the ground Fafard does not want to burden the First Circuit with a piecemeal appeal. But Fafard had no problem burdening this Court with piecemeal *trials* when it sought and obtained the separate trial order that has now created**

this dilemma.[4]  Fafard's opposition to the instant motion flies in the face of the reasoning offered by Fafard when it sought a separate trial on the counterclaim.  At that time, Fafard said:

> **Moreover, Metro-Boston's counterclaims are entirely <u>unrelated</u> to the specific performance claim.  The counterclaims are not *defenses* to the enforcement of the P&S Agreement, but entirely *separate* causes of action.  Indeed, the counterclaims each could have been brought in an entirely separate lawsuit, and they exist independently from Fafard's claim.**

**Memorandum In Support Of Motion Of Plaintiff Fafard Real Estate & Development Corp. To Hold Separate Trials, pp. 7-8 (emphasis by Fafard).**

Now, after having lost its claim for specific performance at trial, it is no surprise Fafard wants to delay its own appeal, for delay will make it more difficult for Metro-Boston to sell the property to someone else, thus extending Fafard's unbargained-for de facto period of exclusivity on the land.  And anything that delays Metro-Boston from selling the property to someone else will increase Fafard's leverage to extract an unfair settlement from Metro-Boston.  Having taken the position that Fafard's title claim, and Metro-Boston's tort counterclaim, were "entirely unrelated," "separate," and "independent[]" to warrant trying the title claim separately from the counterclaim, Fafard should not be heard to argue that the complaint and counterclaim are now so dependent and related as to require that an appeal from one await the trial on the other.[5]

---

[4] **Had Fafard not successfully sought a separate trial of the title claim, then either the entire case would have been tried in one trial in February, or the title claim and the liability issues on the counterclaim would have been tried together in a phase I trial in February, presumably to be followed quickly by a phase II trial on damages, if Metro-Boston had prevailed on the counterclaim in the phase I trial.  Metro-Boston had sought such a phasing but Fafard successfully opposed it, arguing instead that the counterclaim in its entirety should be tried independently from, and later than, the title claim.**

[5] **Before the Court ordered a separate trial on the complaint, Metro-Boston argued that the interest in avoiding a duplication of evidence in two trials argued for combining a trial of the complaint with a trial of the liability issues under the counterclaim.  Metro-Boston lost that argument.  However, regardless of whether a trial (continued...)**

Defendant is mindful of <u>Nichols v. Cadle Co.</u>, 101 F.3d 1448 (1st Cir. 1996), where the First Circuit saw no "particular urgency" for the discharge of the lis pendens memorandum to warrant Rule 54(b) relief. <u>Id.</u> 1449 n. 2. In <u>Nichols</u>, plaintiff was complaining about an alleged wrongful mortgage foreclosure and defendant was suing for a deficiency on the promissory note. <u>Nichols</u> is easily distinguishable. First, in <u>Nichols</u>, there was no indication that (a) the defendant was actively seeking to sell the property during the litigation, (b) buyers were unwilling to wait for the litigation to end, or (c) there were any factors (such as increasing interest rates) likely to cause the property to decline in value during the period of the delay. <u>See</u> <u>id.</u> at 1449 n. 2 (the district court "gave no reason to suspect that any particular urgency attended [the] discharge" of the lis pendens). Here, where Metro-Boston is attempting to sell the property, has already lost one buyer, and is facing rising interest rates, the continued presence of the lis pendens memorandum is causing Metro-Boston actual, not theoretical, prejudice. Second, <u>Nichols</u> was decided in 1996, seven years *before* the lis pendens statute was amended to require the entry of a partial final judgment upon the dismissal of a claim for specific performance. St. 2002, c. 496, § 2, approved Jan. 1, 2003, effective April 1, 2003. Third, in <u>Nichols</u>, the claims – both the adjudicated and unadjudicated claims – were interdependent. 101 F.3d at 1449 n. 2 (the adjudicated and unadjudicated claims all "involved the propriety of the foreclosure"). But here, Fafard itself has described the now-adjudicated claims as "entirely unrelated," "separate," and "independent[]" from the tort counterclaim. **Memorandum In Support Of Motion Of Plaintiff Fafard Real Estate & Development Corp. To**

---

of the counterclaim would require re-offering evidence that was offered in the trial of the complaint, these evidence-related considerations spoke only to the issue of *trial* efficiency in the *fact-finding* process, and do not implicate the considerations underlying Rule 54(b), which concern the resolution of *legal* issues at the *appellate* stage.

