UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| FAFARD REAL ESTATE & DEVELOPMENT CORP.<br><br>Plaintiff,<br><br>vs.<br><br>METRO-BOSTON BROADCASTING, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) NO. 04-11531-RGS<br>)<br>)<br>)<br>)<br>)<br>) |

**FAFARD REAL ESTATE & DEVELOPMENT CORP.'S
MEMORANDUM OF LAW IN SUPPORT OF
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Plaintiff Fafard Real Estate & Development Corp. ("Fafard") respectfully submits this Memorandum Of Law In Support Of Motion For Summary Judgment respecting all counts of defendant Metro-Boston Broadcasting, Inc.'s Counterclaim against Fafard. Metro-Boston Broadcasting, Inc. ("Metro-Boston") asserts three counterclaims against Fafard: abuse of process, intentional interference with advantageous business relations, and the ubiquitous claim under Massachusetts G.L. c. 93A. Metro-Boston alleges that these three causes of action arise from Fafard's commencement of a breach of contract lawsuit and action for specific performance that Fafard initiated following Metro-Boston's failure to convey real property to Fafard or otherwise satisfy obligations under a January 31, 2001 Purchase and Sale Agreement (the "P&S Agreement"). Summary judgment is appropriate dismissing these claims because Metro-Boston is unable to prove essential elements of each of them.

## BACKGROUND

The relevant and material facts are set forth in Fafard's Local Rule 56.1 Statement of Material Facts In Support Of Fafard's Motion For Summary Judgment ("Statement"), submitted herewith, and will not be repeated herein. Citations are made to the Statement as necessary.

## ARGUMENT

The only way that Metro-Boston can succeed on its counterclaims against Fafard is to demonstrate that Fafard, with knowledge of another actual or prospective buyer for the Ashland Property, either improperly brought suit against Metro-Boston or did so for an ulterior purpose or to obtain a collateral advantage. As explained herein, Metro-Boston cannot so demonstrate.

### I.    Standard On Summary Judgment

With respect to a motion for summary judgment, the initial burden is on the moving party to show that "there is an absence of evidence to support the non-moving party's case." FDIC v. Municipality of Ponce, 904 F.2d 740, 742 (1st Cir.1990)( quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If the movant satisfies that burden, the burden shifts to the non-moving party to establish the existence of a genuine material issue. Id. In deciding whether a factual dispute is genuine, this Court must determine whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). If a party resists summary judgment by pointing to a factual dispute on which it bears the burden at trial, that party must point to evidence affirmatively tending to prove the fact in its favor. Celotex Corp. v. Catrett, 477 U.S.

440597

2

317, 322-23 (1986). Indeed, "'[e]ven in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.'" Lehman v. Prudential Ins. Co. of America, 74 F.3d 323, 327 (1st Cir. 1996)(quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).

## II. Metro-Boston's Claim For Abuse Of Process Fails Because Fafard Had No Ulterior Purpose.

Metro-Boston's counterclaim against Fafard for abuse of process must fail because Metro Boston can demonstrate no ulterior purpose on the part of Fafard. In order to advance its claim for abuse of process, Metro-Boston must demonstrate that process was used "as a threat or a club to coerce or extort some collateral advantage not properly involved in the proceeding." Broadway Management Serv., Ltd. v. Cullinet Software, Inc., 652 F. Supp. 1501, 1503 (D. Mass. 1987); see also Quaranto v. Silverman, 345 Mass. 423, 426 (1963) (the tort of abuse of process applies when the process is intended "to accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed"). Metro-Boston has not so demonstrated.

Fafard had no ulterior motive and did not seek to obtain any collateral advantage as a result of filing suit against Metro-Boston. See Affidavit of Richard E. Terrill In Support Of Fafard Real Estate & Development Corp.'s Motion For Summary Judgment ("Terrill Affidavit"), ¶3. Rather, Fafard simply sought to obtain exactly what the lawsuit prayed for—specific performance of the P&S Agreement. See id. Indeed, in its suit, Fafard demanded only what was agreed to in writing by the parties in the P&S

440597                                3

Agreement: conveyance of the Ashland Property without Sewall Street access. See id.; see also Statement, ¶12 and Exhibit A. Indeed, in its own Counterclaim, Metro-Boston does not identify any ulterior purpose or collateral advantage sought or gained by Fafard as a result of filing suit. See Statement, ¶19. That Fafard intended to accomplish exactly what its lawsuit demanded—specific performance of the P&S Agreement— is not an ulterior purpose for which the Complaint was not designed. Nor is does it provide a collateral advantage.

