UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FAFARD REAL ESTATE & DEVELOPMENT CORP.,<br><br>Plaintiff,<br><br>vs.<br><br>METRO-BOSTON BROADCASTING, INC.,<br><br>Defendant. | NO. 04-11531-RGS |

**FAFARD REAL ESTATE & DEVELOPMENT CORP.'S
LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Plaintiff Fafard Real Estate & Development Corp. ('Fafard") hereby submits the following statement of material facts pursuant to Local Rule 56.1 as to which Fafard contends there is no genuine issue.

1. On or about January 31, 2001, Fafard and Metro-Boston Broadcasting, Inc. ("Metro-Boston") executed a Purchase and Sale Agreement (the "P&S Agreement") for the sale of real property in Ashland, Massachusetts. The P&S Agreement called for Metro-Boston to convey to Fafard Lots 12, 6B and a ten-acre portion of Lot 11 (the "Ashland Property"). See Fafard's Verified Complaint ("Complaint"), ¶8 and Exhibit 1 thereto, a true and complete copy of which is attached hereto as Exhibit A; see also Answer and Counterclaim, at Answer ¶8, a true and complete copy of which is attached hereto as Exhibit B.

2. The P&S Agreement called for the conveyance of less than all of Lot 11, which is registered land. Accordingly, the P&S Agreement required Metro-Boston to, among other things, prepare a new subdivision plan. See Exhibit A hereto, at ¶12.

3. The P&S Agreement also required Metro-Boston to take any steps necessary to cure certain easements, restrictions, and encumbrances of record that would interfere with Fafard's proposed use. See Exhibit A hereto, at ¶11; see also Exhibit B hereto, at Answer ¶11.

4. The P&S Agreement set a time for Fafard to obtain any necessary permits and called for Closing by February 28, 2002. See Exhibit A, at ¶15; see also Exhibit B hereto, at Answer ¶15

5. Metro-Boston failed to provide Fafard with a new subdivision plan as required by the P&S Agreement. See Exhibit A, ¶16; see also Exhibit B hereto, at Answer ¶16. As a result, the parties were unable to close the transaction on February 28, 2002. See Exhibit A hereto, at ¶¶16-18.

6. Fafard and Metro-Boston agreed to numerous extensions of the closing date, ultimately agreeing to close on May 31, 2002. Id. at ¶19; see Exhibit B hereto, at Answer ¶19.

7. Despite the extensions, Metro-Boston again failed to provide Fafard with a new subdivision plan. See Exhibit A hereto, at ¶20; see also Exhibit B hereto, at Answer ¶20. The parties again extended the closing date numerous times, ultimately to May 21, 2004. See Exhibit A hereto, at ¶21; see also Exhibit B hereto, at Answer ¶21.

8. In addition to failing to provide Fafard with a new subdivision plan, Metro-Boston also failed to take the necessary steps to clear title, and cure easements,

restrictions and encumbrances, as required by the P&S Agreement and despite repeated requests by Fafard that it do so. See Exhibit A hereto, at ¶¶22-23.

9. On November 11, 2003, the parties conducted a telephone conference call to discuss outstanding issues. During the call, Fafard told Metro-Boston that Fafard waived its permitting condition and specifically told Metro-Boston that Fafard was ready to close without Sewell Street. See Memorandum Of Law In Support Of Motion To Reconsider And Amend Findings, at p. 2, a copy of which is attached hereto as Exhibit C. Fafard waived its permit contingency as a result of agreements reached during this telephone conference, and waiving the permit contingency was the practical result of Fafard agreeing not to further delay the closing until the Sewall Street access issue was resolved. During the November 11, 2003 conference call, Fafard also agreed that its deposit would be nonrefundable and that it would assume the tax liability for the premises. See Fafard's Proposed Findings, a copy of which is attached hereto as Exhibit D, at ¶19.

10. The P&S Agreement extensions executed by the parties after November 11, 2003 confirmed Fafard's agreement that its deposit was nonrefundable: "[i]n the event the transaction contemplated by the Agreement does not occur due to no fault of the Seller, the deposit shall be delivered to the Seller and the transaction shall terminate." See Exhibit D, at ¶ 20.

