UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FAFARD REAL ESTATE & DEVELOPMENT CORP., )<br><br>Plaintiff/Defendant-in Counterclaim )<br><br>vs. )<br><br>METRO-BOSTON BROADCASTING, INC., )<br><br>Defendant/Plaintiff-in-Counterclaim ) | Civil Action No. 04-11531 RGS |

METRO-BOSTON'S OPPOSITION
TO FAFARD'S MOTION TO STRIKE

Introduction

Fafard's motion to strike – seeking to strike a letter in which Fafard demanded $1.2 million from defendant in addition to a conveyance of the residential real estate that Fafard was supposed to *buy* from defendant – misanalyzes both Fed. R. Ev. Rule 408 and its exceptions. Fafard acknowledges that Rule 408 draws a line – some settlement communications are admissible and some are not – but Fafard gives no reasoned explanation for why the challenged letter falls on the inadmissible side of the line, other than to assert, wrongly, that evidence of a settlement offer is inadmissible to prove an abuse of process.

Fafard compounds this error by then improperly leaping to an argument concerning whether the challenged letter actually proves the point for which Tower Sites has offered it. Such questions of interpretation and weight of the evidence are ultimately for the jury to decide. They have nothing to do with the *admissibility* of the letter under Rule 408 and therefore do not support Fafard's attempt to strike it.

<u>Analysis</u>

I.   <u>Rule 408 Does Not Exclude The Demand Letter From Evidence, Since It Is Admissible For The Purpose Of Proving Improper Motive In Fafard's Use Of Process</u>

Federal Rule of Evidence 408 governs the admissibility of evidence of compromise offers.  While Rule 408 prohibits the introduction of evidence of attempts to compromise a claim for the purpose of proving "liability for or invalidity of the claim or its amount," the Rule also states that it "does not require exclusion when the evidence is offered *for another purpose*, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution."  <u>Id.</u> (emphasis added).  See, e.g., <u>McInnis v. A.M.F., Inc.</u>, 765 F.2d 240, 248 (1st Cir. 1985) ("Although Rule 408 bars the admission of evidence of settlement to prove liability or the validity of a claim, it expressly allows such evidence offered for other purposes."); <u>Cottam v. CVS Pharmacy</u>, 436 Mass. 316, 327-28 (2002) ("Although evidence of a prior settlement is not admissible to prove liability or the amount of a claim, evidence of a settlement is admissible when offered for another purpose.") (citation omitted); <u>Carr v. Health Ins. Plan of Greater New York, Inc.</u>, 2001 U.S. Dist. LEXIS 6766 *13 (S.D.N.Y. May 24, 2001).  Rule 408 lists illustrative purposes for which such statements are admissible (e.g. undue delay, bias, proving an effort to obstruct a prosecution), but "the list is merely suggestive, and is not intended to be exclusive."  <u>RLS Assoc., LLC v. United Bank of Kuwait, PLC</u>, 2005 U.S. Dist. LEXIS 3815 *6 (S.D.N.Y. 2005).

When Rule 408 speaks of excluding evidence offered to prove "liability for or invalidity of the claim or its amount," it is referring to the claim that is the subject of the

settlement discussion.[1]  See 23 Wright & Graham, FEDERAL PRACTICE & PROCEDURE: EVIDENCE § 5314, at 282 (1980) ("Rule 408 is inapplicable when the claim is based upon some wrong that was committed in the course of settlement discussions" because the Rule "only bars the use of compromise evidence to prove the validity or invalidity of the claim that was the subject of the compromise, not some other claim."); Carney v. The American Univ., 151 F.3d 1090, 1095 (D.C. Cir. 1998) (correspondence in settlement negotiations can be used to establish an independent violation unrelated to the underlying claim which was the subject of the correspondence).[2]  The reason is obvious.  Parties need to be free to make offers to settle claims they are prosecuting or defending without fear that, in doing so, their offers will be construed as acknowledging vulnerability as to that claim or as to the amount they might be obligated to pay or entitled to receive.  When these concerns are not at issue, the reason for the rule does not apply, and the exception to the rule kicks in.

      In this case, the challenged letter fits within the exception to Rule 408 for at least three reasons.  First, the claim under discussion in the letter was not Tower Sites's abuse of process claim but Fafard's claim for specific performance.  The letter is not being offered as part of Tower Sites's defense to Fafard's specific performance claim, which has already been adjudicated.  Rather, it is being offered in connection with Tower Sites's claim against Fafard for abuse of process.  Nothing in the letter can be construed as an admission by Fafard as to the strength of Tower Site's claim, the weakness of Fafard's defense to that claim, or the amount Fafard believed it might be obligated to pay.

---

[1] This is made clear by the antecedent text of Rule 408 itself, which is directed to offers "to compromise a claim which was disputed as to either validity or amount."

[2] The three cases cited by Fafard simply make reference to the uncontroversial proposition that settlement discussions are inadmissible to prove liability for *the claim that is the subject of those discussions*.  They do not involve the issue here, where the evidence is being introduced on a different claim.