**Hold Separate Trials, pp. 7-8.**

The district court's reasoning in Philip Morris, Inc. v. Harshbarger, 957 F. Supp. 327, 329 (D. Mass. 1997) is more on point.  There, plaintiffs' complaint sought to invalidate a state statute requiring disclosure of the ingredients in tobacco products.  The complaint had six counts, each asserting a separate theory of invalidity.  After granting defendant summary judgment dismissing the first count, which claimed the state statute was pre-empted by a federal statute, the district court (O'Toole, J.) granted plaintiffs' motion for a Rule 54(b) certificate, authorizing an immediate appeal of the dismissal of the pre-emption count, even though other counts asserting invalidity remained for adjudication.  The court reasoned that the adjudicated claim did not depend on any fact-finding to be made under the remaining claims.  Id. at 329 ("The parties here extricated the [adjudicated] issue from whatever intertwining it may have had with the others and asserted, correctly, that it could be determined entirely without reference to those claims").  Moreover, the court observed that the appeal on the adjudicated claim would not likely require the First Circuit to decide the appellate issues on that claim more than once.  Id.  Finally, the court observed that, if the appeal on the adjudicated claim resulted in a reversal of that claim, that "would end the case," id., making a trial of the unadjudicated claims unnecessary.[6]

The same reasons apply here.  The complaint for specific performance could be, and was, determined without reference to the counterclaim.  Fafard's appeal on the claim for specific performance will not likely require the First Circuit to decide the appellate issues on

---

[6] As a district court decision, Judge O'Toole's Rule 54(b) analysis in Philip Morris is a precedent, but not binding.

that claim more than once.[7] And if the First Circuit reverses and holds that Fafard is entitled to specific performance as a matter of law, such a ruling would preclude the counterclaim.

Finally, authorizing an immediate appeal will help to encourage the ultimate settlement of the remaining counterclaims, thus "maximizing the potential for the most expeditious resolution of the entire case." Mercado v. The Ritz-Carlton San Juan Hotel, Spa & Casino, 410 F.3d 41, 46 (1st Cir. 2005). "While the avoidance of a trial is not a primary reason for [an appeal under Rule 54(b)], it is nevertheless a consideration." Liberty Mutual Ins. Co. v. Greenwich Ins. Co., 331 F. Supp. 2d 8, 14 (D. Mass. 2004) (Collings, J.).

II.     Alternatively, The Court Should Sever The Counterclaim From The Complaint

Should the Court be reluctant to issue a Rule 54(b) certificate, the Court should exercise its discretion to sever the complaint from the counterclaim under Rule 21 (last sentence), and then – because the complaint has been tried to conclusion – enter judgment dismissing it. The rules provide for two types of severances or separations: a Rule 21 severance, which divides a single lawsuit into two or more separate actions leading to two or more separate judgments, and a Rule 42(b) order dividing a single lawsuit into separate trials within the umbrella of the original solitary action. Acevedo-Garcia v. Monroig, 351 F.3d 547, 558-59 (1st Cir. 2003). When a court severs an action under Rule 21, this becomes "a case management determination peculiarly within the discretion of the trial court, and courts of appeals accord broad latitude to district courts in this area." Id. at 558 (internal quotation

---

[7] Although Fafard has not identified the grounds for its expected appeal, presumably Fafard will argue on appeal that, as a matter of law, its appearance at the registry of deeds (without notice to Metro-Boston) saved its rights and placed Metro-Boston in default, regardless of the Court's findings as to Fafard's subjective unwillingness to close the transaction due to the unresolved Sewall Road access issue. Once the First Circuit decides this issue, it will not need to decide it again, regardless of the outcome of the counterclaim.

marks and citations omitted).[8]  Further, the "judgment in a severed action [under Rule 21] is final, enforceable and appealable when it disposes of all parties and issues."  Id. at 559.