Metro-Boston will likely assert that Fafard brought suit in order to obtain from Metro-Boston something more than the relief claimed in the Complaint, such as additional land or access to property. But Metro-Boston will not be able to present any evidence to support such a claim. All Fafard claimed in the complaint was the right to acquire the land subject to the P&S for the agreed-upon price, and nothing more. After filing the Complaint Fafard never asked for more than that or sought to use the Complaint as leverage to obtain something more. Had Metro-Boston been willing to honor the P&S Agreement the litigation would have ended and could not have served as leverage to obtain anything more. Moreover, the evidence at trial was uncontroverted that Fafard never sought to coerce or compel access to Sewell Street. Fafard merely offered to buy it. And Metro-Boston never said "no" until the day the last extension agreement expired. At the same time Metro-Boston stated that it would not grant any further extensions and it deemed the P&S Agreement terminated, without giving Fafard the opportunity to close without access to Sewell Street. Thus, at the time Fafard filed its specific performance suit circumstances had changed: negotiations to acquire access to Sewell Street were terminated by Metro-Boston's letter of May 21, 2004, stating that such access could not

440597                                    4

be granted. Fafard was therefore compelled to choose whether it wanted to acquire the property without Sewell Street access – a choice it made and manifested by suing to accomplish that very goal.

Therefore, even assuming, *arguendo*, that prior to May 21, 2004, Fafard had held up the closing to negotiate for access via Sewall Street (see, e.g., Findings Of Fact and Rulings Of Law After Trial Without Jury, at 12; see also Memorandum And Order On Defendant Fafard Real Estate & Development Corp.'s Motion To Reconsider And Amend Findings, at 1), that does not and cannot mean that, by bringing suit against Metro-Boston, Fafard intended to obtain anything other than exactly what it prayed for: specific performance of the P&S Agreement as written. Whatever intent Fafard had prior to receipt of Metro-Boston's letter stating that Sewell Street access could not be granted cannot be transferred as Fafard's intent in suing for specific performance of the contract to acquire the property without access to Sewell Street. The law is clear that where a claimant alleges only that the plaintiff's lawsuit demands exactly that to which it would be entitled if successful, a claim of abuse of process cannot be maintained. See, e.g., Broadway Management, 652 F.Supp. at 1503 (dismissing abuse of process counterclaim where defendant alleged only that plaintiff's lawsuit demanded damages for wrongfully terminated contract and holding that damages are "naturally tied up with interests properly part of" the lawsuit and are not an outside or collateral advantage that would give rise to a claim for abuse of process); see also Jones v. Brockton Public Markets, Inc., 369 Mass. 387 (1975)(dismissing abuse of process claim where "defendant used the relevant process for the exact purpose for which it was designed").

Metro-Boston's vague allegation that Fafard commenced "groundless or unmeritorious litigation" is also insufficient to make out a claim of abuse of process. While Fafard continues to believe that its suit for breach of contract and specific performance was clearly meritorious, and that it was ready, able and willing to close as of May 21, 2004, Massachusetts' law is well settled that even commencement of an action that the plaintiff knew or reasonably should have known to be groundless does not constitute grounds for an abuse of process claim. See Beecy v. Pucciarelli, 387 Mass. 589, 596 (1982). There must be some allegation of ulterior motive beyond mere commencement of an allegedly baseless lawsuit. Id. Metro-Boston makes no such allegation (see Statement, ¶19 and Exhibit B at Counterclaim[1]) nor can it point to any admissible evidence to support such an allegation so as to defeat summary judgment.

Finally, Metro-Boston's allegation that Fafard's lawsuit was brought "for the unlawful purpose of clouding title," is also insufficient to maintain its claim against Fafard for abuse of process. A lawsuit brought to enforce a P&S, as here, does not, in and of itself, cloud title. A memorandum of lis pendens is likewise not a cloud on title.[2] Debral Realty, Inc. v. DiChiara, 383 Mass. 559, 560 (1981) (lis pendens serves a notice function); see also In re. Kodo Prop. Inc., 63 B.R. 588, 589 (Bankr. E.D.N.Y. 1986)(a lis

---

[1] Likewise, the fact that the Court declined to grant Fafard the relief sought—specific performance of the P&S Agreement—does not mean that the lawsuit was brought for some ulterior purpose. Nor can it possibly mean that Fafard gained a collateral advantage.