11. On May 21, 2004, the closing date set for the Ashland Property in the last extension agreed to by the parties, Fafard went to the Registry of Deeds with a check for the purchase price. Metro-Boston did not appear. Instead, Metro-Boston sent a letter to Fafard purporting to terminate its contractual obligation to convey the Ashland Property

to Fafard. See Exhibit A hereto, at ¶25. The May 21, 2004 letter, a copy of which is attached hereto as Exhibit E, did not identify any actual or prospective purchaser of the Ashland Property.

12. Fafard commenced an action in the Superior Court of Middlesex County on June 2, 2004, alleging breach of contract and seeking specific performance under the P&S Agreement. See Exhibit A hereto. Fafard also moved the Court to endorse a memorandum of lis pendens, because interests in real property were and are at issue.

13. On June 25, 2004, Metro-Boston moved to dismiss the Complaint under Massachusetts G.L. c. 184, §15. Fafard opposed the motion.

14. Shortly thereafter, on July 8, 2004, Metro-Boston removed the case to this Court.

15. One week later, Metro-Boston again filed a special motion to dismiss under Massachusetts G.L. c. 184, §15. The Motion was denied by this Court (Stearns, J.) on August 10, 2004. A copy of the Order On Defendant's Special Motion To Dismiss is attached hereto as Exhibit F. The Court found that Fafard's action was one that affected right and title to real property. See id. Shortly thereafter, on August 24, 2004, the Court endorsed Fafard's memorandum of lis pendens.

16. On August 23, 2004, Metro-Boston served its Answer and Counterclaim. See Exhibit B, hereto.

17. In the Counterclaim, Metro-Boston admits that Fafard and Metro-Boston contracted for the purchase and sale of the Ashland Property and that the parties agreed to extensions of the closing date until May 21, 2004. See Exhibit B hereto, Counterclaim, at ¶6.

18.  In its Counterclaim, Metro-Boston maintains that Fafard insisted on access to the Ashland Property via a different point of entry and refused to close without such access. See Exhibit B hereto, at Counterclaim ¶¶7-8. Metro-Boston further alleges that Fafard's suit to enforce the P&S Agreement is "groundless" and brought with 'malice for the improper and unlawful purpose of clouding [Metro-Boston's] title, interfering with [Metro Boston's] ability to convey the property to others, and thereby gain leverage over [Metro-Boston] to negotiate for the acquisition of [Metro-Boston's] property. Id. at Counterclaim ¶11. Metro Boston claims these actions constitute an abuse of process, interference with advantageous business relations and a violation of Massachusetts G.L. c. 93A. See id. at Counterclaim ¶12.

19.  In its Counterclaim, Metro-Boston does not identify any "ulterior purpose" or collateral advantage gained by Fafard as a result of Fafard's suit against Metro-Boston for breach of contract and for specific performance of the P&S Agreement. See generally Exhibit B hereto, at Counterclaim.

20.  In its Counterclaim, Metro-Boston does not allege that it had a relationship with any other potential, prospective or actual buyer for the Ashland Property. See generally Exhibit B hereto, at Counterclaim. Indeed, no such relationship is identified. Rather, Metro-Boston only vaguely alludes to "others," id. at Counterclaim ¶11, and "other potential buyers of the property." Id. at Counterclaim ¶12.

21. In its Counterclaim, Metro-Boston does not allege that Fafard knew of any relationship between Metro Boston and any potential, prospective or actual buyer for the Ashland property. See Exhibit B hereto, at Counterclaim.

Respectfully submitted,

FAFARD REAL ESTATE &
DEVELOPMENT CORP.

By its attorneys,

_____
Jeffrey J. Upton (BBO#552221)
Halye A. Sugarman (BBO#646773)

HANIFY & KING
Professional Corporation
One Beacon Street
Boston, MA 02108-3107
(617) 423-0400

DATED: November 22, 2005

## CERTIFICATE OF SERVICE

I, Jeffrey J. Upton, certify that on November 22, 2005, I served a copy of the foregoing Fafard Real Estate and Development Corp.'s Motion For Summary Judgment, by hand on:

Kenneth Berman, Esq.
Nutter McClennan & Fish, LLP
World Trade Center West
155 Seaport Boulevard
Boston, MA 02110

_____
Jeffrey J. Upton

440597