**Second**, even as to the claim for specific performance, the letter cannot be construed as evidencing weakness in Fafard's position as to liability or damages. To the contrary, the letter boasts that Fafard will prevail, stating that Fafard has "proved [its] case and that the Court will order conveyance of the property subject to the Purchase & Sale Agreement."

**Third**, Tower Sites is offering the letter to prove an independent point – that Fafard used its claim for specific performance to achieve an ulterior purpose and that Fafard is wrong when it says that it never tried to use this lawsuit for an improper motive to get more than what it was entitled to under the purchase and sales agreement.

On similar facts, the court in ESPN, Inc. v. Office Of Comm'r Of Baseball, 76 F. Supp. 2d 383 (S.D.N.Y. 1999), overruled a Rule 408 objection to a settlement communication that reflected an extortionate purpose. In that case, ESPN had entered into a contract with the baseball commissioner to televise a set number of baseball games, subject to a provision permitting ESPN to preempt ten games a year with the commissioner's approval, "which may not be reasonably withheld." Id. at 386. After the commissioner rejected several preemption requests, ESPN sued, claiming the commissioner unreasonably withheld approval "to extract more favorable contract terms from ESPN … [and] a wholesale renegotiation of the contract." Id. at 411. The commissioner objected Rule 408 to several letters to ESPN proposing changes to the parties' contract, arguing the letters were part of settlement negotiations.

The court disagreed, noting that introduction of the letters would not undermine any of the policies Rule 408 was meant to advance. The court observed that there was "absolutely no danger that a jury will mistake Baseball's demands to ESPN as an admission of liability:"

> Baseball's requests for wholesale changes to the parties' agreement on terms substantially more favorable to Baseball do not in any way imply weakness or concession on Baseball's part. To the contrary, the language of Baseball's

>letters seeking to resolve the NFL/preemption dispute reflect Baseball's
>conviction that ESPN and not Baseball is liable for breach of contract.

Id. Noting ESPN's need for the disputed materials and the unlikelihood that introduction of the evidence would frustrate Rule 408's underlying purpose, the court held the evidence "admissible for the 'other purpose' of demonstrating Baseball's alleged improper motive." Id. at 412-13.[3]

Although Fafard's counsel's letter was dressed up as a settlement offer, it is admissible to prove a violation independent from the now-adjudicated claim that was the subject of the letter, e.g. to prove Fafard's improper motive in suing to enforce the purchase and sale agreement. See 23 Wright & Graham, FEDERAL PRACTICE & PROCEDURE: EVIDENCE § 5314, at 282 (1980) ("Rule 408 is inapplicable when the claim is based upon some wrong that was committed in the course of settlement discussions"); Bradshaw v. State Farm Auto Ins., 758 P.2d 1313,1322 (Ariz. 1988) (insurer's statements in settlement negotiations admissible to show that it filed action it knew to be meritless as method of strong-arming plaintiff into settlement). See also In re Worldcom, Inc., 311 B.R. 151, 168 n.12 (S.D.N.Y. 2004) (settlement statements "admissible for the 'other purpose' of highlighting … improper motive" in filing a motion to disqualify "in connection with a litigation strategy that served [the

---

[3] The court in ESPN questioned whether the challenged letters should properly be classified as settlement documents, given that they may have simply been a continuation of the commissioner's improper conduct. "If ESPN can prove that Baseball withheld its approval out of a desire to extract more favorable contract terms from ESPN, then Baseball's subsequent requests for such terms cannot be considered true attempts at conciliation. Stated somewhat differently, if Baseball created the preemption dispute by improperly withholding its approval in an effort to force a wholesale renegotiation of the contract, then its subsequent efforts to renegotiate are merely a continuation of that improper act and not good faith attempts to resolve a dispute. To rule that Baseball's proposed changes are settlement materials would, in effect, credit Baseball's theory that its withholding of approval was based on valid business justifications." Id. at 411. The same analysis applies here. Tower Sites should have the right to argue that Fafard's letter was nothing more than one step in its effort to use the leverage gained by the lawsuit and *lis pendens* to extract an unfair collateral advantage from Tower Sites. On summary judgment, Tower Sites is entitled to this inference.

defendant's] own pecuniary interest"); Dow Chem. Co. v. United States, 250 F. Supp. 2d 748, 803 (E.D. Mich. 2003), *mod. by* 278 F. Supp. 2d 844 (E.D. Mich. 2003) (settlement statements made in bad faith are admissible).

Fafard misconstrues § 5308 of Wright & Graham to reach an opposite conclusion. See Fafard's Mot. to Strike, p. 3. Far from declaring an absolute bar on using compromise evidence to prove an abuse of process claim (as Fafard erroneously asserts), § 5308 simply indicates that such evidence cannot be used to prove an abuse of process claim if "the jury must make an inference as to the offeror's belief in the invalidity of the [underlying] claim to reach the desired conclusion." 23 Wright & Graham, FEDERAL PRACTICE & PROCEDURE: EVIDENCE § 5308, at 244 (1980). The example given by Wright & Graham involved an offer to settle the underlying claim "for a pittance," and the abuse-of-process plaintiff attempted to use that offer to convince the jury to infer that the offeror believed the underlying claim to be invalid. Id. But where such an inference cannot be drawn, Rule 408 is no bar. See Uforma/Shelby Business Forms, Inc. v. National Labor Relations Board, 111 F.3d 1284, 1293-94 (6th Cir. 1997) (explaining §§ 5308 and 5314 of Wright & Graham, and holding that settlement discussions between a company and its union are admissible "to demonstrate that, *regardless of the legitimacy of the grievance*, petitioner threatened, and subsequently retaliated against, the union for pursuing it") (emphasis added).