This is not a situation where the adjudicated claim and the remaining claims were filed by the same party, or present alternative legal theories for relief from the same harm, or represent common claims by multiple claimants against a common defendant.  Rather, as Fafard stated, "the counterclaims each could have been brought in an entirely separate lawsuit, and they exist independently from Fafard's claim."  Memorandum In Support Of Motion Of Plaintiff Fafard Real Estate & Development Corp. To Hold Separate Trials, p. 8.  A severance order would give the counterclaim the status of "an entirely separate lawsuit," as Fafard has characterized it.  Once the complaint is severed, judgment should enter dismissing it, as it is fully adjudicated.

III. **Whether Under Rule 21 Or Rule 54(b), Judgment Should Enter On The Complaint To Give Issue Preclusion Effect To The Court's August 26 Decision For Purposes Of The Counterclaim**

In addition to the considerations above, a separate judgment should enter on the complaint for the very practical reason that, without it, the Court's August 26 decision – holding that Fafard could not enforce the purchase and sale agreement – will not have issue preclusive effect in the trial of the counterclaim.  Acevedo-Garcia v. Monroig, 351 F.3d 547, 560 (1st Cir. 2003) ("since separate trials do not individually produce final judgments, any attempt to apply collateral estoppel to the remaining three trials would be invalid under a Rule 42(b) regime").  Because the counterclaim is predicated on Fafard having lost its rights under

---

[8] Although the authority to sever appears in Rule 21, captioned "misjoinder of parties," severance is not limited to curing a misjoinder of parties.  As the rule states, "any" claim may be severed.  This is so, regardless of whether there has been a misjoinder of parties.  Acevedo-Garcia v. Monroig, 351 F.3d 547, 560 n.5 (1st Cir. 2003).

the purchase and sale agreement, the failure to enter a separate judgment of dismissal on the complaint could give Fafard an opening to relitigate the enforceability of the purchase and sale agreement in the trial of the counterclaim.  Not only could such relitigation produce inconsistent results, but it would make waste of the previous trial on the complaint.[9]

### Conclusion

For the foregoing reasons, the Court should determine that there is no just reason for delay and expressly direct the clerk to enter a partial final judgment for defendant dismissing the complaint with prejudice.  Alternatively, the Court should sever the complaint from the counterclaim, and enter final judgment for defendant dismissing plaintiff's complaint.

METRO-BOSTON BROADCASTING, INC.

By its attorneys,

/s/ Kenneth R. Berman
Kenneth R. Berman (BBO #040320)
Erik P. Bartenhagen (BBO #640003)
Nutter McClennen & Fish LLP
World Trade Center West
155 Seaport Boulevard
Boston, Massachusetts 02210
(617) 439-2000

September 20, 2005

### Certificate Of Service

I certify that I served this document today on opposing counsel by hand.

/s/ Kenneth R. Berman
Kenneth R. Berman

September 20, 2005

---

[9] The logical way to address this problem is to enter judgment on the complaint, either through a Rule 21 severance or a Rule 54(b) certification, and then stay the trial of the counterclaim until the First Circuit disposes of Fafard's appeal on the complaint.  Once the First Circuit decides Fafard's appeal, the Court will be able to conduct a trial on the counterclaim with full knowledge of what preclusive effect the judgment on the complaint will have on the counterclaim.  Further, a stay will enable Metro-Boston to include its appellate attorneys fees in its damage calculation on the counterclaim.

- 13 -

1464243.2