[2] A memorandum of lis pendens does not constitute "process." Massachusetts law is well settled. An abuse of process claim is limited to three types of process: writs of attachment, bringing of criminal charges, and the commencement of a civil action. The recording of a memorandum of lis pendens, on its own, does not constitute process under Massachusetts law. Accord, Jones v. Brockton Public Markets, Inc., 369 Mass. 387, 389-90 (1975)(declining to broaden definition of process to include injunctions); see also Mustapha v. Town of Methuen, 1998 WL 77882 (Mass. Super. Feb. 20, 1998)(noting that Massachusetts recognizes only three kinds of "process" and declining to hold that letter from town building commissioner constituted process.); accord Powell v. Stevens, 2004 WL 1047451 (Mass. Super. May 3, 2004)(lis pendens is designed primarily to protect unidentified third parties by notice to prospective purchasers of property already on public record, i.e., the fact of suit involving the property)(citing In re Thomas, Inc., 37 B.R. 387 (D.Mass.1984).

pendens "is a notice of claim . . . but does not itself create an encumbrance upon the property"). Even were the endorsement of Fafard's Memorandum of Lis Pendens a cloud on title, which Fafard maintains it is not, Metro-Boston's allegation of abuse of process still must fail because Fafard was using the lis pendens for the exact purpose for which it was intended—to secure the property so that specific performance of the P&S Agreement would have meaning—and not for an ulterior purpose or to gain collateral advantage. In short, none of the theories advanced by Metro-Boston support its claim of abuse of process. See Broadway Management, 652 F. Supp. at 1503.

### III. Metro-Boston's Claim For Intentional Interference With Advantageous Business Relations Must Fail.

To press its claim against Fafard for interference with advantageous business relations, Metro Boston must demonstrate that (1) it had a business relationship or contemplated contract of economic benefit; (2) Fafard knew of such relationship or contemplated contract of economic benefit; (3) Fafard intentionally and improperly interfered with the relationship or contemplated relationship; and (4) Metro-Boston suffered damages as a result. See James L. Miniter Ins. Agency, Inc. v. Ohio Indemnity Co., 112 F.3d 1240, 1250 (1st Cir. 1997) (setting forth standard); see also Speen v. Crown Clothing Corp., 102 F.3d 625 (1st Cir. 1997)(elements of tort of interference with advantageous business relations include a business relationship or contemplated contract of economic benefit and knowledge by the other party of such a relationship); Doyle v. Hasbro, Inc., 103 F.3d 186 (1st Cir. 1996)(same); United Truck Leasing Corp. v. Geltman, 406 Mass. 811 (1990) (same). Metro Boston cannot so demonstrate.

As an initial matter, Metro-Boston's Counterclaim does not allege that Metro-Boston had an actual business relationship or contemplated contract of economic benefit.

See Statement, ¶20.[3] Indeed, no such relationship is identified. See id. Metro Boston does not allege that it was communicating with any potential or prospective buyer at the time the Fafard's suit for breach of contract and specific performance of the P&S Agreement was filed. See id. Rather, Metro Boston only vaguely alludes to a possible future relationship with "others" or "other potential buyers of the property." See id. That there may be other potential buyers interested in the Ashland Property at some future date is not sufficient to maintain Metro-Boston's claim for intentional interference with advantageous business relations. See Laser Labs, Inc. v. ETL Testing Laboratories, Inc., 29 F. Supp.2d 21, 23-24 (D. Mass. 1998)(holding that existence of potential market for company's product too inchoate to state claim for intentional interference with advantageous business relations).

Moreover, Metro-Boston does not allege that Fafard knew of its vaguely alleged potential future advantageous relationship with an unknown entity. See Statement, ¶21. Indeed, at the time that it filed suit against Metro-Boston, Fafard had no knowledge of any potential, prospective or actual relationship between Metro-Boston and any other buyer. See Terrill Affidavit, ¶4. Metro-Boston's letter dated May 21, 2004 purporting to terminate the P&S Agreement did not reference or mention any other actual or prospective buyer of the property. See Statement, ¶11 and Exhibit E. Even Metro-Boston's own counterclaim, filed more than two months after Metro-Boston's purported termination of the P&S Agreement, makes no mention of any actual or prospective buyer of the property, evidencing Metro-Boston's continued desire to keep such relationships

---

[3] Metro-Boston need not prove that it had a binding contract. A probable future business relationship anticipating a reasonable expectancy of financial benefit will suffice. Powers v. Leno, 24 Mass.App.Ct. 381 (1987) (citing Owen v. Williams, 322, Mass. 356 (1948)). Metro-Boston has not even demonstrated this much.

440597

secret. See id. at ¶21. A claim for the tort of intentional interference with advantageous business relations cannot stand where the alleged interferer is not alleged to have knowledge or awareness of the purportedly advantageous business relationship. See, e.g., Yaikas v. Savoy, 26 Mass.App.Ct. 310, 315 (1988)(reversing finding of intentional interference with advantageous business relations where no evidence that defendant had knowledge of relations or intended to interfere with relations).