Here, Tower Sites is not attempting to use the challenged letter to show that Fafard believed its underlying contract claim to be invalid. In fact, no such inference can be drawn from the letter, given the premise of the letter is Fafard's boastful prediction of victory. Rather, it is the overreaching terms of the letter itself that bespeak an improper motive, and thus the passage from Wright & Graham cited by Fafard does not apply.

When dealing with evidence to prove an abuse of process claim, the very nature of such a claim requires an examination of settlement demands, for "the ulterior motive may be shown by showing *a direct demand for collateral advantage*, or it may be inferred from what is said or done about the process." Ladd v. Polidaro, 424 Mass. 196, 198 (1997) (emphasis added). See Zucco v. Kane, 439 Mass. 503, 509 (2003) (upholding admission of settlement offer into evidence when the negotiations "were never presented to the jury as evidence of the plaintiff's willingness to compromise a questionable claim").

II.   **Fafard's Remaining Objections Are For The Fact Finder's Consideration, And Do Not Pertain To The Document's Admissibility**

Fafard improperly argues that the letter should be excluded because Fafard interprets it as seeking "no more value" than Fafard "would have received had specific performance of the P&S Agreement been ordered." This, of course, is a judgment for the fact finder, and does not affect the letter's admissibility. To the extent Fafard's interpretation of the letter could somehow be construed as bearing on admissibility, the letter does not support Fafard's interpretation.

The premise of Fafard's interpretation is that Fafard was proposing to relinquish its claim to the industrially zoned land covered by the purchase and sale agreement if Tower Sites would pay Fafard $1.2 million, which Fafard claims "was equal to the value that a third party had placed upon the property that would not be conveyed under the settlement proposal." But there is no evidence of any third-party valuation on that portion of the land, much less a valuation in that amount. The only evidence on this point is that a third party, Egan, valued <u>all</u> of the land in dispute in this suit – both residential and industrial – at $1 million (Trial Tr.

2/21/05 p. 17-19).[4]  Presumably, therefore, Egan regarded the industrially zoned portion of that land – the land Fafard was proposing to give up – as worth significantly less than $1 million.

Thus, under Fafard's proposal, Tower Sites would have had to give Fafard the residential land for free, and also pay Fafard $1.2 million, in order to hold onto the industrially-zoned portion of the land that Fafard was suing to buy, which itself was worth *less* than $1 million by Egan's measurements.  The proposal made no economic sense.  It would have enriched Fafard unjustly at Tower Sites's expense.  It offered Fafard a considerably better result than Fafard could have achieved had Fafard won its claim for specific performance.  The only possible reason Fafard might have hoped such a proposal would appeal to Tower Sites was because it offered the opportunity, albeit a very expensive opportunity, to end this litigation and dissolve the lis pendens.  This of course buttresses the conclusion that Fafard was using its claim for specific performance as leverage to achieve a collateral benefit. While Fafard interprets the evidence differently, such a debate has no place in Fafard's Motion to Strike, as it concerns the *interpretation* of the evidence and not its *admissibility*.  Ultimately, the meaning to give this evidence is for the fact-finder.  See ESPN, 76 F. Supp. 2d at 411 ("[T]he reasonableness of Baseball's disapproval of ESPN's preemption requests is for the jury to decide.  As a result, the Court must be cautious not to preempt the jury's role."); Schafer v. RMS Realty, 741 N.E.2d 155, 192 (Ohio App. Ct. 2000) (upholding trial court's decision to admit evidence of settlement discussions "on the issue of the Defendants' motives," observing

---

[4] According to trial exhibit 99, Egan valued all of the land that Tower Sites owned, both the land described in the Fafard P&S and Tower Sites' other land, at $2.8 million, but, according to the trial testimony, valued the land in the Fafard P&S agreement at only $1 million.

that "[t]he jury was entitled to weigh the evidence and make its own judgment about the sincerity, motives, or actions of any of the parties.").

## Conclusion

The Court should deny Fafard's Motion to Strike.

METRO-BOSTON BROADCASTING, INC.

By its attorneys,

s/ Kenneth R. Berman_____
Kenneth R. Berman (BBO #040320)
Erik P. Bartenhagen (BBO #640003)
Nutter McClennen & Fish LLP
World Trade Center West
155 Seaport Boulevard
Boston, Massachusetts 02210
(617) 439-2000

February 9, 2006

## Certificate Of Service

I certify that I served this document today on opposing counsel by e-mail.

s/ Kenneth R. Berman_____
Kenneth R. Berman

February 9, 2006