Third, Metro-Boston cannot establish that Fafard intentionally and improperly interfered with any actual or contemplated relationship. Logically, absent knowledge of an actual business relationship or contemplated contract of economic benefit held by Metro-Boston, Fafard cannot be found to have intentionally interfered with anything. Moreover, in deciding what conduct is improper, this Court follows the standard expressed in numerous out-of-state cases:

> [i]n summary, [a claim of tort liability for intentional interference with contractual or other economic relations] is made out when interference resulting in injury to another is wrongful by some measure beyond the fact of interference itself. Defendant's liability may arise from improper motives or from the use of improper means....

See United Truck Leasing v. Geltman, 26 Mass.App.Ct. 847, 852 n. 2 (1989) (citing Top Serv. Body Shop, Inc. v. Allstate Ins. Co., 283 Or. 201, 209-210, 582 P.2d 1365 (1978)). This means that Metro-Boston "must not only prove that [Fafard] intentionally interfered with his business relationship [or contemplated relationship] but also that [Fafard] had a duty of non-interference; i.e., that [Fafard] interfered for an improper purpose rather than for a legitimate one, or that [Fafard] used improper means which resulted in injury to [Metro-Boston.]" Straube v. Larson, 287 Or. 357, 361, 600 P.2d 371 (1979). Metro-Boston can do neither. Fafard did not know of Metro-Boston's prospective advantageous

440597

9

relationship and therefore could not have intentionally interfered with it. Moreover, Fafard brought suit for a single and entirely legitimate purpose—to enforce the terms of the P&S Agreement as written.

Lastly, Metro-Boston cannot demonstrate that it suffered damages as a result of the lawsuit filed by Fafard. Metro-Boston still owns the Ashland Property, which has enjoyed an exponential increase in value since Metro-Boston's termination of the P&S Agreement. Metro-Boston has suffered no damage as a result of its alleged inability to sell the property. If anything, the fact that Metro-Boston still holds the property has provided it with a financial advantage.

For the foregoing reasons, Metro-Boston's counterclaim for interference with advantageous business relations must fail.

### IV. Metro-Boston Does Not Allege A Violation Of Massachusetts G.L. c. 93A.

Finally, Metro-Boston claims that Fafard engaged in unfair and deceptive trade practices in violation of Massachusetts G.L. c. 93A. This counterclaim is based solely on the allegations that Fafard has engaged in abuse of process and intentional interference with advantageous business relations. There is no allegation in the Counterclaim that Fafard has engaged in any other unfair or deceptive act. See generally Statement and Exhibit B at Counterclaim. As Metro-Boston's claims for abuse of process and intentional interference with advantageous business relations must be dismissed, so must its claim for violation of Massachusetts G.L. c. 93A. See, e.g., Duval v. Hallisey, 2004 WL 1043943 (Mass. Super. March 16, 2004)(dismissing G.L. c. 93A claim because plaintiff failed to adequately allege elements of underlying claim for abuse of process); Home Depot U.S.A., Inc. v. Rosencranz, 1994 WL 287585 (Mass. Super

1994)(dismissing G.L. c. 93A claim where alleged misconduct was basely solely on underlying libel claim for which elements were not stated).

## CONCLUSION

Metro-Boston's counterclaims should be seen for what they are: a strategic and lawyerly attempt to create leverage for a defendant in a simple breach of contract action. Having obtained a defense judgment, the counterclaims serve no further strategic purpose other than as leverage to compel Fafard to waive its appellate rights. Under the circumstances Metro-Boston should be more circumspect in pressing its claim for abuse of process. For the foregoing reasons, Fafard respectfully requests that this Court enter summary judgment in its favor as to Metro-Boston's Counterclaims against it for abuse of process, intentional interference with advantageous business relations and breach of Massachusetts G.L. c. 93A.

Respectfully submitted,

FAFARD REAL ESTATE &
DEVELOPMENT CORP.

By its attorneys,

Jeffrey J. Upton (BBO#552221)
Halye A. Sugarman (BBO#646773)

HANIFY & KING
Professional Corporation
One Beacon Street
Boston, MA 02108-3107
(617) 423-0400

DATED: November ___, 2005

440597

11

CERTIFICATE OF SERVICE

I, Jeffrey J. Upton, certify that on November 22, 2005, I served a copy of the foregoing Fafard Real Estate & Development Corp.'s Memorandum Of Law In Support Of Motion For Summary Judgment, by hand on:

Kenneth Berman, Esq.
Nutter McClennan & Fish, LLP
World Trade Center West
155 Seaport Boulevard
Boston, MA 02110

_____
Jeffrey J. Upton

RULE 7.1 CERTIFICATE

I, Jeffrey J. Upton, certify that I have in good faith conferred with counsel for the Defendant in an attempt to resolve or narrow the issues presented in this Motion.

_____
Jeffrey J. Upton

440597

12